Steven M. Olson, Esq.
     State Bar No. 146120
LAW OFFICE OF STEVEN M. OLSON
100 E Street, Suite 104
Santa Rosa, CA 95404
Telephone: (707) 575-1800
Facsimile: (707) 575-1867
Email: smo@smolsonlaw.com

Attorney for Sullivan Vineyards Corporation

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In Re | Case No. 17-10065-AJ |
| SULLIVAN VINEYARDS CORPORATION, | (Chapter 11) |
| Debtor. | |
| _____/ | |

**DECLARATION OF ROSS SULLIVAN IN SUPPORT OF
MOTION TO USE CASH COLLATERAL**

I, Ross Sullivan, declare:

1.      I am over eighteen (18) years old and am competent to testify as to the matters set forth hereinbelow, from my personal knowledge.

**Background Information Regarding SVC**

2.      The Sullivan family purchased vineyards and began a small winery in Rutherford, CA, in 1972. Sullivan Vineyards Corporation (SVC), the debtor in the above-captioned chapter 11 case, was formed in 1987. It operates a winery at premises located at 1090 Galleron Road, St. Helena, CA. The owner of the premises is Sullivan Vineyards Partners (SVP), a California general partnership for which members of the Sullivan family are partners.

3.      Initially, the shareholders in SVC were JoAnna Sullivan, her husband, James O'Neil Sullivan, and their five children, Philomena Gildea, Sean Sullivan, Kelleen Sullivan, Caireen Sullivan and me. James Sullivan passed in 2004, and JoAnna retained

his shares.

4. In 2011, JoAnna Sullivan sold her retained interest in SVC to Stephen Finn, then the spouse of my sister Kelleen Sullivan, and Mr. Finn became majority shareholder in SVC. I understand that the consideration offered by Mr. Finn included $9,000 per month as an annuity and $500,000 towards a life estate in a property of her choosing.

5. I was the CEO of SVC from 2011 until approximately May of 2013, when Mr. Finn opted to hire Angelica De Vere to replace me as CEO.

6. Shortly before July 20, 2015, I received a Notice of Delayed Annual Meeting of Shareholders. A true and correct copy of the notice is attached hereto as Exhibit 1 and, by this reference, is incorporated herein. I attended the meeting on Monday, July 20, 2015. A true and correct copy of the minutes of this meeting is attached hereto as Exhibit 2 and, by this reference, is incorporated herein. I was elected to the Board of Directors of SVC at this meeting.

7. On or about Friday, July 24, 2015, I received a Notice of Special Meeting of Board of Directors of Sullivan Vineyards Corporation. A true and correct copy of the notice is attached hereto as Exhibit 3 and, by this reference, is incorporated herein. I attended the emergency meeting on Monday, July 27.

8. Shortly before September 4, 2015, I received a Notice of Special Meeting of Board of Directors of Sullivan Vineyards Corporation. A true and correct copy of the notice is attached hereto as Exhibit 4 and, by this reference, is incorporated herein. I attended the emergency meeting on Friday, September 4, 2015. I believe Mr. Finn scheduled this emergency meeting to try to orchestrate an asserted deadlock among the directors so that he could seek a Court appointment of an independent director, as he wished to cause the sale of the assets of SVC before the divorce decree in his pending Colorado divorce proceeding with Kelleen Sullivan. A true and correct copy of the initial proposed minutes of this meeting is attached hereto as Exhibit 5 and, by this reference, is incorporated herein. A true and correct copy of the amended proposed minutes of this

**DECLARATION OF ROSS SULLIVAN IN SUPPORT OF MOTION TO USE CASH COLLATERAL**- Page 2

1    meeting is attached hereto as Exhibit 6 and, by this reference, is incorporated herein. I

2    understand that Mr. Finn requested the amendment of the minutes.

3           9.      On or about October 7, 2015, I attended a meeting of the shareholders in

4    SVC. The shareholders appointed as directors Dan Zepponi, Kelleen Sullivan and me.

5           10.     On the same date, the new board of directors of SVC met. Thereafter, the

6    board members executed a Unanimous Written Consent of the Board of Directors of

7    Sullivan Vineyards Corporation. A true and correct copy of this document is attached

8    hereto as Exhibit 7 and, by this reference, is incorporated herein.

9                        **Events Leading to Need for Reorganization**

10          11.     In May, 2016, the debt secured by a senior security interest in the assets of

11   SVC matured by its terms. SVC has been unable to refinance to pay this debt because of

12   (1) the cloud created by Mr. Finn's assertion of a continued ownership interest in SVC,

13   and (2) the cloud created by Mr. Finn's assertion of a debt of over $4 million secured by

14   a junior security interest in the assets of SVC. Mr. Finn caused SVC to enter into a

15   debtor-creditor agreement, during a time when he was majority shareholder in SVC. The

16   loan documents called for a series of advances to be secured by junior lien on the assets

17   of SVC and SVP, contingent upon the authorizations for such loans from non-Finn

18   representatives of SVC and SVP. SVC and SVP contend that most of the advances

19   comprising Mr. Finn's claim were not properly authorized. With respect to the small

20   amount of advances that were authorized, SVC and SVP contend that they have a

21   complete defense of offset for damages it incurred as the result of Mr. Finn's wrongdoing

22   when he was a principal in SVC and a partner in SVP.

23          12.     Mr. Finn created an LLC, called Winery Rehabilitation, LLC (WR, LLC),

24   in April of 2016. WR, LLC, has acquired the debt secured by the senior security interest.

25   Both Mr. Finn and WR, LLC, have commenced nonjudicial foreclosure of their asserted

26   security interests. SVC seeks to reorganize in order to forestall foreclosure, restructure

27   the debt now owing to WR, LLC, and determine the allowed amount of the claim of Mr.

28   Finn (if any) and then pay it in accordance with the contractual terms.

**DECLARATION OF ROSS SULLIVAN IN SUPPORT OF**
**MOTION TO USE CASH COLLATERAL**- Page 3

13.     We have attempted to obtain take-out financing to pay in full the claims of WR, LLC, and Mr. Finn. Because of the cloud created by Mr. Finn's persistent assertion that he is an owner of SVC and SVP, despite the Colorado divorce court's orders, and because of the excessive dollar amount that Mr. Finn asserts is owing to him, SVC and SVP have not been able to secure take-out financing.

