PHILIP S. WARDEN (SBN 54752)
 philip.warden@pillsburylaw.com
CECILY DUMAS (SBN 111449)
 cecily.dumas@pillsburylaw.com
JUDY J. BAO (SBN 305560)
 judy.bao@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415.983.1000
Facsimile: 415.983.1200

Attorneys for Creditors Stephen A. Finn
and Winery Rehabilitation, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SULLIVAN VINEYARDS CORPORATION,<br><br>Debtor. | Case No. 17-10065-AJ<br><br>Chapter 11<br><br>OBJECTION OF STEPHEN A. FINN AND WINERY REHABILITATION, LLC TO DEBTOR'S USE OF CASH COLLATERAL<br><br>Judge: Honorable Alan Jaroslovsky |

TO THE HONORABLE ALAN JAROSLOVSKY, UNITED STATES BANKRUPTCY JUDGE, DEBTORS, AND ALL INTERESTED PARTIES:

Secured creditors Stephen A. Finn ("Finn") and Winery Rehabilitation, LLC ("Winery Rehab"), through their undersigned counsel Pillsbury Winthrop Shaw Pittman LLP, respectfully submit this Objection to the motion for authorization to use cash collateral (the "Motion") filed by Sullivan Vineyards Corporation (the "Debtor"), and respectfully represent as follows.

# BACKGROUND

*A.  The Bank Loans and Security Agreement*

1. Winery Rehab[1] is successor in interest to Silicon Valley Bank (the "Bank") with regard two loans made by the Bank to both the Debtor and its affiliate, Sullivan Vineyard Partners ("SVP"), in the original aggregate principal amount of $9,270,000.00, pursuant to a *Loan and Security Agreement* dated May 17, 2012 (the "Loan Agreement"). The Bank loans, consisting of a line of credit in the amount of $1,500,000 and a real estate loan in the amount of $7,770,000, were secured by duly perfected first-priority liens on and security interests in (i) all property of the Debtor, including equipment, machinery, inventory, accounts, intangibles, intellectual property, (ii) the real property of SVP, and (iii) all replacements and proceeds of the foregoing (collectively, the "Collateral"). Both the Debtor and SVP are jointly and severally liable under the Loan Agreement for both the line of credit and the real estate loan. Their obligations to the Bank were unconditionally guaranteed (the "Guarantee") by Finn, the majority shareholder of the Debtor and majority interest holder of SVP.[2]

2. On October 8, 2015, the Debtor purported to remove Finn as a shareholder (through the "unanimous consent" of all shareholders), allegedly pursuant to an October 7, 2015 oral order (the "Oral Order") issued by the District Court for the City and County of Denver, Colorado (the "Colorado Court") in a divorce proceeding involving Finn and Kelleen Sullivan, who is also a shareholder in the Debtor (and a partner in SVP). Although Finn's ownership interests were not actually or properly transferred,[3] on October 8, 2015, the Debtor and SVP gave notice to the Bank

---

[1] Winery Rehab is a single-member LLC formed in Colorado to take assignment of the two Bank loans discussed herein. Finn is its sole member.

[2] Subject to final adjudication in the divorce proceeding discussed herein, Finn owns 58.84% of the equity interests in the Debtor and 60.80% of the partnership interests in SVP.

[3] The purported transfer is a nullity for numerous reasons, including: (1) the Oral Order was not final, is currently on appeal, and no final judgment has been issued; (2) the Colorado Court did not affirmatively require Finn to take any steps to actually transfer his ownership interests in the Debtor (and, to the contrary, enjoined any party from making such a transfer); (3) applicable California law requires closed corporations to follow their own bylaws when transferring shares, which the Debtor failed to do (thus, no alleged transfer of shares occurred); (4) insofar as the Oral Order and other Colorado orders (issued after

(continued…)

of a purported default under the terms of the Bank loan—*viz.*, that Finn was no longer a shareholder of the Debtor. Based on that false assertion, the Bank gave notice of a default under the Bank loans and then exercised its rights against Finn under the Guarantee. Finn formed Winery Rehab, which paid the Bank in full on April 15, 2016 and took assignment of the defaulted loans and the Bank's first-lien interests in the Collateral.

