PHILIP S. WARDEN (SBN 54752)
  philip.warden@pillsburylaw.com
CECILY DUMAS (SBN 111449)
  cecily.dumas@pillsburylaw.com
JUDY J. BAO (SBN 305560)
  judy.bao@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:    415.983.1000
Facsimile:    415.983.1200

Attorneys for Secured Creditors
Stephen A. Finn and Winery Rehabilitation, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>SULLIVAN VINEYARDS CORPORATION,<br><br>                Debtor-in-Possession.<br><br>_____<br><br>SULLIVAN VINEYARDS PARTNERSHIP,<br><br>                Debtor-in-Possession.<br><br>_____ | Case No. 17-10065-AJ<br>(Jointly Administered)<br><br>(Chapter 11)<br><br>Date:      April 11, 2017<br>Time:     9:00 a.m.<br>Courtroom:  99 E Street<br>             Santa Rosa, CA 95404<br>Judge:     Hon. Alan Jaroslovsky<br><br>NOTICE OF LODGMENT OF REPORTER'S TRANSCRIPT DATED AUGUST 27, 2015; CASE NO. 26-67001; NAPA COUNTY SUPERIOR COURT |

TO THE HONORABLE ALAN JAROSLOVSKY, UNITED STATES

BANKRUPTCY JUDGE, DEBTOR AND ALL INTERESTED PARTIES:

- 1 -

PLEASE TAKE NOTICE that pursuant to Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure and Rule 7030-1(b)(1)-(4) of the Local Bankruptcy Rules, Creditors Stephen A. Finn ("Finn") and Winery Rehabilitation, LLC ("Winery Rehab") hereby lodges the Reporter's Hearing transcript dated August 27, 2015; Case No. 26-67001; California Superior Court, Napa County (Exhibit A)

Dated: April 5, 2017

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Philip S. Warden*

Philip S. Warden (SBN 54752)
Cecily Dumas    (SBN 111449)
Judy J. Bao   (SBN 305560)
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Phone: (415) 983-1000
Fax: (415) 983-1200
philip.warden@pillsburylaw.com
cecily.dumas@pillsburylaw.com
judy.bao@pillsburylaw.com

*Attorneys for Creditors Stephen A. Finn*
*and Winery Rehabilitation, LLC*

4828-3933-0374.v1

# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

HONORABLE RODNEY G. STONE, JUDGE, PRESIDING

DEPARTMENT I


SULLIVAN VINEYARDS,                    )

          Plaintiff,          )

      vs.                          ) CASE NO. 26-67001

KELLEEN SULLIVAN FINN,                 )

          Defendant.          )

                        )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

THURSDAY, AUGUST 27, 2015

COURTHOUSE, NAPA, CALIFORNIA


BAY AREA TRIAL REPORTERS

P.O. BOX 2829

NOVATO CA 94947

```
 1                 A P P E A R A N C E S

 2

 3    For SULLIVAN VINEYARDS:

 4    Buchalter Nemer

 5    BY:  JAMES R. ROSE and PETER G. BERTRAND

 6    1500 Railroad Avenue

 7    St. Helena, CA 94574

 8

 9    For KELLEEN SULLIVAN FINN:

10    Gagen McCoy

11    BY:  CHARLES A. KOSS

12    1030 Main Street

13    Suite 212

14    St. Helena, CA 94574

15

16

17

18

19

20

21

22

23

24

25    Reported by:  Mariah J. Dietz, CSR #13198
```

```
1   THURSDAY, AUGUST 27, 2015                    8:50 A.M.

2                      ---oOo---

3                P R O C E E D I N G S

4

5        THE COURT:  In the matter of Sullivan Vineyards

6   Corporation and Sullivan Vineyards Partners versus

7   Kelleen Sullivan Finn.

8        MR. BERTRAND:  Good morning, your Honor.  Peter

9   Bertrand, Buchalter Nemer, appearing on behalf of

10  Sullivan Vineyard Corporation and Sullivan.

11       MR. ROSE:  Morning, your Honor.  James Rose

12  appearing on behalf of Plaintiffs, also with Buchalter

13  Nemer.

14       MR. KOSS:  Good morning, your Honor.  Charles

15  Koss, Gagen McCoy, on behalf of Defendant, Kelleen

16  Sullivan.

17       THE COURT:  All right.

18       MS. KELLEEN SULLIVAN:  I'm Kelleen Sullivan.

19       THE COURT:  Good morning.

20       MS. KELLEEN SULLIVAN:  Good morning.

21       THE COURT:  All right.  So this matter is on for

22  two reasons:  One, there is an application for an order

23  authorizing Plaintiffs to continue operating in the

24  course of business, and to also consummate the sale of

25  assets.  And it is also on for a motion to seal.
```

1      Yesterday, the Court issued its tentative ruling

2   denying Plaintiff's motion to seal.  And Mr. Rose has

3   requested oral argument.  And so, Mr. Rose.

4          MR. ROSE:  Yeah.

5          THE COURT:  You may proceed.

6          MR. ROSE:  Your Honor, on the motion to seal,

7   and I don't think that Mr. Koss objects to the motion to

8   seal.  At least in the last hearing, he had no issue

9   with sealing the particular redacted portions of the

10  paperwork that was filed.

11         As I indicated in the motion, there is sensitive

12  confidential and proprietary information regarding the

13  financial operation of this winery.  I believe that

14  those are sensitive, and I believe that in the interest

15  of this business that the disclosure of that in the

16  public record serves no purpose.  I believe the

17  protection of the financial issues that are currently

18  facing this winery, I think we should keep those sealed.

19         THE COURT:  All right.

20         MR. ROSE:  Again, I don't think Mr. Koss objects

21  to the sealing of that.

