1    Steven M. Olson, Esq.
         State Bar No. 146120
2    LAW OFFICE OF STEVEN M. OLSON
     100 E Street, Suite 104
3    Santa Rosa, CA 95404
     Telephone: (707) 575-1800
4    Facsimile: (707) 575-1867
     Email: smo@smolsonlaw.com
5    Attorney for Sullivan Vineyards Corporation

6    Michael C. Fallon, Esq.
         State Bar No. 88313
7    FALLON & FALLON
     100 E Street, Suite 219
8    Santa Rosa, CA 95404
     Telephone: (707) 546-6770
9    Facsimile: (707) 546-5775
     Email: mcfallon@fallonlaw.net
10   Attorney for Sullivan Vineyards Partnership

11               UNITED STATES BANKRUPTCY COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                 SANTA ROSA DIVISION

14

15   In Re                         Case No. 17-10065-RLE-11
                                 (Jointly Administered)

16   SULLIVAN VINEYARDS
     CORPORATION,

17

       Debtor.

18   _____/

19   SULLIVAN VINEYARDS
     PARTNERSHIP,

20

       Debtor.

21   _____/

22        **DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND**
23            **SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017**

24   **TO ALL CREDITORS AND OTHER PARTIES IN INTEREST:**

25        THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED STATES

26   BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AS CONTAINING

27   ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE FOR

28   SOLICITATION OF ACCEPTANCES OF THE THIRD AMENDED CHAPTER 11 PLAN OF

DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT
REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN
VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017 - Page 1

Case 17-10065    Doc# 187    Filed: 08/17/17    Entered: 08/17/17 13:41:00    Page 1 of 30

1  **Reorganization dated August 17, 2017, and filed by the Debtors in these**

2  **jointly administered proceedings. However, approval of the Disclosure**

3  **Statement does not constitute an endorsement of the Plan by the Court.**

4  **The Court has made no independent investigation or determination of any**

5  **factual statements or dollar values set forth in the Plan or the**

6  **Disclosure Statement.**

7  DATED:      August 17, 2017               /s/ *Michael C. Fallon, Jr.*

8                                            _____

9                                            Michael C. Fallon, Jr.
                                             Attorney for SVP

10

11 DATED:      August 17, 2017               /s/ *Steven M. Olson*

12                                           _____
                                             Steven M. Olson
13                                           Attorney for SVC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT**
**REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN**
**VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 2

# I. INTRODUCTION

Sullivan Vineyards Corporation ("SVC") and Sullivan Vineyards Partnership ("SVP"), the Debtors-in-Possession in the above-captioned jointly administered cases, submit this Disclosure Statement (the "Disclosure Statement") in support of the Third Amended Joint Reorganization Plan of Sullivan Vineyards Corporation and Sullivan Vineyards Partnership Dated August 17, 2017 (the "Plan"). SVC and SVP seek to reorganize their debts. This Disclosure Statement is being provided to creditors to provide adequate information of a kind, and in sufficient detail, to enable creditors to make informed judgments about the Plan before exercising their rights to vote for acceptance or rejection of the Plan. Capitalized terms in this Disclosure Statement are defined in the Plan.

An acceptance or rejection of the Plan may be voted by completing the ballot which accompanies the Plan and mailing, faxing, or emailing it to the Law Offices of Michael C. Fallon, 100 E Street, Ste 219, Santa Rosa, California 95404. (707) 546-5775 (Fax) or manders@fallonlaw.net, or by mailing, faxing, or emailing it to the Law Office of Steven M. Olson, 100 E Street, Suite 104, Santa Rosa, CA 95404 (707) 575-1867 (Fax) or smo@smolsonlaw.com.

## II. BACKGROUND OF THE DEBTORS

### A. Formation.

The Sullivan family purchased its first vineyard in Napa Valley in 1972. In 1978, it purchased the vineyard property located at 1090 Galleron Road, Rutherford, California (the "Winery Property") and began a small winery thereon.

In 1987, SVP was formed to own the Winery Property. The initial partners were JoAnna Sullivan, her husband, James O'Neil Sullivan, and their five children, Philomena Gildea, Sean Sullivan, Kelleen Sullivan, Caireen Sullivan and Ross Sullivan.

Also in 1987, SVC was formed to own and operate the winery on SVP's Winery Property. The initial shareholders in SVC were JoAnna Sullivan, her husband,

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 3

Case 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 3 of 30

James O'Neil Sullivan, and their five children, Philomena Gildea, Sean Sullivan, Kelleen Sullivan, Caireen Sullivan and Ross Sullivan.

James Sullivan passed in 2004, and JoAnna retained his shares in SVC and his interest in SVP.

**B.    Mr. Finn Acquires Control in 2011.**

In August of 2011, JoAnna Sullivan wished to retire. She sold her interests in SVC and SVP to Stephen Finn, who had recently married Kelleen Sullivan. Mr. Finn thus became the majority shareholder in SVC and the majority partner in SVP.

As of August of 2011, the assets of SVP and SVC included the following:

| Asset | Book Value |
|---|---|
| Winery Property | $2,050,963 |
| Bottled Wine | $1,942,959 |
| Bulk Wine | $919,327 |
| TOTAL | $4,913,249 |

As of August of 2011, the liabilities of SVP and SVC included the following:

| Liability Type | Apx. Amt. |
|---|---|
| DOTs Against Winery Property | $7,059,971 |
| SVC other third-party debts | $449,622 |
| SVP other debts | $198,693 |
| TOTAL | $7,708,286 |

**C.    Kelleen Sullivan Divorces Mr. Finn and Acquires His Interests in SVC and SVP.**

When Kelleen Sullivan became engaged to marry Mr. Finn, she and Mr. Finn entered into a prenuptial agreement. One of the terms of this agreement was that upon the entry of a divorce decree, any ownership interests of Mr. Finn would become the assets of Kelleen Sullivan.

In the spring of 2015, the marriage was deteriorating. Mr. Finn attempted to amend the prenuptial agreement so that his interests in SVC and SVP would not be

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 4

Case 17-10065    Doc# 187    Filed: 08/17/17    Entered: 08/17/17 13:41:00    Page 4 of 30

1　transferred to Kelleen upon entry of the divorce decree. Mr. Finn threatened to "bankrupt

2　the winery" and "run it into the ground" if Kelleen refused his demand to modify the

3　prenuptial agreement.

