1  Aron M. Oliner (SBN: 152373)
2  Geoffrey A. Heaton (SBN: 206990)
   **DUANE MORRIS LLP**
3  One Market Plaza
   Spear Street Tower, Suite 2200
4  San Francisco, CA 94105-1127
   Telephone: (415) 957-3000
5  Facsimile: (415) 957-3001
   Email: roliner@duanemorris.com
6
7  Attorneys for Chapter 11 Trustee
   TIMOTHY W. HOFFMAN
8
9              **UNITED STATES BANKRUPTCY COURT**
10
11             **NORTHERN DISTRICT OF CALIFORNIA**
12                   **SANTA ROSA DIVISION**
13
14

| | |
|---|---|
| In re | Case No. 17-10065 RLE |
| SULLIVAN VINEYARDS CORPORATION, | (Jointly Administered) |
| Debtor. | Chapter 11 |
| | **MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES [11 U.S.C. § 363(f)]** |
| | Date: December 11, 2017 |
| | Time: 10:30 a.m. |
| | Place: 99 South E Street |
| | Santa Rosa, CA 95404 |
| | Judge: Hon. Roger L. Efremsky |
| In re | |
| SULLIVAN VINEYARDS PARTNERSHIP, | |
| Debtor. | |

DUANE MORRIS LLP
SAN FRANCISCO

Case: 17-10065   Doc# 234   Filed: 11/10/17   Entered: 11/10/17 09:55:33   Page 1 of 24

**TO WINERY REHABILITATION, LLC; STEPHEN A. FINN; NAPA COUNTY TAX COLLECTOR; CASTELLUCCI NAPA VALLEY; FORD MOTOR CREDIT COMPANY; KELLEEN SULLIVAN; SULLIVAN VINEYARDS PARTNERSHIP; ST. HELENA SELF STORAGE; BIAGI BROTHERS, INC.; WINESHIPPING; THE DEBTORS AND THEIR COUNSEL; AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

Timothy W. Hoffman ("Trustee"), Chapter 11 Trustee of the bankruptcy estates of Sullivan Vineyards Corporation ("SVC") and Sullivan Vineyards Partnership ("SVP" and, together with SVC, the "Debtors") moves for entry of an order authorizing the sale of substantially all of the Debtors' real and personal property assets free and clear of liens and encumbrances to VITE USA, Inc. ("Buyer") pursuant to 11 U.S.C. § 363(f) ("363(f) Motion"), and requests that the Court waive the 14-day stay prescribed by Fed. R. Bankr. P. 6004(h) in connection with the relief requested herein, and as grounds therefore alleges:

1.      SVC and SVP filed voluntary petitions under chapter 11 of the Bankruptcy Code on February 1, 2017 and February 2, 2017, respectively.

2.      On March 13, 2017, the Court entered an order directing the joint administration of the Debtors' cases.

3.      The Debtors administered their respective estates as debtors in possession until August 29, 2017, when the Court entered an order approving the Trustee's appointment as Chapter 11 Trustee of the Debtors' estates.

4.      The Trustee is the duly-appointed, qualified and acting Trustee of the Debtors' bankruptcy estates.

5.      The Debtors operate a Napa Valley winery known as Sullivan Vineyards.

6.      Among the property of the Debtors' bankruptcy estates is the following:  certain real property commonly known as 1090 Galleron Road, Rutherford, California, consisting of approximately 26.1 acres, including approximately 24 acres of planted grapes, an approximately 3,000 square foot dwelling containing both office space and a living quarters, as well as a

**MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES 11 U.S.C. § 363(f) – CASE NO. 17-10065 RLE**

DM3\4882605.1 R1034/00002

Case: 17-10065   Doc# 234   Filed: 11/10/17   Entered: 11/10/17 09:55:33   Page 2 of 24

DUANE MORRIS LLP
SAN FRANCISCO

winery, tasting room, and crush facility, together with all manner of tangible and intangible personal property related to the Debtor's winery business, as set forth with greater particularity in the Debtors' bankruptcy schedules.