**SVC's Assets and Liabilities**

14.     At present, SVC's principal assets, with SVC's estimates regarding current aggregate values, are as follows:

| | |
|---|---|
| 1. Bulk Wine Inventory | $850,000 |
| 2. Bottled Wine Inventory | $5,500,000 |
| 3. Office and Tasting Room Furnishings and Equipment | $120,000 |
| 4. Accounts Receivable | $31,000 |
| 5. Office Equipment, Computers, Software | $35,000 |
| 6. Paintings and Art | $230,000 |
| 7. Vehicle - 2016 Ford | $38,000 |
| 8. Barrels | $350,000 |
| 9. Tanks | $648,000 |
| 10. Wine Production Equipment | $225,000 |
| 11. Intangibles (trademark, goodwill, trade secrets, etc.) | $4,678,000 |
| 12. Cash and Bank Account Balances | $45,000 |

15.     SVC estimates that its liabilities are as follows:

| | |
|---|---|
| 1. SVC General Unsecured Claims | $201,000 |
| 2. WR, LLC, Secured Claim | $9,600,000 |
| 3. Claim of SVP against SVC | $2,100,000 |
| 4. Growers' Claims | $486,000 |
| 5. SVC Priority Tax Claims | $4,375 |
| 6. Ford Credit Secured Claim | $15,500 |

Mr. Finn asserts a claim in the amount of approximately $4,600,000, secured by virtually

**DECLARATION OF ROSS SULLIVAN IN SUPPORT OF MOTION TO USE CASH COLLATERAL**- Page 4

all of the assets of SVC and SVP. SVC disputes this claim for a variety of reasons, including without limitation that advances were not property authorized, that neither SVC nor SVP benefitted from many of the advances, and that SVC and SVP have offsetting claims against Mr. Finn for his wrongdoing when he was a majority shareholder in SVC, the majority partner in SVP, and in charge of operations of SVC and SVP.

**Co-Obligor SVP's Assets and Liabilities**

16.     SVP is a separate entity from SVC, and its chapter 11 bankruptcy estate likewise is separate from the chapter 11 bankruptcy estate of SVC. Nonetheless, because SVP is a co-obligor regarding the claims of WR, LLC, and Mr. Finn, and SVP's assets are collateral for these claims, a description of the assets and liabilities of SVP is provided with respect to SVC's request to use the cash collateral of WR, LLC, and Mr. Finn.

17.     At present, SVP's assets, with SVP's estimates regarding current aggregate values, are as follows:

| | |
|---|---|
| 1.  Fixed assets (e.g., vehicles, equipment, leasehold improvements, paintings and art) | $460,000 |
| 2.  Real Property | $16,000,000 |
| 3. Cash and equivalents | $30,000 |
| 4.  Accounts Receivable | $90,000 |
| 5.  Unsecured Claim against SVC | $2,100,000 |
| 6. Grower's Lien Claim Against SVC | $446,000 |

18.     SVP estimates that its liabilities are as follows:

| | |
|---|---|
| 1.  SVP General Unsecured Claims | $85,462 |
| 2.  WR, LLC, Secured Claim | $9,600,000 |
| 3.  Property Tax Secured Claim | $11,838.36 |

**Contemplated Reorganization Plans for SVC and SVP**

19.     We intend to seek confirmation of reorganization plans for SVC and SVP as soon as practicable. The contemplated plans will reamortize the WR, LLC, claim over

**DECLARATION OF ROSS SULLIVAN IN SUPPORT OF MOTION TO USE CASH COLLATERAL**- Page 5

40 years, with a maturity of five years after the effective date. The contemplated plans will not impair Mr. Finn, insofar as there is no present default to Mr. Finn. Mr. Finn agreed, in connection with the efforts to obtain the senior-lien loan now held by WR, LLC, to subordinate his claims against SVC and SVP as to lien priority and payment. There is no payment owing to Mr. Finn until after WR, LLC's secured claim is paid in full. SVC and SVP contemplate post-confirmation litigation with Mr. Finn regarding claims by and against him. We intend to pay our non-insider unsecured claims relatively expeditiously after plan confirmation.

**WR, LLC, and Mr. Finn Are Adequately Protected**

20.     The claim asserted by WR, LLC, is in the approximate amount of $9,600,000. The claim asserted by Mr. Finn is in the approximate amount of $4,600,000. The collateral securing the claims appears to include, in significant part, the following:

| Asset Description | Asset Value |
|---|---|
| SVC's Bulk Wine Inventory | $850,000 |
| SVC's Bottled Wine Inventory | $5,500,000 |
| SVC's Office and Tasting Room Furnishings and Equipment | $120,000 |
| SVC's Accounts Receivable | $31,000 |
| SVC's Office Equipment, Computers, Software | $35,000 |
| SVC's Paintings and Art | $230,000 |
| SVC's fixed assets | $675,000 |
| SVC's Barrels | $350,000 |
| SVC's Tanks | $648,000 |
| SVC's Wine Production Equipment | $225,000 |
| SVC's Intangibles (trademark, goodwill, trade secrets, etc.) | $4,678,000 |
| SVP's Fixed assets (e.g., vehicles, equipment, leasehold improvements, paintings and art) | $460,000 |
| SVP's Real Property | $16,000,000 |

**DECLARATION OF ROSS SULLIVAN IN SUPPORT OF MOTION TO USE CASH COLLATERAL**- Page 6

| | |
|---|---:|
| SVP's Cash and equivalents | $30,000 |
| SVP's Accounts Receivable | $90,000 |
| SVP's Unsecured Claim against SVC | $2,100,000 |
| SVP's Grower's Lien Claim Against SVC | $446,000 |
| | |
| **TOTAL** | $32,468,000 |

Thus, SVC and SVP believe there is a substantial equity cushion.

21.     SVC needs to use the cash generated from business activities, including proceeds from collection of accounts receivable and proceeds from sale of wine, in order to pay ongoing operating expenses in order to maintain the two entities as going concerns. Attached hereto as Exhibit 8, and by this reference incorporated herein, is a budget of projected revenues and expenditures for the next four months.

I declare under the penalty of perjury under the laws of the United States and of the State of California that the foregoing is true and correct.

February 2, 2017

By:     */S/ Ross Sullivan*
        _____
        Ross Sullivan

Exhibit 1

## SULLIVAN VINEYARDS CORPORATION
1090 Galleron Road
Rutherford, California 94573

# NOTICE OF DELAYED ANNUAL MEETING OF SHAREHOLDERS

To The Shareholders of Sullivan Vineyards Corporation:

Notice is hereby given that the Delayed Annual Meeting of Shareholders of Sullivan Vineyards Corporation, a California corporation (the "Company"), will be held at the offices of the Company, 1090 Galleron Road, Rutherford, California 94573, on Monday, July 20, 2015, 10:00 A.M. PDT.

The purpose of the meeting is to discuss the following:

(1)     To elect a board of directors, consisting of three (3) directors, to hold office until the 2016 annual meeting of shareholders. Management intends to present the following nominees for election as Directors:

Angelica Joy DeVere
Stephen A. Finn
Douglas Thaxton

(2)     To transact such other business as may properly come before the meeting or any continuation or adjournment thereof.

The board of directors has fixed the close of business on June 30, 2015, as the record date for the determination of shareholders entitled to vote at the Annual Meeting or any adjournment thereof.

Pursuant to Section 600(e) of the California Corporations Code, Shareholders may participate via telephone conference or similar communications equipment.