3. As of the Petition Date, the Debtor is indebted to Winery Rehab, on account of the Bank loans, in the amount of $9,937,120.45 (principal and accrued interest, and bank fees paid on purchase, excluding any attorney fees and additional fees assessable under the loan documents).[4]

B. *The Grid Note*

4. Since July 2011, in addition to being the majority equity stakeholder, Finn has advanced funds to the Debtor (and SVP) for operating expenses, capital improvements and equipment, and to stave off loan foreclosures. When certain pre-existing loans were refinanced with the proceeds of the Bank loans discussed above, in May of 2012, Finn was owed approximately $1.6 million (including advances and accrued interest). At closing, Finn was repaid approximately $1.3 million and required to move the remaining approximately $300,000 into a *Subordinated Secured Grid Promissory Note* (the "Grid Note"), which would also govern all future

---

(…continued)
October 8, 2015) are purported to direct the Debtor (and SVP) to take action to transfer Finn's ownership interest—which they do not—any such direction would be legally ineffective because the Colorado Court lacked jurisdiction over the Debtor (and SVP); and (5) even if the Oral Order provided for the immediate transfer of Finn's ownership interest in the Debtor (and SVP)—which it did not—Rule 62(a) of the Colorado Rules of Civil Procedure mandates that such an order cannot be enforced until fourteen (14) days after its entry.

[4] The particulars of Winery Rehab's claim against the Debtor, and the relevant credit and security documents, are set forth in the proof of claim filed contemporaneously herewith. The real estate loan was already in default when assigned to Winery Rehab by the Bank, and the line of credit came due on May 18, 2016. Defaults include (1) misrepresentations (submitting fraudulent financial statements) through September 30, 2016; (2) failure to supply any financial information from October 2016 to date, including requested inventory and sales information; (3) filing fraudulent original and/or amended tax returns for 2013, 2014 and 2015; (4) showing Finn's ownership as zero even though the final divorce order is on appeal; (5) making prohibited loans to third parties (insider JoAnna Sullivan); (6) failure to meet financial projections through September 2016; (7) payment default as both loans came due and payable; (8) invalidity for purported elimination of subordinated secured debt; (9) violation of subordination agreement by purported elimination of subordinated secured debt; and (10) impermissible transfer of subordinated debt to an affiliate.

loans made by Finn to the Debtor and SVP. The Debtor and SVP are jointly and severally liable under the Grid Note.

5. The Finn loans under the Grid Note are secured by a duly perfected second-priority lien on and security interest in the Collateral. Since the refinancing, Finn has made additional loans to the Debtor and SVP—all of which are governed and secured under the Grid Note. On August 24, 2016, Finn demanded repayment of the Grid Note in full.

6. As of the Petition Date, the Debtor is indebted to Finn, under the Grid Note, in the amount of $4,653,709.01 (principal and accrued interest, excluding any other fees assessable under the Grid Note).[5] It is anticipated that the Debtor will fail to acknowledge Finn's secured Grid Note claim in its schedules and statement of financial affairs, having purportedly re-characterized its obligations to Finn by unilaterally deleting them as debt on its books and recording them as equity contributed by Finn to SVP.

C. *No Consent For Use of Cash Collateral*

7. As noted above, Winery Rehab, as first-lien lender, and Finn, as second-lien lender, both gave notice pre-petition of the Debtor's default under the applicable loan documents. Winery Rehab exercised its contractual remedies by recording the default election to sale and scheduling a foreclosure sale of its Collateral. The Debtor's chapter 11 filing is a transparent attempt to prevent the trustee sale from occurring.[6]

8. By email to the Debtor's counsel on February 2, 2017, notice was given to the Debtor that Winery Rehab and Finn do not consent to the Debtor's use of their cash collateral.

---

[5] The particulars of Finn's personal claim against the Debtor, and the relevant credit and security documents, are set forth in the proof of claim filed contemporaneously herewith.

[6] At the moment, the secured creditors are also enjoined from proceeding with the sale by an injunction entered *sua sponte* on January 13, 2017 by the Honorable William H. Orrick, in connection with dismissing *Finn v. Sullivan*, Case No. 16-cv-05285-WHO, in the United States District Court for the Northern District of California. On January 27, 2017, Judge Orrick ordered the Debtor to show cause on March 8, 2017 why the injunction should not be lifted.

# OBJECTION

9. The Debtor's motion for authorization to use cash collateral must be denied for the following reasons, among others.

*A. The Chapter 11 Filing is Unauthorized and Inappropriate*

10. As an initial matter, this case should be dismissed because filing of the chapter 11 petition was not duly authorized under the Debtor's governing corporate documents and applicable California law, where:

- The Colorado Court cannot properly transfer shares from Finn to K. Sullivan, based on the Oral Order.
- There was no proper meeting of the Board or of shareholders.
- Notice was defective.
- Finn is still a member of the Board, as is Angelica DeVere.

Winery Rehab and Finn reserve right to move to dismiss and expect do so.