22         THE COURT:  Just is -- Mr. Koss, is that

23  accurate?  Mr. Rose sometimes puts words in people's

24  mouths.

25         MR. KOSS:  You know, your Honor, I think

1    initially, I am not sure I cared.  But I do now.

2    Because after I filed my papers, and there is some

3    discussion of some financial information in there, I get

4    a scathing letter about how dare I file in an open

5    document open to the Court these sensitive financial

6    things that are harming the corporation and I should be

7    sanctioned for my conduct.

8         And while Mr. Rose says it serves no useful

9    purpose to put this in the public record, in fact,

10   that's what happens when you file lawsuits.  It is a

11   public forum.  We don't have Star Chambers anymore.

12   Things are open to the public.  And there are many, many

13   cases on this that describe the constitutionality of

14   simply closing the files to the public, mostly coming up

15   with the press.  And I think the claim that this

16   financial information is harmful to the corporation is

17   just wild speculation.

18         I can also suggest, your Honor, that in

19   connection with the divorce proceedings, I thought

20   documents had been filed in connection with that, but

21   apparently, there weren't.  There is a big stack of

22   things with all kinds of stuff in there.  Well, they

23   decided not to go forward and are going to get a private

24   judge and all that, so it wasn't filed, but they

25   certainly were prepared to file it.  I guess the

1   argument is, well, that's back in Denver, no one's going

2   to look at that. Out here, out here the press is going

3   to look at this and, oh, my God, can you imagine the

4   harm to the corporation. And I guess I can't imagine

5   the harm to the corporation.

6         THE COURT: Well --

7         MR. ROSE: Mr. Koss filed no opposition to the

8   request to seal. And in his representations to Diane

9   Price at the last hearing, he also indicated that he did

10  not object to the sealing of the papers, and that is a

11  fact.

12        MR. KOSS: I've changed my mind.

13        THE COURT: Pardon me.

14        MR. KOSS: I've changed my mind then.

15        MR. ROSE: Okay.

16        THE COURT: Well, you know, the Court has to

17  find an overriding interest that will be prejudiced.

18  And I'm not so sure that the sensitive financial

19  information that you indicated, Mr. Rose, rises to that

20  level.

21        That said, you know, we have an interesting

22  situation here with this winery and with the divorce of

23  the parties. And, you know, I'm interested to know, you

24  know, why is there a divorce proceeding filed in

25  Colorado? And somewhere in one of the declarations, I

1  read that Ms. Sullivan is a resident of California.  Is

2  that true?  Is Mr. Finn a resident of Colorado?

3      MR. ROSE:  Yes.  The marriage -- my

4  understanding is the marriage was -- they were married

5  in Maui, but they were legal residents of the State of

6  Colorado.  At the time of the divorce, both were legal

7  residents of the State of Colorado.

8      THE COURT:  Okay.  So that's properly before

9  them there.

10     MR. ROSE:  That is correct.

11     THE COURT:  So the question is, you know, we

12  have this restraining order issued by the Colorado

13  Court, which is similar to the restraining orders that

14  are issued in family law matters all the time.  In fact,

15  there's an automatic restraining order in every family

16  law matter that, you know, you cannot transfer assets,

17  except in the ordinary course of business.  And so, you

18  know, that's not an unusual order.  And the question is,

19  in my mind, is why this matter isn't litigated in

20  Colorado --

21     MR. ROSE:  I believe that the --

22     THE COURT:  -- as part of the divorce

23  proceeding.  And, furthermore, that Mr. Finn, it seems,

24  has a majority interest in both the corporation and in

25  the partnership.

1    MR. ROSE:  That's true.  That's the same

2  question that Diane Price asked at the first hearing.

3  And the answer is please take a look at the declaration

4  of Mr. Fox, Mr. Finn's attorney in Colorado.  And you'll

5  see that, procedurally, Mr. Finn was unable to get back

6  into court, because of various, we would call them,

7  games that were played in Colorado.

8    If you read Mr. Fox's declaration, which was not

9  rebutted in the opposition, they rescheduled a motion

10  for reconsideration.  Kelle Finn's -- Kelle Finn

11  Sullivan's attorney showed up and said, your Honor, I

12  thought this was a status conference, I didn't know I

13  was here on the motion for reconsideration, I need a

14  continuance, I don't have witnesses or documents.  The

15  Court suggested that they go out on a reference to have

16  the matter resolved.  Both attorneys stipulated to that.

17    THE COURT:  This is a motion for reconsideration

18  of the issuance of the temporary restraining order.

19    MR. ROSE:  Restraining order, that is correct.

20  So there was an order of reference.  Both attorneys

21  agreed to that.  Ms. Sullivan's -- or Ms. Sullivan's

22  attorney selected the arbitrator, Mr. Finn agreed to it,

23  and then Kelle Sullivan refused to sign the agreement to

24  retain the arbitrator or the referee, and then

25  Ms. Sullivan's attorney withdrew for failure to

1  cooperate.  So she's now without Counsel, so nothing can

2  proceed in Colorado.  And, again, if you look at the

3  declaration of Mr. Fox, the Judge says, I don't have

4  time for this until November or December to even take

5  this matter up.

6      My understanding is that Ms. Sullivan has,

7  again, retained Counsel.  They have selected another

8  arbitrator.  And, again, Ms. Finn Sullivan has refused

9  to sign the stipulation appointing that referee.  So

10  there's no way of getting in, so that's why we're here.

11      We have exigent circumstances, your Honor.  Right

12  now the Sullivan Vineyards Winery is insolvent legally;

13  they cannot pay their bills.  They currently owe

14  $90,000.00 to Andy Beckstoffer that is several months

15  past due.  If that's not paid, they don't have money for

16  payroll.  That is just an undisputed fact.  We have

17  provided comprehensive accounting to the Court.