4　　　In May of 2015, Kelleen Sullivan commenced a divorce proceeding in Colorado,

5　where she and Mr. Finn were then residing. Mr. Finn, on May 22, 2015, listed the Winery

6　Property and the related assets for sale for $20 million.

7　　　In June of 2015, the Colorado divorce court issued an injunction barring Mr. Finn

8　from "transferring, encumbering or disposing of the Winery, or listing the Winery for

9　sale."

10　　　On October 7, 2015, the Colorado Court issued orders entering a divorce decree

11　and enforcing a portion of the parties' prenuptial agreement that dealt with SVC and

12　SVP.  The Order provides, in pertinent part:

> The marriage is dissolved and a Decree of Dissolution of Marriage is entered.
> ….
> [T]he Court does order the immediate transfer to Petitioner of Respondent's entire ownership interest in Sullivan Vineyards, including but not limited to Respondent's shares of Sullivan Vineyards Corporation and his partnership interest in Sullivan Vineyards Partners.

17　　　Following this Order, SVC installed new directors and officers.

18　　　On October 23, the Colorado Court issued a more complete, detailed order

19　addressing the interest in SVC and SVP. In that order, the Colorado Court reiterated its

20　prior orders of October 7 and October 9, and specifically ordered that Mr. Finn's interest

21　in SVC and SVP had been transferred to Kelleen Sullivan. Mr. Finn has appealed the

22　Colorado Court orders, but he has not requested or obtained a stay of the transfers of his

23　interests in SVC and SVP pending appeal.

**D.　　Financial Condition of SVC and SVP at Time of Transfer to Kelleen.**

25　　　As of September 30, 2015, the assets of SVP and SVC included the following:

| Asset | Book Value |
|---|---|
| Winery Property | $4,903,128 |

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 5

| | |
|---|---|
| Bottled Wine | $2,409,212 |
| Bulk Wine | $2,014,294 |
| TOTAL | $9,326,634 |

As of September 30, 2015, the liabilities of SVP and SVC included the following:

| Liability Type | Apx. Amt. |
|---|---|
| First DOT Against Winery Property | $9,538,889 |
| Disputed Second DOT of Mr. Finn Against Winery Property | $4,144,122 |
| SVC other third-party debts | $408,333 |
| SVP other debts | $38,264 |
| TOTAL | $14,129,608 |

Thus, during the time when Mr. Finn had controlling ownership interests in SVC and SVP, the combined debts of the two entities grew by approximately $6,421,322, and the combined book values of their assets grew by $4,413,385.

The third-party debts, excluding the debts secured by deed of trust against the Winery Property, aggregated approximately $446,597 when Kelleen Sullivan acquired majority ownership from Mr. Finn. In the 15 months since then, the Debtors reduced the aggregate balance of their third-party debts by approximately $129,000. During the same time period, the Debtors paid down the principal balance of the debt secured by the first deed of trust against the Winery Property by approximately $194,994, until WR, the assignee of the claim, refused to accept any further periodic payments.

**E.    Mr. Finn's Pre-Divorce Efforts to Force Sale of Assets.**

Notwithstanding the Colorado court's June 2015 injunction, Mr. Finn proceeded with extensive efforts to cause the sale of the assets of SVC and SVP. Mr. Finn orchestrated a meeting of shareholders of SVC in July of 2015 on very short notice to change the board of directors of SVC. The minority shareholders hurriedly obtained counsel to assist them in banding together to elect one of the three board members, Ross

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 6

Case 17-10065    Doc# 187    Filed: 08/17/17    Entered: 08/17/17 13:41:00    Page 6 of 30

1  Sullivan.

2     On or about August 3, 2015, Mr. Finn caused SVC and SVP to file a Complaint in

3  Napa County Superior Court, seeking a declaratory judgment regarding the sale of assets.

4     Mr. Finn gave very short notice of a special board meeting. He sought a

5  resolution authorizing the sale of the assets of SVC before the October trial in his divorce

6  proceeding.

7     Mr. Finn then filed another suit in Napa County Superior Court. He sought an *ex*

8  *parte* order to appoint his selected director to force the sale of assets. The Court denied

9  Mr. Finn's request.

10  **F.   Mr. Finn's 2016 Litigation Actions.**

11     In February of 2016, JoAnna Sullivan filed suit against Mr. Finn in Napa County

12  Superior Court to enforce Mr. Finn's obligations to JoAnna Sullivan in the agreement by

13  which Mr. Finn acquired JoAnna's Sullivan's interests in SVP and SVC, including his

14  obligations to pay $9,000 per month for the rest of JoAnna Sullivan's life and his

15  obligation to pay $500,000 towards a life interest of a personal residence for JoAnna

16  Sullivan. Mr. Finn responded by removing the action to the United States District Court

17  for the Northern District of California and then filing a cross-complaint against SVC,

18  SVP and individual members of the Sullivan family. Judge Orrick granted motions to

19  strike the cross-complaint.

20     On September 15, 2016, Mr. Finn filed a new action against SVC, SVP, and

21  Sullivan family members, asserting the same claims as he had asserted in the cross-

22  complaint. By order entered on January 13, 2017, Judge Orrick granted the defendants'

23  motion to dismiss Mr. Finn's complaint on the ground it is barred by the doctrine of

24  judicial estoppel. In so doing, Judge Orrick found that Mr. Finn was "playing fast and

25  loose with the courts," that his assertion in the complaint of ownership interests in SVC

26  and SVP was contrary to Mr. Finn's representations in the Colorado divorce court, and

27  that the decision would "protect the integrity and dignity of the Colorado proceedings."

28

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT
REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN
VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 7

**G.     Mr. Finn's Disputed Secured Claim.**

In May of 2012, SVC and SVP jointly and severally gave Mr. Finn their Subordinated Secured Grid Promissory Note (the "Grid Note"), secured by a deed of trust against SVP's real property and by a security interest in much of the personal property of SVC and SVP. The Grid Note contemplated future advances from Mr. Finn pursuant to written requests from the authorized officers of SVC and SVP. The Grid Note was signed by Ross Sullivan on behalf of SVP in his stated capacity as partner, and it was signed by David B. Runberg on behalf of SVC in his stated capacity as CFO.