7.      The Trustee has entered into a purchase agreement (the "Agreement") with Buyer to purchase substantially all of the Debtors' assets, including (a) the real property located at 1090 Galleron Road, assessor's parcel number 030-070-010 (the "Real Property"), (b) all rights, privileges, easements and other benefits appurtenant to the Real Property, (c) the use permits in effect with respect to the Real Property, (d) all buildings, structures, fixtures, vineyard improvements, water systems, wells, pumps, winery and vineyard equipment installed at the Real Property, (e) the Debtors' trademarks and related intellectual property (including wine club, website, and customer information), (f) the Debtors' bulk and bottled inventory, (g) the growing crop, and (h) any and all tangible and intangible personal property used with respect to the business operated by the Debtors (collectively, the "Assets").

8.      While the terms of the Agreement, including price, are confidential (hence, a copy of the Agreement is not submitted with this 363(f) Motion), Buyer has agreed to purchase the Assets free and clear of liens and other interests, and subject to Bankruptcy Court approval, for a price that is more than adequate to pay in full all allowed claims (secured and unsecured) and administrative expenses in the Debtors' cases.

9.      The Agreement is expressly subject to Bankruptcy Court approval.  The Trustee believes it is in the best interest of the estates and their creditors to enter into the Agreement and close the transaction contemplated therein.

10.      Based upon a Preliminary Report furnished by First American Title Company of Napa, a true and correct copy of which is attached hereto as **Exhibit "A"** and made a part hereof, as well as the Debtors' sworn bankruptcy schedules and other documents on file in these cases,

the Trustee is informed and believes, and based thereon alleges, that the Real Property is encumbered with liens and other interests as follows:

a. Real property taxes due the Napa County Tax Collector in two installments of approximately $12,032.76 each;

b. A Deed of Trust, Security Agreement, Assignment of Rents, and Fixture Filing, together with related security documents, in favor of Silicon Valley Bank in the original aggregate amount of $9,270,000.00. The Trustee is informed and believes that Winery Rehabilitation, LLC is the current assignee of this deed of trust and related security documents (collectively, the "WR Lien"), and is the holder of the subject note(s). Moreover, the Trustee is informed and believes based upon Winery Rehabilitation, LLC's proofs of claim on file (Claim Nos. 11-1 and 12-1 filed in SVC's case) that the asserted amount of this obligation is in excess of $9,940,098.42; and

c. A Subordinate Deed of Trust, Security Agreement, Assignment of Rents, and Fixture Filing, together with related security documents, in favor of Stephen A. Finn (collectively, the "Finn Lien"). The Trustee in informed and believes based upon Stephen A. Finn's proofs of claim on file (Claim Nos. 13-1 and 14-1 filed in SVC's case) that the asserted amount of this obligation is in excess of $4,656,692.36.

11. Moreover, the Debtors' schedules, as well as proofs of claim on file in the Debtors' cases, represent that the Debtors' personal property assets are encumbered with liens and other interests as follows:

a. A statutory grower's lien in favor of Castellucci Napa Valley in the approximate amount of $9,863.75;

DM3\4882605.1 R1034/00002

4

**MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES [11 U.S.C. § 363(b)] – CASE NO. 17-10065 RLE**

Case: 17-10065    Doc# 234    Filed: 11/10/17    Entered: 11/10/17 09:55:33    Page 4 of 24

DUANE MORRIS LLP
SAN FRANCISCO

b.　A security interest in favor of Ford Motor Credit Company, LLC on a 2016 Ford F250 vehicle in the approximate amount of $15,531.27, as set forth in Claim 10-1 filed in SVC's case;

c.　A statutory grower's lien on bulk wine inventory (approximately 21,241 gallons) in favor of Kelleen Sullivan in the approximate amount of $39,910.27;

d.　A security interest on the Debtors' accounts receivable, inventory, collectibles, intangibles and other categories of property in favor of Stephen A. Finn pursuant to the Finn Lien;

e.　A statutory grower's lien on SVC's bulk wine inventory (approximately 21,241 gallons) in favor of SVP in the approximate amount of $445,721.44;

f.　A security interest on the Debtors' accounts receivable, inventory, collectibles, intangibles and other categories of property in favor of Winery Rehabilitation, LLC pursuant to the WR Lien;

g.　A security interest on personal property in the amount $770.00 in favor of St. Helena Self Storage, as set forth in Claim 1-1 filed in SVC's case;

h.　A statutory lien on bottled wine inventory located at Biagi (8,144 cases, 184 bottles) in favor of Biagi Brothers, Inc. in the approximate amount of $5,557.07; and

i.　A statutory lien on bottled wine inventory being stored at Wineshipping (30,628 bottles) in favor of Wineshipping in the approximate amount of $30,774.50.