By Order of the Board of Directors

Douglas Thaxton, Secretary

July 9, 2015
Rutherford, California

Exhibit 2

# SULLIVAN VINEYARDS CORPORATION
# SHAREHOLDERS MEETING
## Minutes

### 20th JULY 2015

## NOTICE AND PURPOSE OF MEETING

The meeting was being held pursuant to Article II, Section 3 of the Bylaws of the Corporation. It was further noted that the meeting was being held for the purposes contained in the Notice of Delayed Annual Meeting of Shareholders (see attached), which had been mailed to the shareholders of record as of June 30, 2015 on July 9th, 2015 in accordance with Article II Section 2 of the Bylaws of the Company and California Corporations Code Section 600 and 601. The meeting was held at the offices of the Company, 1090 Galleron Road, Rutherford, California 94573.

**Attendees:**

**Shareholders Present:**

| | | |
|---|---|---|
| Stephen A. Finn | (772 Shares) | (Via Teleconference) |
| Ross A. Sullivan | (98 Shares) | |
| Kelleen Sullivan Finn | (98 Shares ) | |
| Andrea Crow | (50 Shares ) | (Via Teleconference) |

**Other Attendees:**

| | | |
|---|---|---|
| Angelica de Vere | (President and CEO of SVC) | |
| Douglas D Thaxton | (Secretary of SVC) | (Via Teleconference) |
| Malcolm T. Manwell | Attorney from Perry, Johnson, Anderson, Miller & Moskowitz | |
| James R. Rose | Attorney from Buchalter Nemer | |
| Stuart A. Simon | Attorney from Buchalter Nemer | (Via Teleconference) |

## QUORUM

A Quorum was reached as represented below by 100% of the voting shares as of June 30, 2015:

| | |
|---|---|
| 772 Shares | Stephen A. Finn  (actual shares corrected after the meeting) |
| 490 Shares | Ross A. Sullivan (holding proxy for Kelleen Sullivan Finn, Maureen Gildea, Sean Sullivan, Caireen Sullivan) (the "Sullivans") |
| 50 Shares | Andrea Crow |
| 1,312 Shares | |

## CALL TO ORDER

A Delayed Annual Meeting of the Shareholders of Sullivan Vineyards Corporation, a California corporation, (the "Company") was called to order at 10:00 a.m. PST.

An objection was made by Mr. Manwell, on behalf of the Sullivans, that the shareholders were not properly notified and that they did not know what was on the agenda. Ross Sullivan said that he had an agenda which he then read.

Election of Directors

Ross Sullivan objected to the nominations and the floor was opened for other nominations. Ross Sullivan was nominated for one of the three director positions. A request had been duly made to cumulate votes.

A vote was then held and the following Directors were elected to hold office until the 2016 annual meeting of shareholders.

Stephen A. Finn
Ross A. Sullivan
Angelica de Vere

On behalf of the Sullivans, Mr. Manwell requested to look at or obtain copies of all of the Company's minutes as contained in the minute book and bylaws including all amendments. Ms. Crow would also like copies of all documents sent to her.


Other Business

Kelleen Sullivan Finn read from a list of other documents that she would like copies of including all expense reports, budget spreadsheets, lien documentation and current lawsuits. She requested documents from both the Company and Sullivan Vineyards Partners. Mr. Simon explained that this meeting only pertained to the Company business.

She objected to the lawsuit brought by Rachel Bowmen (sp) for wrongful termination which she said was an undue liability and cost to the Company $95,000. Ms. de Vere explained that this was on ongoing lawsuit and that it had not been settled and therefore has not cost $95,000. Mr. Simon explained that only public documents pertaining to the lawsuit could be released.

Adjournment

There being no other business the meeting was adjourned at 10:24 am.



Respectfully submitted,

Douglas D. Thaxton
Secretary

# BOARD OF DIRECTORS

## Minutes

20th July 2015

## CALL TO ORDER

A meeting of the Board of Directors of Sullivan Vineyards Corporation, a California corporation (the "Company"), was called to order at 10:20 a.m. PST, by Chairman Stephen A. Finn.

**Attendees:**

**Director Participants:**
Stephen A. Finn, Chairman  (Via Teleconference)
Ross Sullivan, Director
Angelica de Vere, Director

**Via Teleconference:**
Douglas Thaxton, Secretary
Andrea Crow, Shareholder
Stuart Simon, Buchalter Nemer

**Other Participants:**
Kelleen Sullivan Finn, Shareholder
James Rose, Buchalter Nemer
Malcolm Manwell, Perry, Johnson, et al

## NOTICE AND PURPOSE OF MEETING

This Organization meeting was being held pursuant to Article III, Section 7 of the Bylaws of the Corporation and California Corporations Code Section 307(a)(3).  It was further noted that the meeting was being held for the purposes of election of officers. The Directors meeting is being held immediately following the Shareholders meeting and a Waiver of Notice and Consent was signed by all Directors.

Mr. Manwell, on behalf of the Sullivans, objected to the meeting as no advance notice was given and no agenda was distributed.

Mr. Rose distributed the Waiver of Notice and Consent for signatures by Ms. De Vere and Mr. Sullivan, the waiver notice had been signed by Mr. Finn. Mr. Manwell withdrew his objection.

## Appointment of Officers

The following officers were presented for appointment –

- Stephen A. Finn          Chairman of the Board
- Angelica de Vere        President
- Douglas Thaxton         Secretary/ Treasurer

*Following a vote the Board approved the officer appointments with Mr. Finn and Ms. de Vere in favor and Mr. Sullivan opposed.*

Mr. Manwell objected to this meeting being called the Annual meeting which was held previously (Shareholders) and that this was the Board of Directors meeting. Mr. Simon noted his objection and stated that this was the Annual Meeting of the Board of Directors as shown on the Waiver of Notice and Consent.

Case: 17-10065    Doc# 8    Filed: 02/02/17    Entered: 02/02/17 16:22:10    Page 11 of 33

## ADJOURNMENT

*There being no further business before the Board, Mr. Finn moved, and Ms. De Vere seconded, that the meeting be adjourned. The motion passed unanimously. The meeting concluded at 10:25 a.m. PST.*

Respectfully submitted,

Douglas D. Thaxton
Secretary

## WAIVER OF NOTICE AND CONSENT TO
## HOLDING OF THE ANNUAL MEETING
## OF BOARD OF DIRECTORS OF

### SULLIVAN VINEYARDS CORPORATION

A California Corporation


The undersigned, being all of the Directors of SULLIVAN VINEYARDS CORPORATION, a California corporation (the "Corporation"), as elected at the Delayed Annual Meeting of Shareholders of the Corporation held July 20, 2015, and pursuant to the provisions of Section 601(e) of the California Corporations Code and the Bylaws of this Corporation, do hereby waive notice of the Annual Meeting of Board of Directors of the Corporation on Monday, July 20, 2015, at ___ __:00 _.M., at the principal office of the Corporation, 1090 Galleron Road, Rutherford California, and do hereby consent to the holding of that meeting, and agree that any business transacted at that meeting shall be as valid and legal and have the same force and effect as though that meeting were held after notice was duly given.


DATED: July 20, 2015.