11. Under the terms of the Bank loans, Winery Rehab is entitled to receive the Debtor's (and SVP's) financial statements and any other requested financial information. *See* Loan Agrmt. § 13 ("SVP Reports") and § 14 ("SVC Reports") (requiring (a) Quarterly Year-to-date Borrower-prepared, GAAP-based Financial Statements and Compliance Certificates within 30 days of the end of each quarter, (b) Federal Income Tax returns with all schedules and K-1's within 15 days of filing, and (c) Projections of financial performance for each year, broken out by month, approved by the executive management of SVP (Board of Directors in the case of SVC), not later than April 30, of such year); *see also id.* § 5.2 ("Affirmative Covenants"). The Debtor and SVP have refused (NB: not simply failed, but affirmatively declined) to provide monthly financial statements for October, November and December 2016 along with requested detail of inventory at each month-end. However, to the extent previously disclosed, the Debtor's sales and other information demonstrate that the Debtor's business is being mismanaged. This is consistent with a history of incompetence and gross mismanagement by the Debtor's current management, demonstrated by (among other things):

- o Improper removal of Angelica de Vere and Finn from the Board (by the Sullivans), and termination of the only management team that ever showed a profit;
- o CEO Ross Sullivan's lack of the requisite experience to manage/market a winery;
- o Consistent failure to meet any sales and revenue projections;
- o Ongoing (and worsening) losses;
- o Inability to [service debt and otherwise] pay secured creditors;
- o Departure of the Debtors' well-regarded winemaker due to winery operations plagued by dysfunction and acrimony with management;
- o Consistent over-estimation of the value of inventory;
- o Reliance on limited distribution channels (a wine club and the flash wine distribution website, Wine 'Til Sold Out);
- o Substantial disbursements to Joanna Sullivan, in violation of the Bank loan;
- o Failure to replace inventory;
- o Derailment of an opportunity to sell the winery for $18 million in 2015;
- o Misreporting to the IRS, anticipated to result in an audit; and
- o Tax code violations in connection with the attempted unilateral manipulation of Finn's debt to equity.

Under these circumstances, appointment of a trustee would be appropriate, and Winery Rehab and Finn reserve the right to seek such relief. The Debtor should not be permitted to waste secured creditors' cash collateral in the meantime.

B.  **The Debtor Cannot Provide Adequate Protection**

12. As the Debtor acknowledges, the cash that it seeks to use (to fund its money-losing operations, payments to insider employees, administrative expenses incurred in prosecuting this improperly filed case, and undisclosed other disbursements) is the cash collateral of Winery Rehab and Finn. *See* Motion ¶ 1; 11 U.S.C. § 363(a). Winery Rehab and Finn do not consent, for purposes of section 363(c) of the Bankruptcy Code, to any use of their cash collateral, and request that the Court prohibit the use of such cash collateral pursuant to section 363(e) of the Bankruptcy Code to the extent the Debtor fails to provide adequate protection.

1    13.     Withholding of consent and prohibition of the use of cash collateral are especially necessary and appropriate in this case, where the Debtor has been mismanaging its business and the Collateral, and has failed to disclose the essential financial information that Winery Rehab and Finn are entitled to receive.  As noted, this case was inappropriately filed without proper authority, and is in essence a two-party dispute. Debtors precipitated the default of the Bank loan, which caused the Bank to make demands under the Guarantee.  Finn, as guarantor, settled the Guarantee with the Bank and Winery Rehab took assignment of the Bank's claims and Collateral rights. Now, the Debtor seeks not only to forestall the consequences of its own actions (*i.e.*, a foreclosure by Winery Rehab) by filing this chapter 11 case, but its seeks to use the cash collateral of Winery Rehab and Finn to do so—all the while keeping Winery Rehab and Finn in the dark about the Debtors' finances, business performance and prospects.  Either management is incapable of providing the necessary information or management is refusing to do so for other, equally troubling, reasons.  Under these circumstances, granting non-consensual use of cash collateral warrants exceptional justifications and protections.

14.     Even if the Debtor were to provide the contractually required disclosures, however, the Debtor will still have failed to carry its burden of establishing that Winery Rehab and Finn will be adequately protected with regard to its use of cash collateral.  The Bankruptcy Code *requires* that adequate protection be provided where consent is not given. *See* 11 U.S.C. § 363(e) ("on request of an entity that has an interest in property used…or proposed to be used…the court, with or without a hearing, *shall* prohibit or condition such use…as is necessary to provide adequate protection of such interest.") (emphasis added).  The burden of demonstrating adequate protection is on the Debtor, not on the secured creditor. *See id.* at § 363(p)(1).

15.     Here, the Debtor has not made—because it cannot make—the required showing. The sum total of the Debtor's argument is that it believes that Winery Rehab and Finn are adequately protected because (a) the use of cash collateral will preserve a "cash flow stream," and (b) there is a substantial equity cushion. Mot. at ¶ 6; *Declaration of Ross Sullivan In Support of Motion to Use Cash Collateral* ("R.Sullivan Decl.") at ¶¶ 20-21.  Both arguments must be rejected.