18      In fact, your Honor, I have requested that the

19  CEO of Sullivan Vineyards and the CFO be present here

20  today.  I'm asking the Court if you have any questions

21  at all about the financial solvency and the financial

22  integrity of these companies to put the CFO and CEO, and

23  we'll swear them in and you can ask them any questions

24  you like.  I also offer that to Mr. Koss.  This is an

25  open book here.  This company is ready to go into

1  receivership.

2          THE COURT:  Okay.  Thank you, Mr. Rose.  But

3  first of all, we have to deal with this motion to seal.

4          MR. ROSE:  I understand.

5          THE COURT:  And determine whether or not all of

6  this information is going to be public information.

7  Thus far, the tentative ruling of the Court is that your

8  motion to seal is denied.  And so unless you have some

9  further argument on that motion, I'll go ahead and make

10  a ruling or take the matter under submission.

11          MR. ROSE:  Yeah.

12          THE COURT:  So that's where we are first of all.

13  And --

14          MR. ROSE:  I understand.

15          THE COURT:  -- then depending on what the ruling

16  is on the motion to seal, then we need to go ahead and

17  set the matter for a hearing on this motion you have to,

18  basically, sell the assets of the corporation.

19          MR. BERTRAND:  Your Honor, Peter Bertrand,

20  Buchalter Nemer.  If I might be heard on the motion to

21  seal.

22          The types of information we sought to seal are

23  confidential business projections, which would

24  constitute trade secrets under the Uniform Trade Secrets

25  Act.  There's information regarding proposed purchase

1    price for the winery, and we continue to try and solicit

2    other offers.  That would have a chilling effect

3    potentially on the ability to obtain other offers,

4    better offers for the winery.  So the types of

5    information that we have requested be under seal -- this

6    is not a publicly traded company, this is private

7    commercial financial information of the business only.

8         THE COURT:  I didn't see a declaration

9    indicating that there were trade secrets being

10   protected.

11        MR. BERTRAND:  Well, the -- I mean, I can

12   represent to your Honor that the --

13        THE COURT:  I mean, it's a thick file.  Maybe I

14   missed it.

15        MR. BERTRAND:  Yeah.  The fact of the matter is

16   that if you compare the un-redacted documents to the

17   redacted documents, it's apparent that what was

18   redacted --

19        THE COURT:  Whose declaration indicate that

20   there are trade secrets that are being protected?

21        MR. BERTRAND:  I don't know that there was a

22   declaration, per se, saying trade secrets.  I can just

23   tell you that I do a lot of trade secret litigation, and

24   the types of information that was redacted would fall

25   within the definition of trade secrets.

1     THE COURT:  So it was for me to determine that

2  it was a trade secret based upon the information that's

3  provided?  No one told me this was a trade secret.

4     MR. BERTRAND:  Correct.  I apologize for that,

5  your Honor.

6     THE COURT:  And so what information are you

7  contending is a trade secret?

8     MR. BERTRAND:  So, for example, there are

9  confidential cash flow projections, that constitutes a

10  trade secret.  That could provide competitive advantage

11  to others if they knew what our business plans were.

12  There are financial records having to do with past

13  performance of the company.  The status of current loans

14  with Silicon Valley Bank and other creditors.  Those are

15  not -- again, it's a private company, it's not a

16  publicly traded company.  Those --

17     THE COURT:  And is there a case that indicates

18  that this type of sensitive financial information is

19  information that should not be disclosed to the public?

20     MR. BERTRAND:  There are quite a few cases

21  that --

22     THE COURT:  Can you give me one?

23     MR. BERTRAND:  Let's see.  Off the top of my

24  head, DVD/Bunner would be a case that would talk

25  about --

1    THE COURT:  And do you happen to know the cite

2  of that case?

3    MR. BERTRAND:  I don't, your Honor.

4    THE COURT:  Was it cited in your points and

5  authorities?

6    MR. BERTRAND:  It was not.

7    THE COURT:  Just because the parties at one time

8  agreed that the information would be sealed, does not

9  allow the Court to seal the information absent an

10  overriding compelling interest.  And, you know,

11  everybody -- you all know that.  And so it's not that

12  I'm trying to put all this information out for the

13  public to view.  It's required for me to do that,

14  because the public has a right to know, unless there is

15  an overriding interest that they shouldn't.  So, you

16  know, I'm interested in knowing the cases that provide

17  that this sensitive financial information -- and I agree

18  that it is sensitive financial information dealing with

19  this winery -- that providing that to the public and

20  opening these records up requires me to seal this.  I

21  haven't seen a case that says that.

22    MR. BERTRAND:  With your Honor's indulgence,

23  we'd be happy to submit a supplemental brief on the

24  issue.

25    THE COURT:  And Mr. Rose is, you know,

1    indicating that this is an exigent circumstance, because

2    of the financial situation of the winery.  And, you

3    know, I can appreciate that.  So I don't want to delay

4    this any longer than we have to.

5            MR. BERTRAND:  Right.  I would agree with that,

6    your Honor.

7            THE COURT:  So -- and, Mr. Koss, do you have any

8    objection to providing supplemental information to the

9    Court on this issue?

10           MR. KOSS:  No, your Honor.  If the Court thinks

11   that would be helpful, I'd be happy to.

12           THE COURT:  I think it would.  What we're trying

13   to do is figure out what to do on this case.

14           MR. BERTRAND:  Right.

15           THE COURT:  And, you know, there have been

16   attempts to mediate this matter that have been

17   unsuccessful for one reason or another.  You know, I've

18   read the declarations indicating that retired Judge

19   Snowden made himself available in the middle of this

20   month.  And, you know, he is a very good mediator for

21   things like this, because of his experience in the wine

22   industry.  But, you know, if the parties are unwilling

23   to stipulate to that, then, you know, we can hear this

24   matter.  And it seems to me that, you know, this issue

25   really is part of the Colorado divorce matter, because

1   the parties are in the middle of that.