In May of 2012, when the Grid Note was created, Mr. Finn and senior lienor Silicon Valley Bank entered into an agreement by which Mr. Finn agreed to subordinate his liens and security interests to Silicon Valley Bank and Mr. Finn agreed to subordinate his right to receive payments to Silicon Valley Bank, such that no payments were due and payable to Mr. Finn until SVC and SVP had repaid their debt to Silicon Valley Bank. SVC and SVP contend that neither Silicon Valley Bank nor its successor ever informed SVC or SVP of the termination of the payment subordination of Mr. Finn's claims.

After May of 2012, Mr. Finn purportedly made advances on the Grid Note aggregating over $4 million. SVC and SVP dispute whether most of the advances from Mr. Finn on the Grid Note were properly authorized. As of May of 2012, Mr. Finn was majority shareholder in SVC and he was majority partner in SVP. If the advances on the Grid Note were not properly authorized, SVC and SVP contend that the law prevents Mr. Finn from asserting claims arising from the advances unless he can establish that the advances were just and reasonable, evaluated from the perspective of SVC and SVP. SVC and SVP contend that the advances from Mr. Finn are properly characterized as equity infusions into the entities, for which Mr. Finn has no right of repayment and the rights to which are now held by Kelleen Sullivan pursuant to the terms of her prenuptial agreement with Mr. Finn.

**H.     Cause of Bankruptcy Petitions - Foreclosure by Secured Creditors.**

*DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017* - Page 8

In mid 2016, the debt secured by a senior security interest in the assets of SVC and SVP matured by its terms. SVP and SVC sought to refinance to pay this debt. They were unable to do so, however, because of (1) the cloud created by Mr. Finn's assertion of a continued ownership interest in SVC and SVP, and (2) the cloud created by Mr. Finn's assertion of a debt of over $4 million secured by a junior security interest in the assets of SVC and SVP.

Mr. Finn, through a limited liability company formed by him called Winery Rehabilitation, LLC ("WR") acquired the secured claim of Silicon Valley Bank. Thereafter, WR and Mr. Finn commenced nonjudicial foreclosure.

SVC and SVP seek to reorganize to forestall foreclosure, restructure the debt now owing to WR, and determine the allowed amount of the claim of Mr. Finn (if any) and, to the extent the claim is allowed, to pay the claim.

**I.      Post-Petition Events.**

Following the filing of the Chapter 11 case, SVC and SVP have filed all required Schedules, Statements of Affairs, and other initial papers. SVP was authorized to retain Fallon & Fallon as its counsel in the proceedings, and SVC was authorized to retain the Law Office of Steven M. Olson as its counsel in the proceedings.  Prior to the Chapter 11 filing, Michael C. Fallon was paid a $15,000 retainer on account of services to be rendered in this case, and Steven M. Olson was paid a $35,000 retainer.

No official committee of unsecured creditors has been appointed in this case.

The Bankruptcy Court has ordered the cases of SVP and SVC to be jointly administered.

SVC and SVP attempted a mediated settlement with WR and Mr. Finn, but the efforts did not succeed.

Twice during the course of the cases to date, once in April and once in July, WR and Mr. Finn have wrongly served all creditors with documents in opposition to prior versions of the Debtors' disclosure statements. The Court has not yet adjudicated any

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 9

remedies against WR and Mr. Finn for this violation of bankruptcy procedures.

### III. SUMMARY OF THE PLAN

The Plan seeks to restructure the debts of SVC and SVP in four main ways. First, the obligation to WR, that is secured by a first deed of trust and senior security interest, will be restructured into a new note secured by the existing deed of trust and security interest, bearing interest at the rate of 5% per annum. The new note will call for monthly interest-only payments and will have a maturity of two years after the Effective Date of the Plan. Second, the junior debt in favor of Mr. Finn, if any, will be determined via adversary proceeding. In the event that the outcome of the adversary proceeding is that Mr. Finn has a net secured claim against SVC and SVP, this claim will be restructured into a new note secured by the existing second deed of trust and junior security interest, bearing interest at the rate of 6% per annum. The new note will call for monthly interest-only payments and will have a maturity of two years after the Effective Date of the Plan. Third, the unsecured creditors of SVC will each be paid in full via six equal semiannual installments, commencing six months after the Effective Date. Fourth, the unsecured creditors of SVP will each be paid in full via two equal semiannual installments, commencing six months after the Effective Date.

If SVC or SVP fails to meet these requirements, then SVC and SVP will have six months from the secured creditors' notice of default to market and enter into a contract to sell the Winery Property and the personal property assets, and then another three months to close the transaction. If SVC and SVP either do not timely enter into a Listing Agreement or do not timely close escrow on the sale of the assets, the case shall, upon application of any party in interest, be converted to Chapter 7.

The treatment of claims and interests described below applies only to Allowed Claims. Determination of the amounts due to creditors will be after reconciliation of the amounts claimed by the Creditor in question with the applicable Debtor's records. In the event of a dispute, the applicable Debtor will file an objection to the allowance of the

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 10 of 30

claim.

The treatment of each particular type of Creditor is described below.

        a.      Unclassified Claims

Section 1123(a)(1) of the Bankruptcy Code provides that certain claims, including claims for post-petition administrative expenses (including professional fees) and certain claims by governmental units for taxes, are not classified under the Plan. Entities holding unclassified claims are not entitled to vote on the Plan.

Any unpaid professional fees incurred up through Confirmation will be paid if and when allowed by the Court pursuant to Bankruptcy Code Section 330. The amount of unpaid professional fees depends in large part on whether there are contested Confirmation proceedings. SVP's counsel estimates that the amount of these additional fees may range from zero to $25,000. SVC's counsel estimates that the amount of these additional fees will exceed $100,000. All other post-petition administrative expenses, including quarterly fees due or to become due to the United States Trustee will be paid as of the Effective Date of the Plan. The Debtors estimate that, other than professional fees, unpaid administrative expenses will be less than $5,000.