12.　Pursuant to Bankruptcy Code Section 363(f), the Trustee may sell property of the estate free and clear of liens and other interests when applicable non-bankruptcy law permits such a sale ((f)(1)), when an entity consents ((f)(2)), when the interest is a lien and the sale price exceeds the aggregate value of all liens on the property ((f)(3)), when such interest is in bona fide

Duane Morris llp
San Francisco

**MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES [11 U.S.C. § 363(b)] — CASE NO. 17-10065 RLE**

Case: 17-10065　Doc# 234　Filed: 11/10/17　Entered: 11/10/17 09:55:53　Page 5 of 24

dispute ((f)(4)), or when such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest ((f)(5)).

13. In the instant case, the Trustee can sell the Assets free and clear of the above interests pursuant to one or more subsections of 363(f).

14. In particular, the Trustee may sell the Assets free and clear of all interests purporting to encumber the Assets pursuant to 11 U.S.C. § 363(f)(3), since all of the asserted interests purport to be liens on the Assets (or some portion thereof), and the sale price exceeds the aggregate value of all asserted liens on the Assets. Indeed, the Trustee submits that the sale price, while not disclosed in accordance with the terms of the Agreement, is more than adequate to pay all allowed claims in the Debtors' cases – secured <u>and</u> unsecured.

15. In addition, with respect to the asserted liens of the principal secured creditors in these cases, Winery Rehabilitation, LLC and Stephen A. Finn, the Trustee is informed and believes that both consent to a sale of the Assets free and clear of their asserted liens. Accordingly, the Trustee may sell free and clear of these liens pursuant to 11 U.S.C. § 363(f)(2).

16. Moreover, to the extent that any of the other above-identified parties do not object to the sale free and clear of their liens, such parties should be deemed to have consented to the sale, with the result that the Trustee may sell free and clear of such interests pursuant to section 363(f)(2).

17. As such, the proposed sale is permissible under one or more subsections of section 363(f). The Trustee proposes to sell the Assets and pay all undisputed liens in full directly from escrow.[1]

---

[1] To be clear, the Trustee will only pay undisputed liens in full directly from escrow, as he determines is appropriate based upon his reasonable business judgment. The liens of any creditors not paid from escrow will transfer to the sale proceeds to the same extent, and with the same validity and priority, as existed with respect to the Assets.

DM3\4882605.1 R1034/00002
6

MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES [11 U.S.C. § 363(f)] – CASE NO. 17-10065 RLE

DUANE MORRIS LLP
SAN FRANCISCO

18.    It is the Trustee's intention to pay as many claims as possible out of escrow.  To that end, the Trustee intends to pay the claims of Winery Rehabilitation LLC (estimated at approximately $11.5 million) and the Napa County Tax Collector (pro rated through close of escrow) first from sale proceeds.

19.    Concurrently with this 363(f) Motion, the Trustee is serving and filing on all creditors and interested parties a Motion to Sell all Real and Personal Property Assets of the Debtors [11 U.S.C. § 363(b)] (the "363(b) Motion").  You will be served with a copy of the 363(b) Motion in addition to the instant 363(f) Motion.

20.    The Trustee is informed and believes that a sale free and clear of liens and other interests as described above is in the best interest of creditors and the estates and should be approved by the Court for the following reasons:

a.    In the absence of a sale, some or all of the Assets may ultimately be lost to foreclosure;

b.    A sale of the Assets will allow all allowed claims and administrative expenses to be paid in full.

21.    In addition, the Trustee requests that the Court waive the 14-day stay set forth in Fed. R. Bankr. P. 6004(h) since, under the terms of the Agreement, the Trustee must close the sale transaction on an expedited time frame.