7/16/15

Exhibit 3

## NOTICE OF SPECIAL MEETING
## OF BOARD OF DIRECTORS OF

## SULLIVAN VINEYARDS CORPORATION
_____

Notice is hereby given that a Special Meeting of the Board of Directors of Sullivan Vineyards Corporation, a California corporation (the "Corporation"), will be held at the principal offices of the Corporation at 1090 Galleron Road, Rutherford, California, on Monday, July 27, 2015, at 1:00 P.M.

The purpose of the meeting will be to consider and vote upon a motion to authorize the officers of the Corporation to enter into, execute and deliver the Fifth Amendment to Security Agreement with Silicon Valley Bank in the form attached to this Notice as Exhibit A, and to deal with such other business as may properly come before the meeting.

_____
Angelica de Vere, President

July 23, 2015
Rutherford, California

# EXHIBIT A

## FIFTH AMENDMENT TO
## LOAN AND SECURITY AGREEMENT

This Fifth Amendment to Loan and Security Agreement (this "Amendment") is entered into as of June __, 2015 among Sullivan Vineyards Corporation ("SVC") and Sullivan Vineyards Partners ("SVP," and SVP and SVC are sometimes referred to herein individually as a "Borrower" and collectively as the "Borrowers"), whose address is 1090 Galleron Road, Rutherford, CA 94573, and Silicon Valley Bank ("Bank").

### RECITALS

**A.**    Bank and Borrowers have entered into that certain Loan and Security Agreement dated as of May 17, 2012, as amended by that certain Amendment to Loan and Security Agreement dated February 27, 2013, by that certain Waiver and Second Amendment to Loan and Security Agreement dated May 31, 2013, by that certain Third Amendment to Loan and Security Agreement dated October 31, 2013 and by that certain Fourth Amendment to Loan and Security Agreement dated May 15, 2014 (as the same may from time to time be amended, modified, supplemented or restated, the "Loan Agreement"). Bank has extended credit to Borrowers for the purposes permitted in the Loan Agreement.

**B.**    Borrowers have requested that Bank amend a financial covenant and other covenants in the Loan Agreement, and Bank has agreed to do so on the terms set forth herein.

### AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

**1.**    **Definitions**. Capitalized terms used but not defined in this Amendment shall have the meanings given to them in the Loan Agreement.

**2.**    **Amendments to the Loan Agreement**. The Loan Agreement is amended as follows:

(a)    A new sentence is added at the end of Paragraph 8(a) to read as follows:

A fully earned, non-refundable one-time Variance Fee of $3,000 on the effective date of the Fifth Amendment to Loan and Security Agreement between the parties.

(b)    Paragraph 13(d) is hereby deleted.

(c)    Paragraph 17(b) is amended to read as follows: [Intentionally Left Blank]

(d)    Paragraph 17(d) and the paragraph appearing immediately thereafter are deleted and in their place is inserted the following paragraphs:

27746\4893546.3

(d)        Borrowers will maintain (on a combined basis) as of the end of each quarter (starting June 30, 2015) on a trailing 12-month basis (as defined in Section 5.6 of the Loan and Security Agreement, Additional Terms and Conditions), a Fixed Charge Coverage Ratio of not less than 1.10:1.00.

If at the end of any measurement date Borrower is in default of the Fixed Charge Coverage Ratio, then said default may be cured by the making of a cash equity contribution(s) to either Borrower or Borrowers, in each case by Guarantors in an amount sufficient to cure said default assuming such contribution had been made in the previous 12-month period, and which contribution shall be made at any time before 45 days after the end of the 12-month period measurement date. Borrowers will notify Bank promptly of the making of any such equity contribution(s) and with such notification furnish Bank written evidence or financial statements, in form and substance satisfactory to Bank (and, if previously submitted, a new Compliance Certificate), showing that the Fixed Charge Coverage Ratio has been satisfied. Any such contribution(s) shall not be used in the calculation of the Fixed Charge Coverage Ratio for any 12-month period in which such contribution(s) was made.

(e)        Section 5.2(f) of the Loan Agreement, Additional Terms and Conditions, is amended to read: [Intentionally Left Blank]

(f)        Section 5.6 of the Loan Agreement, Additional Terms and Conditions, is amended by deleting the definition of "Financial Support" and adding the following two definitions:

"EBIDA" means, for any fiscal period, on a combined basis for Borrowers, net after tax earnings before Interest Expense, depreciation and amortization, determined in accordance with GAAP for the applicable fiscal year period.

"Fixed Charge Coverage Ratio" means, for any fiscal period, on a combined basis for Borrowers, the ratio of (a) EBIDA, minus capital expenditures (other than the portion of capital expenditures financed by the incurrence of debt), minus Permitted Distributions (and any other cash distributions allowed by Bank), minus repayments of Indebtedness to all equity holders of either Borrower and any of their affiliates (including Subordinated Debt), plus cash equity contributions, plus Subordinated Debt from equity holders of either Borrower or any of their affiliates, or any increases in the same over the immediately prior measurement period, and minus loan or advances from either Borrower to equity holders of such Borrower or any of their affiliates (if allowed by Bank), or any increases in the same over the immediately prior measurement period, to (b) the sum of Interest Expense plus all required principal payments on Indebtedness for the relevant period.

(g)        Exhibit C, the Compliance Certificate, is replaced by Exhibit C hereto.

**3.**      **Representations and Warranties**. To induce Bank to enter into this Agreement, Borrowers hereby represent and warrant to Bank as follows:

Case: 17-10065   Doc# 8   Filed: 02/02/17   Entered: 02/02/17 16:22:10   Page 16 of 33

**3.1**     Immediately after giving effect to this Amendment (a) the representations and warranties contained in the Loan Documents are true, accurate and complete in all material respects as of the date hereof (except to the extent such representations and warranties relate to an earlier date, in which case they are true and correct as of such date), and (b) no Event of Default has occurred and is continuing.

**3.2**     Borrowers have the power and authority to execute and deliver this Amendment and to perform its obligations under the Loan Agreement.

**3.3**     The organizational documents of Borrowers delivered to Bank on or about May 17, 2012 remain true, accurate and complete and have not been amended, supplemented or restated and are and continue to be in full force and effect.

**3.4**     The execution and delivery by Borrowers of this Amendment and the performance by Borrowers of their obligations under the Loan Agreement have been duly authorized by all necessary action on the part of Borrowers.

**3.5**     The execution and delivery by Borrowers of this Amendment and the performance by Borrowers of their obligations under the Loan Agreement do not and will not contravene (a) any law or regulation binding on or affecting Borrowers, (b) any contractual restriction with a Person binding on Borrowers, (c) any order, judgment or decree of any court or other governmental or public body or authority, or subdivision thereof, binding on Borrowers, or (d) the organizational documents of Borrowers.

**3.6**     The execution and delivery by Borrowers of this Amendment and the performance by Borrowers of their obligations under the Loan Agreement do not require any order, consent, approval, license, authorization or validation of, or filing, recording or registration with, or exemption by any governmental or public body or authority, or subdivision thereof, binding on either Borrowers, except as already has been obtained or made.