- 7 -
Case: 17-10065   Doc# 11   Filed: 02/03/17   Entered: 02/03/17 09:16:57   Page 7 of 10
4841-0300-0896.v4

16. The Debtor's first rationale (that use of cash will preserve anticipated income) fails because the supporting information regarding expected revenues is simply not credible. No substantiation is provided for the pie-in-the-sky budget of projected revenues presented at Exhibit 8 of Mr. Sullivan's declaration. To the contrary, it must be observed that the Debtor historically has *never* met projected revenues under current management. As the secured creditors have seen, the Debtor failed to meet Mr. Sullivan's projections for 2016, and there is no reason to believe that his projections for 2017 are any more realistic. Those projections expect a gross margin of more than 70%, which the Debtor has never been able to attain, and the secured creditors question the Debtor's ability to maintain the projected level of Club Sales. The fact is, the Debtor's business has been a money-losing operation, and there is no reason to think that it will turn the corner in February as Mr. Sullivan's projections predict. *See* R. Sullivan Decl., Exh. 8. Furthermore, on the other side of the equation, the Debtor has failed to provide a sufficiently detailed cash collateral budget that Winery Rehab, Finn, and the Court can evaluate. Thus, the Debtor's first basis to approve the use of cash collateral is nothing more than an unsubstantiated "belief."

17. The Debtor's second rationale (that Winery Rehab and Finn enjoy a comfortable equity cushion in the Collateral) likewise is a fantasy. Indeed, like a mirage wavering in the heat, the Collateral value according to the Debtor appears to alternate between $32 million, *see* R. Sullivan Decl. at 20, and a value that merely "exceeds $25 million." *See* Mot. at ¶ 6. Even the lower valuation is inflated. For instance, Mr. Sullivan places a total value on the Debtor's bottled wine of $5.5 million, which is not in line with actual sales. Similarly, the intangibles of $4.678 million is worth far less (and may actually be zero). Moreover, Mr. Sullivan's valuations are belied by his own testimony that the Debtor has been unable to obtain "take-out financing" to pay off Winery Rehab and Finn. *See* R.Sullivan Decl. at ¶ 13. Surely the Debtor could obtain refinancing if the outstanding combined first-lien and second-lien debt of $14.2 million were truly oversecured by anywhere from $10 million to 18 million. The truth is that there is no equity cushion.[7]

---

[7] In addition to his asset valuation pronouncements, Mr. Sullivan also does not count the Finn loans as an obligation of the Debtor because, among other things, they allegedly "were not properly authorized" and

(continued…)

18. The Debtor makes no other offer of adequate protection for Winery Rehab and Finn, because it cannot. There is no additional or unencumbered property on which replacement liens may be had, as Winery Rehab and Finn already have liens on all assets. Any potential offer of current payments under the Bank loan and Finn loans would be meaningless without credible evidence of wherewithal to make such payments and credible assurances that the Debtor can continue to make such payments. Such evidence and assurance is glaringly lacking, given the Debtor's failure to provide financial statements that counteract the Debtor's most recent available financial statement (September 2016) which showed that it is unable to pay its debts.[8] Likewise, any potential offer of a super-priority administrative expense claim would be unavailing, where there is no basis to expect that such a claim would have value, given the direction of the Debtor's prospects and its lack of disclosure.

## CONCLUSION

WHEREFORE, Stephen A. Finn and Winery Rehabilitation, LLC respectfully request that the Court deny the Debtor's motion for authorization to use their cash collateral, and grant such other relief as the Court deems appropriate.

*[Signature page follows]*

---

(…continued)
the Debtor did not benefit from them. *See* R.Sullivan Decl. at ¶¶ 11, 15. To the contrary, much of the inventory listed in Mr. Sullivan's declaration was produced from bulk grapes purchased with financing that Finn provided. Also, the office and tasting room equipment, barrels, tanks and wine production equipment (approximately $1.4 million of the value listed), along with a majority value of the house (not separately disclosed) were acquired with Finn loan proceeds.

[8] In any event, the loans are matured and due.

| | |
|---|---|
| 1 | Dated: February 3, 2017 |
| 2 | By  */s/ Philip S. Warden* |
| 3 | Philip S. Warden |
| 4 | Philip S. Warden (SBN 54752) |
|  | Cecily Dumas (SBN 111449) |
| 5 | Judy J. Bao (SBN 305560) |
|  | PILLSBURY WINTHROP SHAW PITTMAN LLP |
| 6 | Four Embarcadero Center, 22nd Floor |
| 7 | San Francisco, CA 94111-5998 |
|  | Telephone:415.983.1000 |
| 8 | Facsimile: 415.983.1200 |
|  | philip.warden@pillsburylaw.com |
| 9 | cecily.dumas@pillsburylaw.com |
|  | judy.bao@pillsburylaw.com |
| 10 | |
| 11 | *Attorneys for Creditors Stephen A. Finn and Winery Rehabilitation, LLC* |

- 10 -