2        MR. BERTRAND:  And if I might be allowed to

3   address that, as well, your Honor.  So the parties in

4   Colorado stipulated on the record -- and it's my

5   understanding that Mrs. Finn participated in that

6   stipulation telephonically -- to the appointment of a

7   special master, a retired judge.  That was done eight

8   weeks ago.  And because Mrs. Finn has refused to sign a

9   one-page document simply acknowledging her agreement, we

10  have been unable to proceed in Colorado.  And given the

11  passage of time and the continued deterioration of the

12  financial condition of the winery here in California, we

13  were simply placed in a position of not having another

14  alternative.

15       The other thing I would note is although your

16  Honor said that temporary restraining orders are

17  typically issued in family law cases here, the order

18  that was entered was not with -- was without any

19  hearing, without any notice to the corporation or the

20  partnership.  We had no notice of the proceeding.  And

21  the Colorado family law lawyers for Ms. Finn

22  acknowledged that the form of the order was

23  overreaching.  That it purported to affect the rights of

24  the winery to conduct business in California.

25       THE COURT:  Well, you know -- if the parties

1  were to file for a divorce in California.

2      MR. BERTRAND:  Yes.

3      THE COURT:  I don't know who filed.  But whoever

4  the Petitioner was, as part of our standard restraining

5  orders and our summons there is a standard restraining

6  order that is issued in every single divorce decree that

7  the parties are not to transfer community assets, except

8  in an ordinary course of business or for the necessities

9  of life.  And so that would be issued in California

10  without any hearing.  It's issued every single divorce.

11      And so the parties, it sounds to me -- I mean, I

12  haven't read through this whole thing.  It sounds like

13  there is a potential community interest, although

14  Mr. Finn has a separate interest clearly, but there

15  sounds like there's a community interest.  I mean, are

16  we denying there's a community interest?  Are you saying

17  it's all separate property?

18      MR. KOSS:  No, your Honor.  Those orders are

19  issued in California with no notice whatsoever, and

20  they've been held to be constitutional.

21      THE COURT:  So -- but the real problem is this:

22  And it's not -- it's not directed at the corporation or

23  at the partnership.  But it is directed at Mr. Finn and

24  his interest in the corporation or the partnership.  So

25  Mr. Finn is restrained from transferring his interest in

1    the corporation or the partnership, absent a court

2    hearing.  That's the way I understand it.

3         MR. BERTRAND:  And my reading of the order is

4    that it's broader than that.  It says that the winery

5    cannot be listed for sale.  It specifically identifies

6    the winery.

7         And going back to the question that your Honor

8    asked, Counsel for Mrs. Finn, I believe, misspoke.  It

9    is undisputed that Mr. Finn's interest in the winery is

10   his separate property, that the source of the funds were

11   from the sale of his, of two properties.  So there -- it

12   isn't a community interest.  And in the marital prenup

13   agreement, it's very specific in section 3.1 and section

14   5.4, they specifically state that there are no

15   limitations on the individuals handling of their

16   separate property.  In fact, I can read it to you.

17        THE COURT:  No, that's fine.

18        MR. BERTRAND:  I can read it to you, your Honor,

19   if you desire.  So the issue here is if the limitation

20   were, okay, Mr. Finn, you can't dispose of your interest

21   in the partnership and you can't dispose of your

22   interest in the corporation, that's one thing.  But

23   Mr. Finn is the Chairman of the Board, and he has

24   fiduciary obligations to make sure the creditors get

25   paid, that to the extent that something can be returned

1    to the investors, that that be returned.

2          THE COURT:  Well, no one's -- there's no order

3    preventing Mr. Finn from conducting this business as you

4    would in the ordinary course of business.  Which means

5    to pay these creditors that are out there.  He should

6    absolutely be doing that.  There's no prohibition

7    against doing that.  What there is right now is for him

8    entirely selling the winery, and that's the issue is the

9    way I see it.

10          MR. BERTRAND:  Okay.  But the sale of the winery

11    would not necessarily constitute a sale of his interest

12    in the winery.  In other words, the sale of the winery

13    would likely be an asset sale.  It would not be an --

14    it's not necessary to be a stock sale.  So what we're

15    concerned is that somebody tries to construe the order

16    in Colorado to say the winery is insolvent, the winery

17    has a purchaser who will enable it to pay all creditors,

18    keep the good will of the winery, keep people employed.

19    And somebody is saying, well, you can't -- you as a

20    member of the Board of Directors, cannot vote to do so,

21    even though it's in the best interest of the corporation

22    and the partnership.  And that's, in fact, what they

23    argue again and again and again in their papers.  Which

24    underscores exactly why eights weeks have gone by and

25    Mrs. Finn has failed to sign the one-page document to

1    put in place the judges that now two sets of lawyers

2    have chosen.  That's the only reason why that's

3    happening, so that to try and make the argument that

4    Mr. Finn cannot discharge his duties as a corporate

5    officer.  And if you read their papers, it's just you

6    read it 15 times in there.

7            THE COURT:  Okay.  So what I will do is I will

8    allow you to provide the Court with supplemental points

9    and authorities with regards to the motion to seal.

10           MR. BERTRAND:  Thank you, your Honor.

11           THE COURT:  I'm going to take the motion to seal

12   under submission.  And I -- when can you give me your

13   points and authorities?

14           MR. BERTRAND:  Today is Thursday.  I would

15   endeavor to get it to you tomorrow afternoon or Monday

16   morning at the latest.

17           THE COURT:  Okay.  So why don't we say that you

18   provide your written points and authorities by the 31st,

19   the end of business Monday.