All tax claims entitled to priority under Bankruptcy Code Section 507(a)(8) ("Tax Claims") will receive equal deferred quarterly cash payments over a period not to exceed five (5) years after the SVC Petition Date or the SVP Petition Date, as applicable, as provided by Bankruptcy Code Section 1129(a)(9)(C). Tax Claims will bear interest at the rate specified in Section 6621 of the Internal Revenue Code or the similar provision in the California statutes regarding Tax Claims owing to the State of California. Unclassified Tax Claims do not include local real estate taxes. SVP believes that it owes no unclassified Tax Claims, and SVC believes that its unclassified Tax Claims aggregate less than $5,200.

        b.      Classified Claims And Interests

The Plan divides claims and interests into twelve classes. A description of each

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 11 of 30

class and its treatment under the Plan is as follows:

Class 1:       <u>Secured Claim of The County of Napa</u>

The County of Napa holds a Secured Claim in an unknown amount, which claim, if any, is collateralized by a lien on the Winery Property as provided by non-bankruptcy law. The Plan provides that to the extent that the County of Napa has an Allowed Secured Claim, it will be paid on a current basis in accordance with nonbankruptcy law. This Class is unimpaired and not entitled to vote on the Plan.

Class 2:       <u>Winery Rehabilitation, LLC</u>

WR holds a Secured Claim in the amount of approximately $10,000,000 collateralized by a first deed of trust on the Winery Property and a senior security interest in many of the personal property assets of SVC and SVP. The Plan provides that on the Effective Date, or the date on which the Class 2 Claim becomes Allowed, whichever is later, the Reorganized Debtors shall give WR a Modified Promissory Note for its entire Allowed Claim for all outstanding principal, interest, late charges, collection costs, and reasonable attorneys' fees due as of the Effective Date. Within 14 days after Confirmation, the holder of the Allowed Class 2 Secured Claim shall deliver, to counsel for SVC and SVP, a demand as of the Effective Date, broken down by components of the demand. The Reorganized Debtors may, within 14 days after receipt of the demand, file objections to the demand, and the Court may hear the objections on at least 14 days' notice. The note shall be deemed secured by the existing liens and shall bear fixed interest at the rate of 5% per annum. The note shall be payable in monthly installments of interest only, with payments to commence 30 days after the Effective Date. All outstanding principal and interest payable on the note shall be due in full two (2) years from the Effective Date, unless paid in full prior to that time. SVP shall pay directly to the County of Napa all property taxes due the County of Napa, regarding the Winery Property, timely and in full. The Reorganized Debtors shall pay directly all insurance premiums to maintain adequate insurance on the collateral for WR's claim. In the event

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 12

Case: 17-10065    Doc# 187    Filed: 08/17/17    Entered: 08/17/17 13:41:00    Page 12 of 30

there is a default in payment of the note, which default is not cured within fourteen (14)

days written notice to the Reorganized Debtors ("the Cure Period"), the Reorganized

Debtors shall, not later than twenty-one (21) days following the commencement of the

Cure Period, list the Winery Property, plus the Reorganized Debtors' inventory and

equipment, for sale with a qualified California Real Estate Broker ("the Listing

Agreement"). The Reorganized Debtors shall have a period of six (6) months from the

date of the Listing Agreement to enter into a contract to sell the Winery Property,

inventory and equipment. If the Reorganized Debtors have opened a bona fide escrow for

the sale of the subject property before the expiration of the six month listing period, the

Reorganized Debtors shall have an additional ninety (90) days to close escrow. If the

Reorganized Debtors either do not timely enter a Listing Agreement or do not timely

close escrow on the sale of the subject property, WR shall be permitted to exercise all of

its State law enforcement rights with respect to its collateral. The Reorganized Debtors

may prepay the Class 2 Claim at any time without penalty. This class is impaired by the

Plan.

Class 3: <u>Stephen A. Finn</u>

SVP and SVC will prosecute an adversary proceeding against Mr. Finn to

determine whether Mr. Finn has a net claim against them. On the Effective Date, or the

date on which the Class 3 Claim becomes Allowed, whichever is later, the Reorganized

Debtors shall give the Class 3 Claimant a Modified Promissory Note for his entire

Allowed Claim for all outstanding principal, interest, late charges, collection costs, and

reasonable attorneys' fees due as of such date. The note shall be deemed secured by the

existing liens and shall bear fixed interest at the rate of 6% per annum. The note shall be

payable in monthly installments of interest only, with payments to commence 30 days

after the later of the Effective Date or the date on which the Class 3 Claim becomes

Allowed. All outstanding principal and interest payable on the note shall be due in full

two (2) years from the Effective Date, unless paid in full prior to that time. As additional

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 13

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 13 of 30

security for payment of the Class 3 Claim, Kelleen Sullivan will deposit the sum of $250,000 into a blocked, interest-bearing bank account at a FDIC insured bank and will provide the Class 3 Claimant with a security interest in this account. SVP shall pay directly to the County of Napa all property taxes due the County of Napa, regarding the Winery Property, timely and in full. The Reorganized Debtors shall pay directly all insurance premiums to maintain adequate insurance on the collateral for the Class 3 Claim. In the event there is a default in payment of the note, which default is not cured within fourteen (14) days written notice to the Reorganized Debtors ("the Cure Period"), the Reorganized Debtors shall, not later than twenty-one (21) days following the commencement of the Cure Period, list the Winery Property, plus the Reorganized Debtors' inventory and equipment, for sale with a qualified California Real Estate Broker ("the Listing Agreement"). The Reorganized Debtors shall have a period of six (6) months from the date of the Listing Agreement to enter into a contract to sell the Winery Property, inventory and equipment. If the Reorganized Debtors have opened a bona fide escrow for the sale of the subject property before the expiration of the six month listing period, the Reorganized Debtors shall have an additional ninety (90) days to close escrow. If the Reorganized Debtors either do not timely enter a Listing Agreement or do not timely close escrow on the sale of the subject property, the Class 3 Claimant shall be permitted to exercise all of its State law enforcement rights with respect to its collateral. The Reorganized Debtors may prepay the Class 3 Claim at any time without penalty. This class is impaired by the Plan.

      Class 4:      <u>Claims of General Unsecured Creditors of SVP</u>

      Class 4 Allowed General Unsecured Claims shall be paid in full via two semiannual installments, with interest at the Legal Rate from the SVP Petition Date, commencing six months from the Effective Date. SVP may prepay the Class 4 Claims in full or in part at any time. This Class is impaired and entitled to vote on the Plan.