**WHEREFORE**, the Trustee prays as follows:

1.    That the 363(f) Motion be granted and the Trustee be authorized to sell the Assets to Buyer on the terms set forth in the Agreement;

2.    That the sale be free and clear of liens and other interests, and that the above liens and interests attach to the proceeds of sale to the same extent, and with the same validity and priority, as they attached initially to the Assets;

DUANE MORRIS LLP
SAN FRANCISCO

DM3\4882605.1 R1034/00002                    7

MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES [11 U.S.C. § 363(f)] – CASE NO. 17-10065 RLE

Case: 17-10065    Doc# 234    Filed: 11/10/17    Entered: 11/10/17 09:55:33    Page 7 of 24

1         3.     That the Trustee be authorized to pay from the proceeds of sale all undisputed

2    liens and encumbrances;

3         4.     That the Court waive the 14-day stay set forth in Fed. R. Bankr. P. 6004(h); and

4         5.     For such other and further relief as the Court deems just and proper.

5

6

7    Dated:  November 10, 2017        **DUANE MORRIS LLP**

8            By: /s/ Aron M. Oliner (152373)

9              ARON M. OLINER
               Attorneys for Chapter 11 Trustee
10             TIMOTHY W. HOFFMAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DUANE MORRIS LLP
SAN FRANCISCO

DM3\4882605.1 R1034/00002        8

**MOTION TO SELL REAL AND PERSONAL PROPERTY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND ENCUMBRANCES 11 U.S.C. § 363(f) – CASE NO. 17-10065 RLE**

# EXHIBIT A



**First American Title
Company of Napa**

# *FIRST AMERICAN TITLE COMPANY OF NAPA*

## **FIRST LOOK CHECKLIST**

Will any of the following situation potentially affect your transaction:

☐     Will the principals be using a **POWER OF ATTORNEY**?

☐     Are any of the parties in title **INCAPACITATED OR DECEASED**?

☐     Has a **CHANGE IN MARITAL STATUS** occurred for any of the principals?

☐     Will the property be transferred to a **NEW TRUST, PARTNERSHIP OR CORPORATION**?

☐     Do the sellers of the property **RESIDE OUTSIDE OF CALIFORNIA OR THE UNITED STATES**?

☐     Have any of the principals **RECENTLY FILED BANKRUPTCY**?

☐     Are the principals involved in an **EXCHANGE WITH THIS PROPERTY**?

☐     Has there been a **WORK OF IMPROVEMENT, CONSTRUCTION, OR ANY REMODELING** of the subject property in the last 90 days?

If you answered YES to any of these questions, please contact your escrow officer right away, so we can assure a smooth closing.

Remember, all parties signing documents must have a valid photo I.D. or driver's license for a notarial acknowledgment.

Thank you for helping First American Title Company of Napa serve you better.

**1700 Second Street, Napa, CA 94559 (707) 254-4500
2390 California Boulevard, Napa, CA 94559 (707) 259-4980
1361 Main Street, St. Helena, CA 94574 (707) 963-7151**



**First American Title Company of Napa**

## PRELIMINARY REPORT

### First American Title Insurance Company

#### *First American Title Company of Napa*

##### *California Department of Insurance License No. 2553-6*

**1361 Main Street, P.O. Box 178, St. Helena, CA 94574**
**Tel: (707) 963-7151 - Fax: (707) 963-1302**

**Property Address:**
    1090 Galleron Lane
    .Saint Helena, CA 94574
**Assessor's Parcel Number:**
    030-070-010
**Buyer/Borrower:**
    Aspect Consumer Partners

**Seller/Owner:**
    Sullivan Vineyards Partners

**Direct Escrow Inquiries to Escrow Officer:**
    Leslie Tschida
    Email: LTschida@FirstAmNapa.com

**Direct Title Inquiries to:**
    Mark Holderbein
    Email: mholderbein@firstamnapa.com
**Reference Number:**

In response to the application for a policy of title insurance referenced herein, First American Title Insurance Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The policy(s) of title insurance to be issued hereunder will be policy(s) of First American Title Insurance Company.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

Dated as of October 13, 2017 at 7:30 A.M.

By: _Mark Holdabe_
    Authorized Signatory





**First American Title
Company of Napa**

The form of policy or policies of title insurance contemplated by this report is:

ALTA Owner's Policy (6/17/06) with Regional Exceptions (Standard Coverage)
And
ALTA Loan Policy (6/17/06) (Extended Coverage)

A specific request should be made if another form or additional coverage is desired.

TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

**Sullivan Vineyards Partners, a California partnership, subject to proceedings pending in the Bankruptcy Court of the Northern  District of the U.S. District Court, Santa Rosa, entitled in re: Sullivan Vineyards Corporation, debtor, Case No. 17-10065 and Sullivan Vineyards Partnership, Case No. 17-10067 (Joint Administration Proceedings) and Sullivan Vineyards Corporation et al v. Finn, et al, Case No. 17-01023 (Adversary Proceedings), wherein a petition for relief was initially filed February 1, 2017.**

THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**A FEE**

THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

**See Exhibit A attached hereto and made a part hereof.**

Case: 17-10065     Doc# 234     Filed: 11/10/17     Entered: 11/10/17 09:55:33     Page 12 of 24



**First American Title
Company of Napa**

# EXHIBIT A

## LEGAL DESCRIPTION

The land referred to in this report is situated in the unincorporated area of St. Helena, County of Napa, State of California, and is described as follows:

COMMENCING at the "brass pin" marking the intersection of the centerline of Galleron Lane and the Northeastern line of the California State Highway No. 29, as the same are shown on Map No. 63 entitled, "Record of Survey Map of Property of Emmolo Nursery", filed in Book 1 of Surveys at page 64 in the office of the County Recorder of said Napa County; running thence North 47° 50' East along said centerline of Galleron Lane 1486.65 feet; thence North 42° 10' West 239.80 feet; thence North 47° 50' East 200.00 feet; thence South 42° 10' East 239.80 feet to said centerline of Galleron Lane; thence North 47° 50' East along said centerline of Galleron Lane 696.65 feet to the most Eastern corner of parcel of land described in the Deed to Virgil A. Galleron, et al, recorded in Book 841 at page 920 of Official Records of Napa County; thence Northwesterly along the Northeastern line of said Virgil A. Galleron parcel North 38° 55' West 796.43 feet, South 47° 40' West 174.40 feet and North 39° 10' West 634.56 feet to the most Northern corner of said Virgil A. Galleron parcel; thence Southwesterly along the Northwestern line of said Virgil A. Galleron parcel South 24° 21' 10" West 778.57 feet, South 37° 55' 10" East 320.43 feet, South 47° 22' West 1358.23 feet to the most Western corner of said Virgil A. Galleron parcel; thence South 28° 31' East along said Northeastern line of the California State Highway No. 29, a distance of 810.40 feet to the point of commencement.

EXCEPTING THEREFROM Parcel 1, as shown on the map entitled, "Parcel Map of a portion of the Lands of Franciscan Vineyards", filed July 6, 1973 in Book 5 of Parcel Maps at page 39 in the office of the County Recorder of said Napa County.

APN 030-070-010

Case: 17-10065    Doc# 234    Filed: 11/10/17    Entered: 11/10/17 09:55:33    Page 13 of 24



**First American Title
Company of Napa**

AT THE DATE HEREOF, EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:

1.  General and special taxes and assessments for the fiscal year 2017-2018.
    First Installment            :   $12,032.76
    Second Installment           :   $12,032.76
    Tax Rate Area                :   85001
    A. P. No.                    :   030-070-010

2.  The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

3.  Rights of the public in and to that portion of the land lying within Galleron Lane.

4.  An easement for country road and highway purposes and incidental purposes, recorded June 21, 1973 as Book 912 at page 250 of Official Records.
    In Favor of                  :   County of Napa

5.  A waiver of any claims for damages by reason of the location, construction, landscaping or maintenance of a contiguous freeway, highway or roadway, as contained in the document recorded June 21, 1973 as Book 912 at page 250 of Official Records.

6.  The fact that the land lies within the Napa River Watermaster Service Area, as disclosed by an order of the Department of Water Resources of the State of California, a certified copy of which was recorded July 24, 2008 as Series Number 2008-0018850 of Official Records.