**3.7**     This Amendment has been duly executed and delivered by Borrowers and is the binding obligation of Borrowers, enforceable against Borrowers in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, liquidation, moratorium or other similar laws of general application and equitable principles relating to or affecting creditors' rights.

**4.**     **Terms Supplemental to Loan Agreement**.  This Amendment is not a novation and the terms and conditions of this Amendment shall be in addition to and supplemental to all terms and conditions set forth in the Loan Documents.

**5.**     **Conditions Precedent**.  Bank's agreement to amend the Loan Agreement as set forth herein is effective subject to:

(a)     the execution and delivery of this Amendment by the Borrowers and Bank;

(b)     each Guarantor shall have delivered an Acknowledgment of Guaranty in the form attached hereto; and

(c)     Creditor shall have delivered the Subordination Agreement Addendum in the form attached hereto.

Case: 17-10065     Doc# 8     Filed: 02/02/17     Entered: 02/02/17 16:22:10     Page 17 of 33

6. **Miscellaneous**.

(a) Upon and after the effectiveness of this Amendment, each reference in the Agreement to "this Agreement," "hereunder," "hereof" or words of like import referring to the Agreement shall mean and be a reference to the Agreement as amended hereby.

(b) Bank's agreement to the modifications contained in this Amendment in no way shall obligate Bank to make any such future modification or consent.

(c) Borrowers understand and agree that in modifying the existing Obligations, Bank is relying on Borrowers' representations, warranties and agreements as set forth herein and in the Agreement.

(d) This Amendment, together with the Agreement, constitutes the entire agreement and understanding between the parties relating to the subject matter hereof, and supersedes all prior and contemporaneous proposals, negotiations, agreements and understandings relating to the subject matter. No modification or amendment of any provision of this Amendment shall be made, except by a written agreement signed by Bank and Borrowers.

(e) Except as amended, the Agreement remains in full force and effect, and all obligations under the Agreement, as amended by this Amendment, shall continue to be secured by the collateral described therein.

(f) This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

(g) This Amendment shall be governed by, and construed and interpreted in accordance with, the internal laws of the State of California.

Case: 17-10065   Doc# 8   Filed: 02/02/17   Entered: 02/02/17 16:22:10   Page 18 of 33

IN WITNESS WHEREOF, each of the parties has caused this Fifth Amendment to Loan and Security Agreement to be executed by one of its representatives thereunto duly authorized, as of the date first above written.

**BANK**

SILICON VALLEY BANK

By: _____

Name: _____

Title: _____

**BORROWERS**

SULLIVAN VINEYARDS PARTNERS

By: _____

Name: _____

Title: _____

SULLIVAN VINEYARDS CORPORATION

By: _____

Name: _____

Title: _____

<u>EXHIBIT C</u>

**COMPLIANCE CERTIFICATE**

**TO:    SILICON VALLEY BANK**

> **899 Adams Street, Suite G-2**
> **St. Helena, CA  94574**
> **Facsimile (707) 967-4827**

**FROM: Sullivan Vineyards Corporation AND Sullivan Vineyards Partners**

The undersigned authorized signatory of Sullivan Vineyards Corporation and Sullivan Vineyards Partners (the "**Authorized Signer**") certifies that under the terms and conditions of the Loan and Security Agreement between Borrowers and Bank (the "**Agreement**"), (i) Borrowers are in complete compliance for the period ending _____ with all required covenants except as noted below (ii) there are no Events of Default, (iii) all representations and warranties in the Agreement are true and correct in all material respects on this date, provided however, that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof; and provided further that those representations and warranties expressly referring to a specific date shall be true, accurate and complete in all material respects as of such date, (iv) Borrowers have timely filed all required tax returns and reports, and Borrowers have timely paid all foreign, federal, state and local taxes, assessments, deposits and contributions owed by Borrowers except as otherwise permitted pursuant to the terms of the Agreement, and (v) no Liens have been levied or claims made against Borrowers relating to unpaid employee payroll or benefits of which Borrowers have not previously provided written notification to Bank. Attached are the required documents supporting the certification.  The Authorized Signer certifies that these are prepared in accordance with Generally Accepted Accounting Principles (GAAP) consistently applied from one period to the next except as explained in an accompanying letter or footnotes.  The Authorized Signer acknowledges that no borrowings may be requested at any time or date of determination that Borrowers are not in compliance with any of the terms of the Agreement, and that compliance is determined not just at the date this certificate is delivered. Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Agreement.

**Please indicate compliance status by circling Yes/No under "Complies" column.**

| <u>Reporting Covenants</u> | <u>Required</u> | <u>Complies</u> | |
|---|---|---|---|
| **SVC:** | | | |
| Quarterly financial statements | Quarterly within 30 days | Y | N |
| Tax Returns | Annually within 15 days of filing | Y | N |
| Projections | Annually by April 30 | Y | N |
| **SVP:** | | | |
| Quarterly financial statements | Quarterly within 30 days | Y | N |
| Tax Returns | Annually within 15 days of filing | Y | N |
| Projections | Annually by January 30 | Y | N |
| **Guarantor/Finn:** | | | |
| Guarantor Financial Statements | Semi-annually | Y | N |
| Finn Tax Return | Annually within 15 days of filing | Y | N |
| Funds Flow Report | With Tax Return | Y | N |
| Quarterly financial statements of TCA Financial Corporation | Quarterly within 60 days | Y | N |
| Annual audited financial statements of TCA Financial Corporation and TC Advisors Network Inc. | On request upon completion | Y | N |

| <u>Financial Covenants</u> | <u>Required</u> | <u>Actual</u> | <u>Complies</u> | |
|---|---|---|---|---|
| Maintain on a Quarterly Basis: | | | | |
| Minimum Fixed Charge Coverage Ratio: | 1.10:1.00 | _____ | Y | N |

Case: 17-10065    Doc# 8    Filed: 02/02/17    Entered: 02/02/17 16:22:10    Page 20 of 33

Maintain on an Annual Basis
    Minimum Guarantor Funds Flow

| | | | |
|---|---|---|---|
| [$4,000,000 — 2011 and 2012] | $_____ | Y | N |
| [$4,500,000 — 2013] | $_____ | Y | N |
| [$5,000,000 — 2014 and thereafter] | $_____ | Y | N |

**Comments Regarding Exceptions:** See Attached.

[The following financial covenant analys[is][es] and information set forth in Schedule 1 attached hereto are true and accurate as of the date of this Certificate.

The following are the exceptions with respect to the certification above: (if no exceptions exist, state "No exceptions to note.")]

Sincerely,

Sullivan Vineyards Corporation

_____
SIGNATURE

_____
TITLE

_____
DATE

Sullivan Vineyards Partners

_____
SIGNATURE

_____
TITLE

_____
DATE

---

**BANK USE ONLY**

Received by: _____
                    AUTHORIZED SIGNER

Date: _____

Verified: _____
                    AUTHORIZED SIGNER

Date: _____

Compliance Status:       Yes   No

_____       Yes   No

# ACKNOWLEDGMENT AND
# REAFFIRMATION OF GUARANTY
# (SVP)

**Section 1**.  Guarantor hereby acknowledges and confirms that it has reviewed and approved the terms and conditions of the Fifth Amendment to Loan and Security Agreement dated as of even date herewith (the "Amendment").