20           MR. BERTRAND:  Thank you very much, your Honor.

21           THE COURT:  And, Mr. Koss, would you like to

22   file reply to that?

23           MR. KOSS:  Of course, yes.

24           THE COURT:  Okay.  And so I'll give you until

25   the -- why don't we push it back?  I'll give you until

1   the -- the original points and authorities must be filed

2   by September 1st, end of business. And I'll give you

3   until September 3rd, two days to file a reply.

4           MR. KOSS: What day of the week is that?

5           THE COURT: It's a Thursday. Is that a problem

6   for you? Would you rather come on Friday, come to Napa

7   on Friday and have lunch here?

8           MR. KOSS: Well, I may be in Santa Fe, that's

9   why I'm trying to remember when I'm leaving. What day

10  would I have?

11          THE COURT: We can do the 3rd or the 4th. The

12  3rd or the 4th, whatever you want.

13          MR. KOSS: The 4th I think is that Friday,

14  that's when I leave. So the 3rd I guess is --

15          THE COURT: So September 4th, you have to have

16  your reply filed by noon; okay, because we close early

17  on Fridays. And then we'll put the matter over for a

18  hearing on September 10th, so I'll have a chance to take

19  a look at that. And it will be a hearing on the motion

20  to seal, considering the supplemental information.

21          And what I would intend to do then is, dependent

22  on, you know, how the motion -- if the motion to seal is

23  still denied, then that's one set of circumstances. And

24  if it's granted, that's another. And what I intend to

25  do then is set the matter for a hearing on the motion

1  for sale of the assets for a hearing down the road.  And

2  so I'd like you, you know, to figure out a time

3  estimate, because it sounds like this could take some

4  time.  And we'll set aside some time to go through this.

5      MR. KOSS:  If I might, your Honor.  I think

6  we're skipping some steps in the process.  And, first of

7  all, if we go down that path, I need an opportunity to

8  file something in reply.  Because the original motion

9  fairly construed was the partnership and the corporation

10 on their own, essentially, raising their hand and

11 saying, I think we ought to sell all of our assets and

12 let's ask the Judge to decide that.  Now it appears that

13 that is kind of a weird thing to ask.  They've decided,

14 no, that's not it at all, we want you to construe the

15 order back in Colorado.  And we need to do that, because

16 you can't get justice in Colorado.  I don't know, I

17 looked, they've got a website and everything.  They seem

18 to be having a functioning judiciary back there.

19      And instead -- plus, I would also point out,

20 there's a bunch of cases.  There's a Baker versus GM

21 case I think it was, where there's an injunction out of

22 Michigan that prevented a witness from testifying.  And

23 there was arguments across the country about why that

24 injunction enjoined other Courts.  There is case law

25 about this issue about whether or not this Court can

1  say, hey, I'm going to construe that, so Mr. Finn can

2  vote.

3        THE COURT:  I'm not suggesting that you cannot

4  file points and authorities in opposition to their

5  motion.  And, in fact, I would encourage you to do that.

6  Because, you know, my concern is that there is this

7  order out there.  And what they're asking me to do is to

8  go around that order from Colorado.  And so I want to

9  make sure that I'm -- I can do that.

10       MR. KOSS:  And I feel compelled to tell you the

11  real reason for that and it's as follows.  There a is

12  prenuptial agreement that says:  At the time we're

13  divorced, Kelle gets my entire interest in Sullivan.

14  That's -- that's what Mr. Finn promised.  His theory and

15  his lawyers' theories are, well, that's only on the date

16  of the divorce.  So if we can get rid of these entities

17  ahead of time, I don't have to give them to her.

18       Now I think that decision is up for

19  consideration by the family law Courts in Colorado.  And

20  the Court in Colorado has got to decide is that right,

21  or does the covenant of good faith and fair dealing or

22  fraud or whatever else prohibit him from just

23  unilaterally selling and to divest Ms. Sullivan of those

24  interests.  To avoid having that heard in Colorado, I

25  think they're coming here and saying, hey, you know, the

1  sky is falling.  Why don't you let us sell it right now?

2  And then, of course, that coincidently solves his issues

3  in Colorado.

4       For all we know, the Judge in Colorado says, I

5  won't let you sell that until we decide that crucial

6  interest in Sullivan, and therefore, I'm issuing an

7  injunction.  And if we say, I'm going to construe it, so

8  it doesn't apply --

9       THE COURT:  Well, the problem is, as I see it,

10  is there has been a reluctance from what's been

11  represented by Plaintiff's Counsel to engage the

12  Colorado Courts in this matter.  Other than going,

13  conveniently going through their system and accepting

14  the process that they have, that takes a little longer

15  to get to court over there than what we're doing here.

16       Meanwhile, there is this competing interest of

17  Sullivan that has the Sullivan Vineyards that has this

18  financial problem and a potential buyer out there for a

19  significant sum.  And, you know, I don't know the whole

20  history of Sullivan Vineyards, just what I've read

21  briefly in some of these briefs.

22       But, you know, this is a short-term marriage.

23  This is only a marriage of four years.  And so, I mean,

24  so we're going to say that this prenup holds up the sale

25  of an $18,000,000.00 corporation.  I don't know.  It

1   doesn't seem right to me.  I mean, maybe we preserve

2   Ms. Sullivan's rights under her divorce decree, but at

3   the same time, take a look at dealing with these

4   financial situations if they are real.  Now, you know,

5   there's mixed opinions as to whether or not the

6   corporation is even insolvent.  So, you know -- and I

7   don't know, I'm just -- what you've read, and I read

8   both sides, so there's -- I have get the facts, and

9   that's why I'm saying it could take some time.