      Class 5:      <u>Claims of General Unsecured Creditors of SVC</u>

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 14 of 30

Class 5 Allowed General Unsecured Claims shall be paid in full via six

semiannual installments, with interest at the Legal Rate from the SVC Petition Date,

commencing six months from the Effective Date. SVC may prepay the Class 4 Claims in

full or in part at any time. This Class is impaired and entitled to vote on the Plan.

Class 6:     Ford Credit

Ford Credit holds a claim in the approximate amount of $15,500 secured by a lien

on SVC's 2016 Ford F250 vehicle. Except to the extent that the holder of the Class 6

Claim has agreed to a different treatment of such Claim, the holder of the Allowed Class

6 Claim shall be paid in accordance with applicable non-bankruptcy law, except as

provided in Section 1124(2) of the Bankruptcy Code. The holder of the Allowed Class 6

Secured Claim shall retain its lien on SVC's vehicle to the extent enforceable under non-

bankruptcy law. The Class 6 Claimant is not impaired and therefore is not entitled to vote

on the Plan.

Class 7:     Growers

Two entities hold claims against SVC for the purchase price for grapes sold to

SVC in 2016. These claims are secured by the growers' statutory liens on the wine made

from the growers' grapes. Except to the extent that a holder of the Class 7 Claim has

agreed to a different treatment of such Claim, the holder of the Allowed Class 7 Claim

shall be paid in accordance with applicable non-bankruptcy law, except as provided in

Section 1124(2) of the Bankruptcy Code. The holders of the Allowed Class 7 Secured

Claims shall retain their liens on SVC's wine made from their grapes to the extent

enforceable under non-bankruptcy law. The Class 7 Claimants are not impaired and

therefore are not entitled to vote on the Plan.

Class 8:     SVC Priority Employee Benefit Claim

SVC has a small amount of indebtedness for employee benefits, an amount SVC

believes is less than $1,000. These Claims will be paid in full on the Effective Date. The

Class 8 Claimants are not impaired and therefore are not entitled to vote on the Plan.

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT
REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN
VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 15

Class 9:    Warehouse Secured Claims

Two warehouses at which SVC stores bottled wine hold claims that aggregate approximately $36,300. These claimants have statutory warehouse liens on the items being stored at their respective facilities. Except to the extent that a holder of a Class 9 Claim has agreed to a different treatment of such Claim, the holders of the Allowed Class 9 Claims shall be paid in accordance with applicable non-bankruptcy law, except as provided in Section 1124(2) of the Bankruptcy Code. The holders of the Allowed Class 9 Secured Claims shall retain their liens on SVC's wine being stored at their respective facilities, to the extent enforceable under non-bankruptcy law. The Class 9 Claimants are not impaired and therefore are not entitled to vote on the Plan.

Class 10:    SVP's Claims Against SVC

The claims of SVP against SVC are subordinated to all other claims against SVC. SVC will pay the claims of SVP from available funds only after all other claims against SVC are paid in full. The Class 10 Claimant is impaired and entitled to vote on the Plan.

Class 11:    Equity Interests in SVP

The Class 11 interests of the general partners in SVP shall remain unaltered by this Plan. This Class is unimpaired and therefore is not entitled to vote on the Plan.

Class 12:    Equity Interests in SVC

The Class 12 interests of the shareholders in SVC shall remain unaltered by this Plan. This Class is unimpaired and therefore is not entitled to vote on the Plan.

c.    Other Provisions of the Plan

The Plan contains a number of other provisions concerning its implementation. The following is a summary. Consult the Plan itself for details.

1.    Post-Confirmation Disbursing Agent.

Following Confirmation, the Reorganized Debtors will act as the Disbursing Agents under the Plan. The Debtors reserve the right to appoint any other Person as the Disbursing Agent under the Plan, if it so chooses. Current management of the Debtors

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 16

Case: 17-10065    Doc# 187    Filed: 08/17/17    Entered: 08/17/17 13:41:00    Page 16 of 30

will continue to manage the Debtors' businesses and will manage the implementation of this Plan.

  2.  <u>Post-Confirmation Compensation and Reimbursement of Professionals</u>.

  All professionals employed by the Reorganized Debtor or the Disbursing Agent (if a third party Disbursing Agent is appointed), including the Debtors' Professionals, shall be entitled to payment of their post-Confirmation Date fees and reimbursement of expenses on a monthly basis, based on the service of a detailed statement of the requested fees and expenses on the Notice Parties as discussed more fully in the Plan. Pre-Confirmation compensation remains subject to the noticed motion requirements of Bankruptcy Code Section 330.

  3.  <u>Distributions and Claims</u>.

  Subject to the deadlines in the Plan, Distributions will be made to Creditors when their Claims are Allowed Claims, as defined in the Plan. Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or the applicable Governmental Unit Claims Bar Date for prepetiton tax and similar Claims. However, Bankruptcy Rule 3001(b) provides that it is not necessary for a Creditor to file a proof of Claim if its Claim has been listed on the Debtors' Schedules filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Rule 1007(a)(3) of the Bankruptcy Rules, and is not listed as disputed, contingent, unliquidated or unknown as to amount. Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable bar date, proofs of Claim may not be filed or amended unless the amendment is solely to decrease the amount or priority. Distributions to Creditors under the Plan will be made to the Persons shown on the Debtors' or the Bankruptcy Court's records on the Effective Date.

  **Any party who acquires a claim against the Reorganized Debtor after the Effective Date must arrange with the holder on that date to receive Distributions to which the transferee may be entitled. Neither the Reorganized Debtors nor the Disbursing Agent will be required to track**

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 17

**changes in ownership of claims after the Effective Date.**

Objections to any Claim may be filed by any party in interest and shall be filed no later than the Claims Objection Date, which is defined in the Plan as 90 days after the Effective Date.

    4.    <u>Reservation of Litigation Rights</u>.