7.  A deed of trust to secure the performance of an agreement or other obligation, recorded May 21, 2012 as Series Number 2012-0013174 of Official Records.
    Dated                        :   May 17, 2012
    Trustor                      :   Sullivan Vineyards Partners, a California Partnership
    Trustee                      :   First American Title Company of Napa
    Beneficiary                  :   Silicon Valley Bank
    Loan No.                     :   None shown

    A document recorded June 13, 2014 as Series Number 2014-0011846 of Official Records provides that the deed of trust or the obligation secured thereby has been modified.

    According to the public records, the beneficial interest under the deed of trust was assigned to Winery Rehabilitation, LLC, a Colorado limited liability company by assignment recorded April 22, 2016 as Series Number 2016-0009545 of Official Records.

    A document recorded September 20, 2016 as Series Number 2016-0023565 of Official Records provides that Chicago Title Company, a California corporation was substituted as trustee under the deed of trust.

    A notice of default recorded September 20, 2016 as Series Number 2016-0023566 of Official Records.

Case: 17-10065     Doc# 234     Filed: 11/10/17     Entered: 11/10/17 09:55:33     Page 14 of 24



**First American Title
Company of Napa**

8.  A deed of trust to secure the performance of an agreement or other obligation, recorded May 21, 2012 as Series Number 2012-0013175 of Official Records.

| | | |
|---|---|---|
| Dated | : | May 17, 2012 |
| Trustor | : | Sullivan Vineyards Partners, a California Partnership, Sullivan Vineyards Corporation |
| Trustee | : | First American Title Company of Napa |
| Beneficiary | : | Stephen A. Finn, his successors, heirs and assigns |
| Loan No. | : | None shown |

A document recorded May 21, 2012 as Series Number 2012-0013176 of Official Records provides that the lien or charge of the deed of trust was subordinated to the lien or charge of the deed of trust recorded May 21, 2012 as Series Number 2012-0013174 of Official Records.

A document recorded June 17, 2014 as Series Number 2014-0012052 of Official Records provides that the lien or charge of the deed of trust was subordinated to the lien or charge of the deed of trust recorded June 13, 2014 as Series Number 2014-0011846 of Official Records.

A document recorded August 29, 2016 as Series Number 2016-0021406 of Official Records provides that Chicago Title Company, a California Corporation was substituted as trustee under the deed of trust.

A notice of default recorded August 29, 2016 as Series Number 2016-0021407 of Official Records.

A notice of trustee's sale recorded December 5, 2016 as Series Number 2016-0030975 of Official Records.

9.  Terms, provisions, covenants, restrictions and conditions contained in a document executed pursuant to the California Land Conservation Act of 1965 (Williamson Act) and recorded December 12, 2013 as Series Number 2013-0033992 of Official Records.

10. Proceedings pending in the Bankruptcy Court of the Northern District of the U.S. District Court, California, entitled in re: Sullivan Vineyards Corporation, debtor, Case No. 17-10065 and Sullivan Vineyards Partnership, Case No. 17-10067 (Joint Administration Proceedings) and Sullivan Vineyards Corporation et al v. Finn, et al, Case No. 17-01023 (Adversary Proceedings), debtor, wherein a petition for relief was initially filed February 1, 2017.

11. Water rights, claims or title to water, whether or not shown by the Public Records.

12. Any claim that the Title is subject to a trust or lien created under the Perishable Agricultural Commodities Act (7 U.S.C. §§499a et. seq.) or the Packer and Stockyards Act (7 U.S.C. §§181 et. seq.) or under similar state laws.

13. Rights of parties in possession.



14. With respect to Sullivan Vineyards Partners, a general partnership:
    a. That a certified copy of a statement of partnership authority pursuant to Section 16303 of the California Corporations Code (form GP-1), executed by at least two partners, and a certified copy of any amendments to such statement (form GP-7), be recorded in the public records;
    b. A full copy of the partnership agreement and any amendments;
    c. Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

**-END OF EXCEPTIONS-**



*First American Title*
*Company of Napa*

**Information Notes:**

a. If requested, we are prepared to issue a CLTA 116.7 (Subdivision Map Act) Endorsement in conjunction with the Policy of Title Insurance contemplated by this Preliminary Report regarding the land described herein.

b. Neither the policy to be issued, nor the CLTA 116.7 Endorsement, if issued, provide insurance that a building permit can be obtained from the local City or County. Interested parties should contact the City or the County to determine the requirements for a building permit.