**Section 2**.  Guarantor hereby consents to the Amendment and agrees that the Guaranty relating to the Obligations of Borrowers under the Loan Agreement shall continue in full force and effect, shall be valid and enforceable and shall not be impaired or otherwise affected by the execution of the Amendment or any other document or instrument delivered in connection herewith.

**Section 3**.  Guarantor represents and warrants that, after giving effect to the Amendment, all representations and warranties contained in the Guaranty are true, accurate and complete as if made the date hereof.

Dated as of _____ __, 2015.

**GUARANTOR**

SULLIVAN VINEYARDS PARTNERS

By: _____

Name: _____

Title: _____

27746\4893546.3

# ACKNOWLEDGMENT AND
# REAFFIRMATION OF GUARANTY
## (Finn)

**Section 1**. Guarantor hereby acknowledges and confirms that it has reviewed and approved the terms and conditions of the Fifth Amendment to Loan and Security Agreement dated as of even date herewith (the "Amendment").

**Section 2**. Guarantor hereby consents to the Amendment and agrees that the Guaranty relating to the Obligations of Borrowers under the Loan Agreement (and Guarantor's obligations under the "Financial Support" provisions) shall continue in full force and effect, shall be valid and enforceable and shall not be impaired or otherwise affected by the execution of the Amendment or any other document or instrument delivered in connection herewith.

**Section 3**. Guarantor represents and warrants that, after giving effect to the Amendment, all representations and warranties contained in the Guaranty are true, accurate and complete as if made the date hereof.

Dated as of _____ __, 2015.

**GUARANTOR**

_____
Stephen A. Finn, in his individual capacity
and in his capacity as Trustee of the
Stephen A. Finn 2001 Living Trust, as
amended

27746\4893546.3

## SUBORDINATION AGREEMENT ADDENDUM

Stephen A. Finn (referred to herein as the "Creditor," as that term is defined in that certain Subordination Agreement dated May 17, 2012 between Creditor and Bank) (the "Subordination Agreement"), hereby consents to the execution, delivery and performance by Borrowers of this Fifth Amendment to Loan and Security Agreement dated as of even date herewith and agrees that (a) Creditor understands and agrees to the terms of this Fifth Amendment to Loan and Security Agreement, and (b) the Subordination Agreement remains in full force and effect.

Dated as of _____ __, 2015.

**CREDITOR**

_____
Stephen A. Finn

27746\4893546.3

Exhibit 4

# NOTICE OF SPECIAL MEETING
# OF BOARD OF DIRECTORS OF

## SULLIVAN VINEYARDS CORPORATION

Notice is hereby given that a Special Meeting of the Board of Directors of Sullivan Vineyards Corporation, a California corporation (the "Corporation"), will be held at the principal offices of the Corporation at 1090 Galleron Road, Rutherford, California, on Friday, September 4, 2015, at 9:00 A.M. Directors who wish to attend the meeting by telephone conference call may call 1-855-282-6330 and enter access code 802-968-996. Alternatively, Directors may join the meeting via WebEx. The meeting number on WebEx is 802-968-996, and the password is SullivanVine.

The purposes of the meeting will be to determine whether the Corporation or its assets should be sold, to consider offers for the Corporation and its assets, and to accept an offer. Any offer for the sale of the Corporation or its assets accepted by the Board would then be submitted to the Corporation's shareholders for approval. The Board may also deal with such other business as may properly come before the meeting.

Angelica de Vere, President

September 1, 2015
Rutherford, California

BN 18977722v1

Exhibit 5

# BOARD OF DIRECTORS

## Minutes

4th September 2015

Pursuant to notice duly given, a copy of which precedes these Minutes in the corporate Minute Book, a special meeting of the Board of Directors of Sullivan Vineyards Corporation, a California corporation (the "Company"), was held at the offices of the Corporation on Friday, September 4, 2015, at 9:00 a.m. PST. The following participants were present at the meeting either in person or by telephone conference:

**Attendees:**

**Director Participants:**
Stephen A. Finn, Chairman
Ross Sullivan, Director      (via teleconference)
Angelica de Vere, Director

James Rose, Buchalter Nemer

**Via Teleconference:**
Douglas Thaxton, Corporate Secretary
Peter Bertrand, Buchalter Nemer
Stuart Simon, Buchalter Nemer
Cecilia Palmer, Buchalter Nemer

Prior to the call to order, the parties in attendance identified themselves and, in response to specific questions from Mr. Sullivan, the representatives from Buchalter Nemer confirmed that they represented the Company as corporate counsel.

Mr. Bertrand asked Mr. Sullivan whether he had supplied confidential cash flow projections to attorney Charles Koss. Mr. Sullivan responded that he had not supplied any information to Mr. Koss except in his declaration but he had provided financial information to all of the shareholders. Mr. Sullivan further stated that he was unaware of any confidential cash flow projections. He supplied the cash flow projections that he received from Ms. de Vere to come up with a business plan that they could use to go forward without Mr. Finn's participation. Finally, Mr. Sullivan said that he did not give a copy of those projections to Mr. Koss but suggested that perhaps one of the other shareholders had.

Mr. Bertrand asked Mr. Sullivan if he provided Ms. de Vere's compensation to Mr. Koss. Mr. Sullivan said he did not provide such information to Mr. Koss and that he had not seen her compensation until he read a public document in the Colorado courts. He added that he had not received information about her compensation package. Mr. Bertrand suggested that there was no public document containing that information. Ms. de Vere also challenged Mr. Sullivan's statement, adding that he had asked for her employment agreement several times and that she had provided him with a copy. Mr. Sullivan asked the purpose of these questions, and Mr. Bertrand said that it goes to a potential breach of fiduciary duty.

Mr. Finn called the meeting to order at 9:07am and stated the purpose of the meeting was outlined in the Notice of Special of the Board of Directors of Sullivan Vineyards Corporation dated September 1, 2015. He read the formal purpose for the record and asked if there were any additional matters of business to be added to the agenda (see attached). Both Ms. de Vere and Mr. Sullivan responded that they had no additional agenda items.

Mr. Sullivan asked Mr. Rose who he represents, and Mr. Rose confirmed that he represents the Company. Mr. Sullivan stated his recollection that, at the last meeting, Mr. Rose stated that he represented Mr. Finn. Mr. Finn stated that Buchalter Nemer is corporate counsel for the Company and asked the Directors if they wished to add this to the agenda or continue to discuss the motion pending before the Board. As none of the Directors wished to add to the agenda, Mr. Finn asked if there was any discussion prior to the vote.

Mr. Sullivan voiced his objection to the vote based on the lawsuit pending in Colorado in which Mr. Finn has an injunction against selling the winery and that he did not want to be party to that. Mr. Finn noted that the winery was not being sold today and that the motion being considered was to give the Company the opportunity to consider and accept offers. He asked Mr. Sullivan if that was his only objection, and Mr. Sullivan stated that was his only objection at this time.