10          MR. ROSE:  Your Honor, we will stipulate to take

11  the net proceeds of sale that would be attributed to

12  Mr. Finn's interest in an escrow account.  This isn't

13  some nefarious end-game to steal the winery.  In fact,

14  if the Court would like, I will advise the Court with

15  Mr. Koss in camera who the buyer is, you will know who

16  the buyer is.  This is a bona fide, arm's-length deal.

17  This isn't some game.

18          As far as the future hearing, again, I offer to

19  the Court and I offer to Mr. Koss, we will make our CEO

20  and CFO available to testify.  There is -- it is

21  undisputed this company is insolvent.

22          MR. KOSS:  No, it is disputed.  It is disputed.

23  And it's a complete misrepresentation of what my client

24  wants to accomplish.  If she gets the winery, she wants

25  to run it like her family has for decades.  And --

```
 1          THE COURT:  But she's not the majority owner.

 2          MR. KOSS:  Pardon?

 3          THE COURT:  What interest does she have now of

 4   the corporation, of the partnership?  I didn't see that.

 5          MR. KOSS:  I can --

 6          MS. KELLEEN SULLIVAN:  9.8 percent.

 7          MR. KOSS:  9.8 percent.

 8          THE COURT:  9 percent.

 9          MS. KELLEEN SULLIVAN:  9.8.

10          MR. KOSS:  With Mr. Finn's interest, she'd have

11   60 percent.  Her brothers and sisters own the rest.

12          MR. ROSE:  I will remind Mr. Koss of our

13   discussion with Judge Price on this.  We raised these

14   financial issues at the first hearing -- remember,

15   Mr. Koss is new into this case -- I dealt with two prior

16   attorneys for two months dealing with these financial

17   issues.  This is not a new issue, this has been looming

18   for a very long time.  Mr. Koss represented to Diane

19   Price after consulting with his client that the Sullivan

20   family, the 40 percent minority shareholders had the

21   resources to cure these immediate financial problems.

22          We have asked since that hearing multiple

23   times -- we have met with one of the family members,

24   who's also a member of the Board of Directors -- and

25   said if you have the resources, put the money in now.
```

1   As I'm sitting here today, not a penny has been put into

2   the bank account of Sullivan Vineyards.

3          MR. KOSS:  There's a reason for that.

4          MR. ROSE:  That's why I said if it is disputed

5   that this company is insolvent, let's have an

6   evidentiary hearing.  There's one thing about money:

7   It's either in the bank or it's not.  And you'll have

8   historical records, you'll have accounts payable.  This

9   is all very empirical.  Nobody's hiding anything.

10  That's why I'm asking the Court for an evidentiary

11  hearing.  We'll put the people on, because this company

12  is either insolvent or it's not.

13         MR. KOSS:  We are hiding things, and it is a

14  game.  The original moving papers had a spreadsheet done

15  by the CEO that said, oh, my God, the sky is falling.

16  There's another spreadsheet that we got earlier that

17  shows a completely different situation with the exact

18  same data.  And we point that out to the Court.  And

19  what we do get in reply?  Oh, my God, the sky is

20  falling.  We've just discovered that Mr. Finn has a

21  note, and he's demanding payment today.  So it is a --

22  this is a moving target.

23         THE COURT:  I understand the competing interest

24  of both parties.

25         MR. KOSS:  And then he calls the bank as you

1 look at the letter and says, hey, bank we're going to

2 have some problems here, because I'm not putting any

3 more money in, causing the bank to write a letter

4 saying, hey, you guys better explain this. He is doing

5 his very best to pull down the sky.

6         MR. ROSE: Your Honor --

7         MR. KOSS: One other thing I want to point out,

8 your Honor. I have asked for all the documents that

9 justify this supposed $4,000,000.00. I was told I was

10 going to get them. But now I don't get them, unless I

11 sign --

12         THE COURT: To justify the what?

13         MR. KOSS: Pardon?

14         THE COURT: That justify what?

15         MR. KOSS: The supposed $4,000,000.00 that

16 Mr. Finn has put in, all of which was done without

17 corporate authority. And now I get a document that's 15

18 pages long, a protective order, that goes kind of now

19 full circle to this sealing, that I'll give you the

20 documents when you sign this 15-page agreement that I

21 can mark documents as "for attorneys' eyes only", and if

22 you want to take anything out of there, you have to

23 phone our CEO. And we're talking about some checks to a

24 corporation that justify the $4,000,000.00 that went in.

25 And it's this big drum roll about how I get them. So to

1    say this is an open book is not exactly true.

2            THE COURT:  Well, I don't know whether Sullivan

3    Vineyards is insolvent, is having these financial

4    problems that would require the corporation to sell the

5    interest to this bona fide purchaser out there.  I don't

6    know that.

7            MR. ROSE:  Your Honor, I can --

8            THE COURT:  I understand that Mr. Finn wants to

9    sell the vineyards, the Sullivan Vineyards and Sullivan

10   Partners.  I understand he wants to do that.  And I

11   understand that Ms. Sullivan would like to feel that

12   the, that this winery is not insolvent, and she wants to

13   take it over.

14           MS. KELLEEN SULLIVAN:  Correct.

15           MR. ROSE:  Your Honor --

16           MR. KOSS:  Correct --

17           MR. ROSE:  It's important to the Court --

18           THE COURT REPORTER:  I'm sorry, one at a time,

19   please.

20           MR. KOSS:  I'm sorry.  And is she reluctant to

21   put in money today when her husband is pulling the

22   strings and running the whole thing, and apparently, is

23   doing so in a way designed to make it look insolvent.

24           MR. ROSE:  Your Honor, the Court can appoint an

25   accountant to go in and take a look at these books next

1    week.  We will make the books available to any CPA the

2    Court appoints.  Again, there's no hiding the ball here.

3    Let's have some independent eyes come in and take a look

4    at this.