Under the Plan, the Debtors reserve all of its litigation rights and defenses against all Creditors, including without limitation (1) any claims and causes of action against any party including but not limited to WR, Mr. Finn and Angelica de Vere, and (2) the right to object to any Claim, even if the Creditor in question votes to accept the Plan, including without limitation objections to the claims of WR, Mr. Finn, Trinity Scott, Teresa Sullivan, Elizabeth Matulich, Sonyia Grabski, and Angelica de Vere. The failure of this Disclosure Statement to disclose or discuss any particular potential Claim objection, cause of action or claim for relief held by the Debtors or the Bankruptcy Estates is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim objection, cause of action or claim for relief.

    5.    <u>Retention of Jurisdiction</u>.

Article X of the Plan provides that the Bankruptcy Court shall retain broad jurisdiction under the Bankruptcy Code to adjudicate any disputes arising out of the Plan, the administration of the case, and claims for relief held by the Debtors or Reorganized Debtors.

    6.    <u>Persons Bound/Discharge of Debts</u>.

Confirmation of the Plan binds the Debtors, the Reorganized Debtors, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor, whether or not such Creditor has filed a proof of Claim in the bankruptcy case, whether or not the Claim of such Creditor is impaired under the Plan, and whether or not such has accepted or rejected the Plan. The Confirmation Order shall operate as an injunction against the commencement or continuation of any action to collect, recover or

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 18

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 18 of 30

offset any debt in this case from the Debtors, the Reorganized Debtors, or their Estates, except as otherwise permitted by this Plan, the Bankruptcy Code, or order of the Court.

       7.    <u>Executory Contract</u>s.

All insurance contracts to which SVC or SVP is an insured will be assumed on the Effective Date. SVC's contracts to purchase grapes with Castellucci Napa Valley and Rutherford River Ranch will be assumed on the Effective Date. All other executory contracts of SVP or SVC will be deemed rejected on the Effective Date unless, prior to Confirmation, SVP or SVC gives the other party to any such executory contract notice of the intent to assume the contract upon Confirmation. Proofs of Claim arising from rejection of executory contracts must be filed within sixty (60) days after the Effective Date.

## IV. STATEMENT OF ASSETS AND LIABILITIES
## AND FEASIBILITY OF THE PLAN

**A.    In General**

This section will describe the assets and liabilities of the Debtors and discuss the feasibility of the Plan.

**B.    Assets**

The sole meaningful asset of SVP's Estate is the Winery Property. The general partners in SVP believe that its Winery Property asset has a fair market value of at least $16,000,000.

The assets of SVC's Estate include bottled wine inventory that SVC values at $5,500,000, bulk wine inventory that SVC values at $850,000, other tangible personal property assets that SVC values at approximately $1,650,000, and intangible personal property assets that SVC values at approximately $4,678,000. SVC apprehends that the liquidation values of these assets, were SVC to discontinue operations, is a fraction of these stated going-concern values.

**C.    Liabilities**

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 19

SVP's best estimate of the amount of asserted claims against its Chapter 11 Estate, before taking into account the objection to the secured claim of Mr. Finn, is as follows:

| Secured Debts | |
|---|---|
| Napa County Tax Collection | $ 12,000.00 |
| Winery Rehabilitation | 10,000,000.00 |
| Stephen Finn | 5,000,000.00 |
| **SUBTOTAL SECURED DEBT** | **$15,012,000.00** |
| Unsecured Debts | |
| Administrative Expenses | $ 15,000.00 |
| Priority Claims (Non-Tax) | 0.00 |
| Priority Unsecured Tax Claims | 0.00 |
| General Unsecured Claims | 121,052.18 |
| **SUBTOTAL UNSECURED DEBT** | $ 136,052.18 |
| **TOTAL DEBT** | **$15,148,052.18** |

SVC's best estimate of the amount of asserted claims against its Chapter 11 Estate, before taking into account the objection to the secured claim of Mr. Finn and excluding the subordinated debts to SVP, is as follows:

| Secured Debts | |
|---|---|
| Ford Credit | $ 15,500.00 |
| Winery Rehabilitation | 10,000,000.00 |
| Stephen Finn | 5,000,000.00 |
| Warehouses | 37,101.57 |
| Growers | 49,774.02 |
| **SUBTOTAL SECURED DEBT** | **$15,102,375.59** |
| Unsecured Debts | |
| Administrative Expenses | $125,000.00 |
| Priority Claims (Non Tax) | 579.37 |

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 20

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 20 of 30

| Priority Claims (Tax) | 5,356.86 |
|---|---|
| General Unsecured Claims | 188,492.75 |
| **SUBTOTAL UNSECURED DEBT** | **$319,428.98** |
| **TOTAL DEBT** | **$15,421,804.57** |

The combined debts of SVC and SVP, counting debts for which the two debtors are jointly and severally liable only once, aggregate approximately $15,564,256, excluding the subordinated debts of SVC to SVP.

Former employees Angelica de Vere (the former CEO of SVC), Teresa Sullivan (the former CFO of SVC), Elizabeth Matulich, Sonyia Grabski, and Trinity Scott have filed general unsecured claims against SVC aggregating just over $2,000,000. These claims will be litigated in Napa County Superior Court. SVC has insurance coverage for the cost of defense only. SVC is confident that it will prevail on the objections.

**D.      Feasibility of the Plan**

The Debtors estimate that the Plan will require them to have on hand the sum of approximately $250,000 on the effective date to pay administrative-expense claims, Warehouse secured claims, Growers secured claims, and non-tax unclassified priority claims. The Debtors estimate that they will have cash on hand, from operations, of approximately $270,000 on the effective date. The majority shareholder in SVC and majority partner in SVP, Kelleen Sullivan, will advance any required balance of funds in order to facilitate full payment of sums that must be paid on the effective date, pursuant to her commitment to provide a $500,000 credit line to the Debtors.

The Debtors apprehend that the contemplated post-confirmation litigation against Mr. Finn and others will be costly, in light of Mr. Finn's pre-petition actions and his actions to date in the Debtors' chapter 11 cases. To the extent that the Debtor's post-confirmation operations are not sufficient to fund this litigation, Ms. Sullivan will advance funds to cover this expense.

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 21

Successful consummation of the Plan requires the Debtors to make periodic payments to its secured and unsecured creditors and to maintain the Winery Property.