c. The Assessor's Parcel Number(s), if any, contained in the legal description herein, are for quick identification purposes only, and are not a part of the actual legal descriptions.

d. Any statement regarding the acreage of the herein described land contained within the legal description in this report is derived from the public record and is for recorded deed purposes only. The Policy of Title Insurance contemplated by this report provides no insurance with respect to acreage and no acreage statement will appear within the legal description of such policy.

e. The County Recorder may charge an additional $20.00 recording fee, if not provided with a "Preliminary Change of Ownership Report" Form, for each Deed to be recorded. The purchaser is responsible for completing and signing this form.

f. Before an escrow can close, or funds placed in a Savings Account, the Seller must furnish a Taxpayer Identification Number to us so that we can file an IRS Form 1099S or its equivalent, with the Internal Revenue Service. This procedure is required by Section 6045 of the Internal Revenue Code.

g. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company of the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

Lenders Supplemental Report:

h. This report contemplates the issuance of a Lender's Policy of Title Insurance. We have no knowledge of any fact that would preclude the issuance of CLTA Form 100 Endorsement and a CLTA Form 116 Endorsement in conjunction with said policy.

i. Said CLTA Form 116 Endorsement will indicate that there is located on the land a Winery and Vineyard, commonly known as:  1090 Galleron Lane .Saint Helena, CA 94574

j. According to the public records, there has been no conveyance of the land within a period of two years prior to the date of this report, except as follows:

   NONE

esn
exn
10/31/2017
Mark Encinas/ap



**First American Title
Company of Napa**

## WARNING:

The map attached, if any, may or may not be a survey of the land depicted hereon.  First American disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

## CLICK HERE FOR MAP

Included are the documents that you (or someone on your behalf) requested.  As required by Section 12956.1(b) of the Government Code, please take note of the following:

**If this document contains any restriction based on race, color, religion, sex, sexual orientation, familial status, marital status, disability, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restriction under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.**

If this cover page is a copy which has been sent by facsimile, e-mail or other form of electronic transmission, please note that in the original of this page the above notice is printed in 18-point boldface type.

Restrictions indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin are hereby deleted to the extent such restrictions violate 42 U.S.C. §3604(c).



**First American Title
Company of Napa**

# PRIVACY POLICY

**We are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record of from another person on entity. First American has also adopted guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

**Type of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;

- Information about your transactions with us, our affiliated companies, or others; and

- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested for us, or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## ATTACHMENT ONE (Revised 06-03-11)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02-03-10)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;
    d.  improvements on the Land;
    e.  land division; and
    f.  environmental protection.
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

Attachment One (6-3-2011)

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
 • For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5000.00 |

### AMERICAN LAND TITLE ASSOCIATION
### RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)

### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
* land use
* improvements on the land
* land division
* environmental protection
This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless:
* a notice of exercising the right appears in the public records
* on the Policy Date
* the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking
3. Title Risks:
* that are created, allowed, or agreed to by you
* that are known to you, but not to us, on the Policy Date – unless they appeared in the public records
* that result in no loss to you
* that first affect your title after the Policy Date – this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4. Failure to pay value for your title.
5. Lack of a right:
* to any land outside the area specifically described and referred to in Item 3 of Schedule A

Attachment One (6-3-2011)

Case: 17-10065    Doc# 234    Filed: 11/10/17    Entered: 11/10/17 09:55:33    Page 21 of 24

OR

\* in streets, alleys, or waterways that touch your land

This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## 2006 ALTA LOAN POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

## 2006 ALTA OWNER'S POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;

Attachment One (6-3-2011)

Case: 17-10065   Doc# 234   Filed: 11/10/17   Entered: 11/10/17 09:55:33   Page 22 of 24

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a)  a fraudulent conveyance or fraudulent transfer; or

    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.

### ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)  the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c),13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

Attachment One (6-3-2011)

Case: 17-10065   Doc# 234   Filed: 11/10/17   Entered: 11/10/17 09:55:33   Page 23 of 24

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a)   a fraudulent conveyance or fraudulent transfer, or
   (b)   a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

Attachment One (6-3-2011)