Mr. Finn called for a voice vote on the motion. Ms. de Vere voted in favor of the motion, Mr. Sullivan voted against, and Mr. Finn abstained from voting.

Mr. Finn asked if there were any other matters of business to be considered by the Board, and there were none.

Mr. Simon asked Mr. Thaxton, as corporate Secretary, to confirm that the Board was deadlocked in its vote on the motion. Mr. Thaxton reviewed the vote and confirmed that the vote resulted in a deadlocked Board.

Mr. Bertrand stated his understanding that currently the Company cannot pay its debts as they come due. Ms. de Vere said that was correct and that they have submitted the cash model to Silicon Valley Bank at the bank's request indicating that the Company could not pay its debt.

Mr. Bertrand noted that there appears to be a deadlocked board and an insolvent corporation.

Mr. Sullivan said that the insolvency is a matter of opinion and that it is Angelica's duty to provide solutions to the situation without selling the winery. He stated his opinion that she should not have a right to vote on the issue of selling the winery and that Doug Thaxton does not have the right to vote.

Mr. Simon corrected Mr. Sullivan by stating that Mr. Thaxton did not vote and was only asked to recap the current vote and that Ms. de Vere is voting in her capacity as one of the Directors of the Company. Mr. Sullivan acknowledged his understanding of this explanation.

Mr. Bertrand questioned Mr. Sullivan's statement that it was Ms. De Vere's responsibility to correct the Company's insolvency problem. Mr. Sullivan said it was her duty to find other solutions to the problem without Mr. Finn's participation and for her to rein in the expenses of the Company. Mr. Finn asked what expenses he would recommend reducing and whether that included payroll. Mr. Sullivan agreed that should include payroll. Ms. de Vere said that the Company has already cut three positions.

Mr. Finn asked if there was any other discussion on the matter. There being none, he asked for a motion to adjourn. Ms. de Vere moved to adjourn, and Mr. Finn seconded the motion. The meeting was adjourned at 9:14 am.

Respectfully submitted,

Douglas Thaxton
Corporate Secretary
Sullivan Vineyards Corporation

Exhibit 6

# BOARD OF DIRECTORS
## Minutes

---

### 4th September 2015

---

## CALL TO ORDER

Pursuant to notice duly given, a special meeting of the Board of Directors of Sullivan Vineyards Corporation, a California corporation (the "Company"), was called for 9:00 a.m. PDT.

**Attendees:**

| **Director Participants:** | **Via Teleconference:** |
|---|---|
| Stephen A. Finn, Chairman | Douglas Thaxton, Corporate Secretary |
| Ross Sullivan, Director (via teleconference) | Peter Bertrand, Buchalter Nemer |
| Angelica de Vere, Director | Stuart Simon, Buchalter Nemer |
| | Ms. Palmer, Buchalter Nemer |

James Rose, Buchalter Nemer

## NOTICE AND PURPOSE OF MEETING

Notice of Special Meeting of the Board of Directors of Sullivan Vineyards Corporation dated September 1, 2015 was distributed to all Board members and interested parties on September 1, 2015 electronically. (see attached).

Mr. Sullivan asked each attendee present from Buchalter Nemer who they represented.

All present stated they were with Buchalter Nemer that they represented the Company.

Mr. Finn called the meeting to order at 9:07 a.m. and stated the purpose of the meeting was outlined in the Notice of Special of the Board of Directors of Sullivan Vineyards Corporation dated September 1, 2015. [A copy of the Notice of Special of the Board of Directors of Sullivan Vineyards Corporation dated September 1, 2015 is attached hereto and incorporated by reference herein.] He asked if there were any items that were to be added to the agenda?

Ms. de Vere – No
Mr. Sullivan – not at this time

Mr. Finn said that the winery was not being sold today but giving the Company the opportunity to take and accept offers.

The motion was to consider whether the Company or its assets should be sold, to consider offers for the Company and its assets, and to accept an offer. Any offer for the sale of the Company or its assets accepted by the Board would be submitted to the Company's shareholders for approval. Mr. Finn called for a voice vote.

     Ms. de Vere – Yes
     Mr. Sullivan – No
     Mr. Finn – abstain

Mr. Finn asked for any other business.

Mr. Simon asked Mr. Thaxton to confirm that we have a deadlock of the board.

Mr. Thaxton – yes that is correct – 1 yes, 1 no and 1 abstain

Mr. Bertrand said as he understands the current situation is that the Company cannot pay its debt as they come due.

Ms. de Vere said that was correct and that they have submitted the cash model to Silicon Valley Bank at the bank's request indicating that the Company could not pay its debts as they become due.

Mr. Bertrand said that we have a deadlocked board and an insolvent corporation.

Mr. Finn asked if there was any other discussion on the matter.  There not being any do we have a motion to adjourn?

Ms. de Vere made the motion and was seconded by Mr. Finn to adjourn the meeting.  The motion passed unanimously.  The meeting concluded at 9:14 a.m. PDT.


Respectfully submitted,


Douglas Thaxton
Corporate Secretary
Sullivan Vineyards Corporation

# NOTICE OF SPECIAL MEETING
## OF BOARD OF DIRECTORS OF

### SULLIVAN VINEYARDS CORPORATION

---

Notice is hereby given that a Special Meeting of the Board of Directors of Sullivan Vineyards Corporation, a California corporation (the "Corporation"), will be held at the principal offices of the Corporation at 1090 Galleron Road, Rutherford, California, on Friday, September 4, 2015, at 9:00 A.M. Directors who wish to attend the meeting by telephone conference call may call 1-855-282-6330 and enter access code 802-968-996. Alternatively, Directors may join the meeting via WebEx. The meeting number on WebEx is 802-968-996, and the password is SullivanVine.

The purposes of the meeting will be to determine whether the Corporation or its assets should be sold, to consider offers for the Corporation and its assets, and to accept an offer. Any offer for the sale of the Corporation or its assets accepted by the Board would then be submitted to the Corporation's shareholders for approval. The Board may also deal with such other business as may properly come before the meeting.

Angelica de Vere, President

September 1, 2015
Rutherford, California

BN 18977722v1

Exhibit 7

UNANIMOUS WRITTEN CONSENT

OF THE BOARD OF DIRECTORS OF

SULLIVAN VINEYARDS CORPORATION

The undersigned members of the board of directors of Sullivan Vineyards Corporation, a California corporation (the "Corporation"), unanimously waive notice of and the requirement of a meeting of the board of directors and, pursuant to California Corporations Code section 307(b) consent to the following as of October 8, 2015:

RESOLVED, that Angelica J. De Vere is removed from any and all corporate officer positions and that Ross A. Sullivan is named the Corporation's President and Chief Executive Officer with all the authority, rights and obligations contemplated by the Corporation's bylaws and the California Corporations Code;

RESOLVED, FURTHER, Thomas Harnett shall immediately replace Doug Thaxter as the Corporation's Secretary with all the authority, rights and obligations contemplated by the Corporation's bylaws and the California Corporations Code;

RESOLVED, FURTHER, that the Secretary of the Corporation is directed to insert this consent in the corporate records.