5            THE COURT:  So tell me this:  You say the

6    corporation is insolvent.  And in the papers that

7    they're -- they are -- Sullivan Vineyards Corporation is

8    in default on a $90,000.00 obligation to Beckstoffer

9    Vineyards.  And then there's also a loan from Finn.

10   Well, I don't think that the loan from Finn is going to

11   constitute an emergency situation.  But the Beckstoffer

12   loan could.  And then it's further said that there are

13   other -- I mean, what other bills are out there that are

14   required with dates and when they're due?  What are we

15   talking about?

16           MR. ROSE:  We're talking payroll, we're talking

17   all kinds of stuff.  That's why I said we can put the

18   CFO on the witness stand --

19           MR. BERTRAND:  We can establish that today, your

20   Honor.  If Beckstoffer were paid this week, that the

21   winery --

22           THE COURT:  Can't you get a loan?  I mean,

23   you've got an $18,000,000.00 corporation.

24           MR. BERTRAND:  No.

25           MR. ROSE:  No.

1      MR. BERTRAND:  That's the point.  Is that the

2  way that this winery has operated over the last four

3  years is it receives short-term loans for Mr. Finn to

4  operate the business.  Mrs. Finn has elected to commence

5  divorce proceedings against Mr. Finn, and so he's not

6  putting any more money into the business.

7      And in the supplemental declaration of CEO,

8  Ms. De Vere, we have a letter from Silicon Valley Bank

9  saying, you need to explain to me in cash flows how this

10  business is going to be viable without that source of

11  additional capital, you know, or loans being put in.

12      THE COURT:  Did Mr. Finn contact the bank and

13  indicate that there was going to be a problem?

14      MR. KOSS:  Yes, there's a letter.

15      MR. BERTRAND:  Mr. Finn informed the bank that

16  he's not going to be putting in any other loans.

17      THE COURT:  So, I mean, any bank, they're going

18  to -- it's going to raise some feathers if you do that.

19      MR. BERTRAND:  Well, but he's not obligated to

20  make more loans to the business.  What the bank has said

21  is that they entered into the transaction based upon his

22  balance sheet, and that if he's not going to cover these

23  short-term and longer-term capital needs, how is the

24  business going to operate.

25      You know, if you look at the papers, your Honor,

1  when the family was running this business in 2011, they

2  lost $1,000,000.00 on $1,000,000.00 of gross revenue,

3  which is pretty tough to do. And Mr. Finn and the

4  management team that came in turned this winery around

5  and was able to generate now in excess of 4,000,000 in

6  revenues per year. So but that took a management team,

7  that took cash being infused by Mr. Finn, and he's not

8  going to continue.

9           THE COURT: Okay.

10          MR. BERTRAND: And he's not obligated to.

11          THE COURT: All right. This is what I'm going

12  to do: I'm going to put the motion to seal over. I'm

13  going to take it under submission and will consider

14  additional points and authorities that I have given you

15  a briefing schedule for. We're going to set the matter

16  over for a hearing. We'll put it over to -- let's put

17  it on September 11th at 8:30 in Department I -- strike

18  that. Department F.

19          MS. KELLEEN SULLIVAN: Your Honor, may I speak?

20          MR. KOSS: No, it's okay. I need to mention a

21  couple things. My client continues to tell me she does

22  have the money. And she can get involved in this

23  business and make it solvent.

24          THE COURT: Okay. What about this $90,000.00

25  obligation to Beckstoffer?

1        MS. KELLEEN SULLIVAN:  I can take care of that

2   today if you'd like, sir.

3        THE COURT:  Well, it's not me and what I'd like

4   to do.  It's something you need to do if you want to --

5        MS. KELLEEN SULLIVAN:  I would like control over

6   the management of the company, so I may move forward.

7        THE COURT:  I'm not saying -- you know, there's

8   no motion before me to give you the management and

9   control of this corporation.

10       MR. KOSS:  Right.  And there's no authority for

11  this Court to start running the corporation.  So I guess

12  we've now said in open court we would loan the

13  corporation $90,000.00 to pay Beckstoffer.  If the

14  corporate directors want to get together and decide

15  whether they want to take that deal, they should do

16  that.  This is what I don't get --

17       MR. ROSE:  First I've heard of this.

18       THE COURT:  Well, we have that on the record, so

19  maybe we can follow up with that and maybe that will

20  help.  I would think that -- I would think that you guys

21  need to get together on this and see if you can work out

22  something.  If you can't, then, you know, I'll consider

23  this motion to seal.  We may be hanging all this

24  information out into the public, which is fine.  And we

25  can have a hearing and discuss all this sensitive

1   financial information.  And we may need to have some

2   time to do that.  And so when we come back on September

3   11th for a ruling on the motion to seal, I'm going to be

4   set -- I would consider setting the matter for hearing

5   on the motion to sell all the assets of the corporation

6   and the partnership.  And I want to get a realistic time

7   estimate as to what that will entail.

8          And, Mr. Koss, if you'd like to provide

9   additional points and authorities with regard to that

10  issue, I welcome them.

11          MR. KOSS:  Okay.

12          THE COURT:  And any exhibits that you may have.

13  And we can just gear up for it.

14          MR. BERTRAND:  Your Honor, may I raise one other

15  thing?  Since you do have personal jurisdiction over

16  Mrs. Finn, it would be helpful if she were ordered to

17  submit to the Colorado Court her consent to proceed with

18  the retired judge that her lawyers in Colorado selected,

19  so that she doesn't have the ability to continue and

20  prevent us from having any --

21          THE COURT:  I don't have any authority to compel

22  her to consent to that.

23          MR. KOSS:  I can also suggest this, your Honor.

24  I spoke to her Colorado lawyer yesterday, Mr. Lass

25  (phonetic).  He tells me that the parties have a written

1    agreement as to a private judge.  And now it's just a

2    matter of getting that process through the Court system,

3    because they have to approve the appointment of the

4    private judge.  So I don't think this --

5         .    THE COURT:  I'm not going to make an order that

6    you requested for her to do that.