The Debtors estimate that the monthly debt service accruing and/or due to its secured and priority Creditors under the Plan will be approximately $50,000 per month. Other operating costs on the Winery Property are approximately $175,000 per month. As is noted above, the Debtors estimate that they owe approximately $317,765.85 in third-party general unsecured claims. The Plan requires that these claims be paid in 36 months, for SVC creditors, and 12 months, for SVP creditors, an average monthly aggregate of under $10,000. Thus, the Plan plus operations will require total average monthly outflows of approximately $235,000 per month, or $2,820,000 per year.

The Debtors believe they can make these payments. Historically, the Debtors' gross revenues from operations over the past four fiscal years is as follows:

| Fiscal Year Ending | Annual Gross Revenues |
| --- | --- |
| 3/31/2013 | $1,721,555.00 |
| 3/31/2014 | $2,510,771.23 |
| 3/31/2015 | $3,490,094.99 |
| 3/31/2016 | $3,352,544.52 |
| 3/31/2017 | $2,214,903.96 |

For the fiscal year ending March 31, 2017, the Debtors' operations were significantly impaired by the extensive litigation involving Mr. Finn, as discussed above.

Aside from financial matters, the Debtors believe that they can comply with all technical requirements of the Bankruptcy Code necessary to confirm and substantially consummate the Plan.

## V.  ALTERNATIVES TO THE PLAN

**A.       Chapter 7 Liquidation**

In Chapter 7 liquidation proceeding, the Debtors' interests in any assets of the Estates would vest in Chapter 7 trustees, who would either release them to the respective secured Creditors or attempt to sell those assets to third parties and distribute any

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 22

proceeds Pro Rata to all Creditors of the estate under the priorities established by Bankruptcy Code Section 507. Chapter 7 Trustees also have the statutory power to assert "avoidance claims" and other litigation claims held by the Estates against third parties pursuant to Bankruptcy Code Sections 510, 541, 544, 545, 547, 548, and 549, which can generate funds to pay unsecured Creditors.

The Debtors believe that the Plan is significantly more beneficial to Creditors than Chapter 7 for three main reasons.

First, the Debtors are utilizing their powers under Bankruptcy Code Section 1123(a)(5) to modify and extend the WR secured debt and Mr. Finn's secured debt for the benefit of all Creditors. A Chapter 7 trustee lacks this power.

Second, it is unlikely that a Chapter 7 trustee would elect to continue to operate the Debtors' businesses to facilitate a going-concern sale. This would likely result in a significant negative impact on the proceeds realized from a sale.

Third, although the Plan proposes to subordinate the claims of SVP against SVC to the claims of other creditors, these claims would most likely not be subordinated in distributions by a Chapter 7 trustee. The general rule in Chapter 7 is that insider claims are not subordinated. Subordination could only occur if the Chapter 7 trustee were to incur the expense and uncertainty of an adversary complaint for subordination and were to prevail.

In light of the foregoing, the Debtors apprehend that a liquidation in Chapter 7 would not generate sufficient funds, after payment of administrative expenses, priority claims, and secured claims, to facilitate payment in full to general unsecured creditors.

**B. No Other Plans**

The Bankruptcy Code permits parties in interest other than the Debtors to propose a plan of reorganization under certain circumstances. The Plan submitted by the Debtors is the only plan of reorganization that has been proposed at this time.

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 23 of 30

# VI.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

## A.  In General

The following is a summary of certain United States federal income tax consequences of the Plan that may be material to Creditors (each a "<u>Holder</u>"). This discussion is included for general information purposes only and is not intended to be, and is not, legal or tax advice to any particular Holder. This summary is based on the current provisions of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"), the Income Tax Regulations (the "<u>Regulations</u>") and other legal authorities, all of which are subject to change, possibly with retroactive effect. No rulings from the Internal Revenue Service (the "<u>IRS</u>") or opinions of counsel have been or will be requested concerning the matters discussed below. The tax consequences set forth in the following discussion are not binding on the IRS or the courts, and no assurance can be given that contrary positions will not be successfully asserted by the IRS or adopted by a court.

This summary does not address the taxation of the Debtors or the Holders under state, local law or foreign law.

**TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR  230, HOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY HOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY DEBTOR IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**EACH HOLDER SHOULD CONSULT THE HOLDER'S OWN TAX ADVISOR TO DETERMINE THE HOLDER'S PARTICULAR U.S. FEDERAL INCOME TAX CONSEQUENCES AND OTHER TAX CONSEQUENCES TO THE HOLDER OF THE PLAN, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX LAWS AND THE EFFECT OF ANY CHANGES IN SUCH LAWS.**

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 24 of 30

**B.    Consequences to Creditors.**

Creditors should consult their own tax advisors concerning any income tax consequences of their respective treatment under the Plan.

**C.    Wage Withholding.**

If any Allowed Claim under the Plan constitutes "wages" for U.S. federal income tax purposes, the U.S. federal income tax rules applicable to wage withholding will apply to the payment of the Allowed Claim.

**D.    Backup Withholding.**

U.S. federal income tax laws require that, to avoid backup withholding with respect to "reportable payments" (in an amount equal to 28%), a Creditor or Holder must (a) provide the Debtors with its correct taxpayer identification number ("TIN") on IRS Form W-9 and certify as to its eligibility for exemption from backup withholding, or (b) establish a basis for exemption from backup withholding on an appropriate IRS Form W-8 (including a Form W-8BEN, W-8ECI, W-8EXP and W-8IMY) or IRS Form W-9, as applicable. Exempt Creditors and Holders (including, among others, all corporations and certain foreign individuals) are not subject to backup withholding and reporting requirements. If withholding is made and results in an overpayment of taxes, a refund may be obtained.

## VII.  VOTING, ACCEPTANCE AND CONFIRMATION

**A.    In General.**

The United States Bankruptcy Court has set a date for the hearing on the Confirmation of the Plan. The hearing is to be held at the United States Bankruptcy Court, 99 South E Street, Santa Rosa, CA 95404. The Plan can be implemented only if accepted by the requisite percentage of Creditors and confirmed by the Bankruptcy Judge. Creditors entitled to vote should vote on the Plan by filling out and mailing the accompanying ballot to counsel. There is no assurance that, if accepted, the Plan will be confirmed by the Bankruptcy Judge.