_____
Dan Zepponi, Director

_____
Kelleen Sullivan, Director

_____
Ross A. Sullivan, Director

UNANIMOUS WRITTEN CONSENT

OF THE BOARD OF DIRECTORS OF

SULLIVAN VINEYARDS CORPORATION

The undersigned members of the board of directors of Sullivan Vineyards Corporation, a California corporation (the "Corporation"), unanimously waive notice of and the requirement of a meeting of the board of directors and, pursuant to California Corporations Code section 307(b) consent to the following as of October 8, 2015:

RESOLVED, that Angelica J. De Vere is removed from any and all corporate officer positions and that Ross A. Sullivan is named the Corporation's President and Chief Executive Officer with all the authority, rights and obligations contemplated by the Corporation's bylaws and the California Corporations Code;

RESOLVED, FURTHER, Thomas Harnett shall immediately replace Doug Thaxter as the Corporation's Secretary with all the authority, rights and obligations contemplated by the Corporation's bylaws and the California Corporations Code;

RESOLVED, FURTHER, that the Secretary of the Corporation is directed to insert this consent in the corporate records.

_____
Dan Zepponi, Director

_____
Kelleen Sullivan, Director

_____
Ross A. Sullivan, Director

# Exhibit 8

**Sullivan Vineyards Corporation**

**Forecast 1/1/17 - 5/31/17**

|  | Actual January | Projected February | March | April | May |
|---|---|---|---|---|---|
| **REVENUE:** | | | | | |
| Wholesale | $ 5,668 | $ - | $ 95,000 | $ 75,000 | $ - |
| Hospitality | $ 19,502 | $ 58,000 | $ 75,000 | $ 75,000 | $ 48,000 |
| Club | $ 1,483 | $ 190,000 | $ 5,000 | $ 3,000 | $ 200,000 |
| Ecommerce | $ 1,623 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Telemarketing | $ - | $ 15,000 | $ 8,000 | $ - | $ - |
| **TOTAL REVENUE** | $ 28,277 | $ 265,000 | $ 185,000 | $ 155,000 | $ 250,000 |
| | | | | | |
| **COST OF GOODS SOLD:** | | | | | |
| Wholesale | $ 2,209 | $ - | $ 47,500 | $ 37,500 | $ - |
| Hospitality | $ 27,092 | $ 19,720 | $ 21,420 | $ 25,500 | $ 16,320 |
| Club | $ 292 | $ 51,300 | $ 1,350 | $ 810 | $ 54,000 |
| Ecommerce | $ 361 | $ 700 | $ 700 | $ 700 | $ 700 |
| Telemarketing | $ - | $ 5,100 | $ 2,720 | $ - | $ - |
| **TOTAL COGS** | $ 29,954 | $ 76,820 | $ 73,690 | $ 64,510 | $ 71,020 |
| | | | | | |
| **GROSS PROFIT** | $ (1,677) | $ 188,180 | $ 111,310 | $ 90,490 | $ 178,980 |
| *as % of revenue* | -6% | 71% | 60% | 58% | 72% |
| | | | | | |
| **EXPENSES:** | | | | | |
| Wholesale | $ (191) | $ 1,000 | $ 1,000 | $ 2,000 | $ 2,000 |
| Hospitality | $ 49,064 | $ 55,000 | $ 55,000 | $ 65,000 | $ 65,000 |
| Club | $ 8,669 | $ 15,000 | $ 5,000 | $ 5,000 | $ 10,000 |
| Ecommerce | $ 39 | $ 195 | $ 195 | $ 200 | $ 150 |
| Telemarketing | $ 291 | $ - | $ - | $ - | $ - |
| Administration | $ 36,730 | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 |
| Sales and Marketing | $ - | $ - | $ - | $ - | $ - |
| **TOTAL EXPENSES** | $ 94,602 | $ 116,195 | $ 106,195 | $ 117,200 | $ 122,150 |
| | | | | | |
| **EBITDA** | $ (96,280) | $ 86,585 | $ (12,165) | $ (15,705) | $ 57,784 |
| *as % of revenue* | $ (3) | $ 0 | $ (0) | $ (0) | $ 0 |
| | | | | | |
| **OTHER INCOME:** | | | | | |
| Bulk\Sale of assets | $ - | $ - | $ - | $ - | $ - |
| Interest Income | $ - | $ - | $ - | $ - | $ - |
| | $ - | $ - | $ - | $ - | $ - |
| | | | | | |
| **OTHER EXPENSES:** | | | | | |
| COGS - Bulk Wine | $ - | $ - | $ - | $ - | $ - |
| Non-Recurring Legal Expenses | $ 5,081 | $ - | $ - | $ - | $ - |
| Amortization | $ 3,524 | $ 3,524 | $ 3,524 | $ 3,524 | $ 3,524 |
| Interest Expense | $ 89 | $ 65 | $ 65 | $ 65 | $ 65 |
| Tax | $ - | $ - | $ 800 | $ - | $ - |
| Depreciation (in Facilities Allocation) | $ - | $ - | $ - | $ - | $ - |
| **TOTAL OTHER EXPENSES** | $ 8,694 | $ 3,589 | $ 4,389 | $ 3,589 | $ 3,589 |
| | | | | | |
| **NET INCOME** | $ (104,974) | $ 68,396 | $ 726 | $ (30,299) | $ 53,241 |
| | | | | | |
| ***Cash Flow from Operations*** | | | | | |
| Cash balance carryforward | | $ 3,658 | $ 80,143 | $ 114,628 | $ 82,108 |
| Total Revenue | | $ 265,000 | $ 185,000 | $ 155,000 | $ 250,000 |
| Total Expenses | | $ (116,195) | $ (106,195) | $ (117,200) | $ (122,150) |
| Bulk wine income | | $ - | $ - | $ - | $ - |
| COGS - Bulk wine | | $ - | $ - | $ - | $ - |
| Interest expense | | $ (65) | $ (65) | $ (65) | $ (65) |
| $490,000 Loan Payment | | $ - | $ - | $ - | $ - |
| Loan Principal payment | | $ - | $ - | $ - | $ - |
| Ford Principal payment | | $ (255) | $ (255) | $ (255) | $ (255) |
| Packaging Materials + Bottling Costs | | $ (30,000) | $ - | $ (35,000) | $ - |
| Monthly Production Expenses | | $ (42,000) | $ (44,000) | $ (35,000) | $ (35,000) |
| Grapes purchased - Other | | $ - | $ - | $ - | $ - |
| Grapes purchased - SVP | | $ - | $ - | $ - | $ - |
| Capital Expenses | | $ - | $ - | $ - | $ - |
| | | | | | |
| Remaining Cash Balance | $ - | $ 80,143 | $ 114,628 | $ 82,108 | $ 174,638 |

Case: 17-10065    Doc# 8    Filed: 02/02/17    Entered: 02/02/17 16:22:10    Page 33 of 33