7              MR. BERTRAND:  All right.

8              THE COURT:  That matter needs to be heard in

9    Colorado.  Not me.  And there's nothing before me on

10   that issue, so I'm not going to make that order.

11             MR. BERTRAND:  All right.  Very good, your

12   Honor.  I just wanted to make the point that we continue

13   to be blocked in Colorado.

14             THE COURT:  Well, it sounds like -- you know,

15   there's perceived lack of cooperation on both sides to

16   accomplish their individual goals.  That's what I see.

17             MR. KOSS:  Well, it also --

18             THE COURT:  Which happens often in divorces.

19   It's not unusual.

20             MR. BERTRAND:  Yes, I agree with that, your

21   Honor.  But we actually have a documented February --

22   or, I'm sorry, July 2nd stipulation on the record.  And

23   it's now August 27th, and we are still without

24   appointment of the master, notwithstanding that we've

25   agreed --

1      THE COURT:  You should do that in Colorado.

2      MR. BERTRAND:  We've attempted to.  We can't

3   force her to do, to do anything.

4      THE COURT:  Why don't you file an ex parte

5   motion in Colorado?  They must have ex parte motions in

6   Colorado to enforce her to sign the agreement.  That's

7   what you would do if it was here.

8      MR. BERTRAND:  Right.

9      THE COURT:  So that's the ruling with regards to

10   the motion to seal and the motion to sell the assets.

11   They're all put over to September 11th.

12      MR. BERTRAND:  All right.  Thank you very much,

13   your Honor.

14      MR. ROSE:  Thank you, your Honor.

15      MR. KOSS:  Thank you.

16      (Proceedings concluded 9:35  a.m.)

17                    ---oOo---

18

19

20

21

22

23

24

25

```
1    STATE OF CALIFORNIA )
2                        )  ss.
3    NAPA COUNTY         )
4
5
6              I, MARIAH J. DIETZ, Certified Shorthand
7    Reporter, do hereby certify that as such I took down in
8    stenotype all of the proceedings in the within-entitled
9    matter, SULLIVAN VINEYARDS, Plaintiff, versus KELLEEN
10   SULLIVAN FINN, Defendant, Superior Court Action Number
11   26-67001, heard before the Honorable RODNEY G. STONE,
12   JUDGE, on THURSDAY, AUGUST 27, 2015, and that I
13   thereafter transcribed my stenotype notes into
14   typewriting through computer-assisted transcription, and
15   that the foregoing transcript constitutes a full, true,
16   and correct transcription of the proceedings held at the
17   aforementioned time.
18             IN WITNESS WHEREOF, I have hereunto subscribed
19   my name this day, SEPTEMBER 1, 2015.
20
21
22
23
24             MARIAH J. DIETZ
25        Certified Shorthand Reporter #13198
```

PHILIP S. WARDEN (SBN 54752)
  philip.warden@pillsburylaw.com
CECILY DUMAS (SBN 111449)
  cecily.dumas@pillsburylaw.com
JUDY J. BAO (SBN 305560)
  judy.bao@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:    415.983.1000
Facsimile:    415.983.1200

Attorneys for Secured Creditors
Stephen A. Finn and Winery Rehabilitation, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Case No. 17-10065-AJ |
| | (Jointly Administered) |
| SULLIVAN VINEYARDS CORPORATION, | (Chapter 11) |
| Debtor-in-Possession. | CERTIFICATE OF SERVICE |
| | |
| SULLIVAN VINEYARDS PARTNERSHIP, | Date:         April 11, 2017 |
| | Time:         9:00 a.m. |
| | Courtroom:    99 E Street |
| Debtor-in-Possession. | Santa Rosa, CA 95404 |
| | Judge:        Hon. Alan Jaroslovsky |

- 1 -

4820-8363-2966.v1

1   I, Candace J. Kleiner, hereby declare:

2   I am over the age of 18 years and not a party to or interested in the within entitled cause. On April
    5, 2017, I served the following document:
3
    **NOTICE OF LODGMENT OF REPORTER'S TRANSCRIPT DATED AUGUST 27, 2015;**
4   **CALIFORNIA SUPERIOR COURT, NAPA COUNTY CASE NO. 26-67001;**

5   had notice provided through ECF notification on all persons of whom are registered participants in
    the Court's ECF system, or by deposit in the United States Mail, postpage-prepaid, and addressed
6   as indicated on the attached service list.

7   I declare under penalty of perjury under the laws of the United States of America that the foregoing
    is true and correct and that this declaration was executed at San Diego, California on April 5, 2017.
8

9                                                        */s/ Candace J. Kleiner*
                                                         Candace J. Kleiner
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                - 2 -

4820-8363-2966.v1

## SERVICE LIST

**_By ECF Notification:_**

- Cecily A. Dumas    cecily.dumas@pillsburylaw.com
- Michael C. Fallon   mcfallon@fallonlaw.net, manders@fallonlaw.net
- Lynette C. Kelly    lynette.c.kelly@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
- Austin P. Nagel    melissa@apnagellaw.com
- Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
- Steven M. Olson    smo@smolsonlaw.com
- Philip S. Warden    philip.warden@pillsburylaw.com

**_By Personal Delivery:_**

Lynette C. Kelly
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Avenue, 5th Floor
#05-0153
San Francisco, CA  94102
Email:  lynette.c.kelly@usdoj.gov

**_By U.S. Mail:_**

Ross Sullivan
1322 El Bonita Avenue
St. Helena, CA  94574

UBF Consulting, Inc.
2033 North Main Street, Suite 700
Walnut Creek, CA  94596

4820-8363-2966.v1