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 25

Case: 17-10065    Doc# 187    Filed: 08/17/17    Entered: 08/17/17 13:41:00    Page 25 of 30

**B.     Voting.**

Only impaired classes under the Plan will be entitled to vote on the Plan. The definition of an "impaired" class of Creditors is set forth in Section 1124 of the Bankruptcy Code. Classes 2, 3, 4, 5, and 10 are impaired by the Plan, and holders of claims in such classes that are either allowed or are estimated as allowed by the Court, for voting purposes, are entitled to vote. No other Classes are impaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, a class that is not impaired under the Plan, and each holder of a Claim of such class, are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such class from the holders of Claims of such class is not required. The Bankruptcy Code defines "acceptance" of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in dollar amount and more than one-half (½) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan, not counting any acceptances submitted by insiders.

In addition to the requirement that a Creditor be in an "impaired class", in order for a Creditor's vote to be counted, either for or against the Plan, the Creditor must have either (1) filed a proof of claim on or before the "Claims Bar Date"; or (2) have been listed by the Debtor in the Schedule of Liabilities as having a claim which was noncontingent and undisputed.

**IF YOU HAVE ALREADY FILED A CLAIM YOU NEED NOT REFILE FOR THE PURPOSE OF VOTING ON THE PLAN.**

If a Creditor wishes to vote for or against the Plan, the Creditor should complete an acceptance or rejection of the Plan on the form ballot enclosed herewith which must be returned pursuant to the instructions set forth thereon.

**C.     Confirmation.**

If no impaired Creditor classes accept the Plan, it cannot be confirmed. If at least one impaired class of Creditors of each of the Debtors accepts the Plan, the Court will

hold a Confirmation Hearing. At the Confirmation hearing, the Bankruptcy Judge has the duty to determine whether the Plan meets the requirements of Section 1129 of the Bankruptcy Code. The principal requirements of Section 1129 include the following: (1) that the proponents of the Plan have complied with the applicable provisions of the Bankruptcy Code on all matters connected with the case; (2) that the Plan has been proposed in good faith, and not by any means forbidden by law; (3) that the requisite amount of Creditors have accepted the Plan or that the Creditors are receiving an amount not less than they would receive if liquidation under Chapter 7 took place; (4) that at least one class of Creditors has accepted the Plan; and (5) that Confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization of the debtor; and (6) that the Debtors and the Plan in all other respects comply with applicable law. Only if such determinations are made will the Judge confirm the Plan.

In addition, if there are impaired Creditor classes which have rejected the Plan, the Bankruptcy Judge may order Confirmation over their rejection, but only if the Judge first determines that the rights of non-consenting classes of Creditors are protected under Bankruptcy Code Section 1129(b) and other applicable law.

**D.      Modification of the Plan.**

The Debtors may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan. After the Confirmation Date, the Debtors or Reorganized Debtors may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

## VIII.  CONCLUSION

The Debtors believe that its Plan of Reorganization realistically affords to Creditors their best opportunity for receiving a prompt, meaningful dividend. The Debtors therefore respectfully request that Creditors vote to accept the Plan.

Dated: August 17, 2017                           _/s/ Michael C. Fallon, Jr._
                                                 Michael C. Fallon, Jr.
                                                 Attorney for SVP


Dated: August 17, 2017                           SULLIVAN VINEYARDS PARTNERSHIP


                                                  _/s/ Ross Sullivan_____
                                                 Its Responsible Individual


Dated: August 17, 2017                            _/s/ Steven M. Olson_
                                                 Steven M. Olson
                                                 Attorney for SVC



Dated: August 17, 2017                           SULLIVAN VINEYARDS
                                                 CORPORATION


                                                  _/s/ Ross Sullivan_____
                                                 Its Responsible Individual

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT
REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN
VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 28

## CERTIFICATE OF SERVICE

I reside in the County of Sonoma, State of California. I am over the age of 18 years and not a party to the within action. My business address is Law Office of Steven M. Olson, 100 E Street, Suite 104, Santa Rosa, CA 95404.

On August 17, 2017, I served the

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017**

on the parties listed on the attached Service List. I served such parties in the manner described as follows:

/X/ (BY MAIL) I placed a copy of the document in sealed envelopes, with postage thereon fully prepaid for First Class Mail, addressed to such parties as have mailing addresses set forth on the attached Service List, for collection and mailing at Santa Rosa, California.

/_/ (BY PERSONAL SERVICE) I caused the document to be delivered by hand to the address(es) noted on the attached Service List.

/_/ (BY FACSIMILE) I caused the document to be transmitted by facsimile machine to such parties as have facsimile numbers set forth on the attached Service List.

/_/ (BY EMAIL) I caused the document to be transmitted by Email to such parties as have Email addresses set forth on the attached Service List.

I declare under penalty of perjury, under the laws of the United States and of the State of California, that the foregoing is true and correct. Executed at Santa Rosa, California, on August 17, 2017.

*/S/ Steven M. Olson*

By: _____
Steven M. Olson

DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017 - Page 29

Case: 17-10065   Doc# 187   Filed: 08/17/17   Entered: 08/17/17 13:41:00   Page 29 of 30

1

**SERVICE LIST**

2   **Special Notice**
    Philip S. Warden, Esq.
3   Cecily A. Dumas, Esq.
    Pillsbury Winthrop Shaw Pittman LLP
4   4 Embarcadero Center, 22 Fl
    San Francisco, CA 94111-5998
5
    Austin Nagel, Esq.
6   111 Deerwood Rd. #305
    San Ramon, CA 94583
7
    Reno F.R. Fernandez III, Esq.
8   221 Sansome Street, Third Floor
    San Francisco, CA 94104
9
    **United States Trustee**
10  Lynette C. Kelly, Esq.
    Office of the U.S. Trustee
11  450 Golden Gate Avenue, 5th Fl., #05-0153
    San Francisco, CA 94102
12
    **Securities and Exchange Commission**
13  Securities and Exchange Commission
    100 F Street, NE
14  Washington, DC 20549

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED JOINT**
**REORGANIZATION PLAN OF SULLIVAN VINEYARDS CORPORATION AND SULLIVAN**
**VINEYARDS PARTNERSHIP DATED AUGUST 17, 2017** - Page 30