John D. Fiero (CA Bar No. 136557)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: jfiero@pszjlaw.com

*Attorneys for Equity Owners,*
*Ross Sullivan and Kelleen Sullivan*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| **SULLIVAN VINEYARDS CORPORATION**, <br><br> Debtor. | Case No.: 17-10065-RLE <br><br> (Jointly Administered) <br><br> Chapter 11 <br><br> **OBJECTION TO PROOFS OF CLAIM FILED BY STEPHEN A. FINN (CLAIMS 13 AND 14)** |

**TO THE HONORABLE ROGER L EFREMSKY, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; STEPHEN A. FINN; AND OTHER PARTIES ENTITLED TO NOTICE:**

Pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 3007, equity owners Ross and Kelleen Sullivan ("Objectors") hereby object to Claims 13 and 14 (as amended) filed in the above-captioned jointly administered cases filed by creditor Stephen A. Finn on the grounds that the Claims cannot be allowed in the amounts stated for the reasons below in this Objection.

The Objection is based on the documents attached hereto and any and all other evidence properly before the Court, prior to or at any hearing on the Objection.

# I.

# FACTS

The Sullivan family purchased its first vineyard in Napa Valley in 1972. Today, Sullivan Vineyards Corporation ("SVC") and Sullivan Vineyards Partnership ("SVP") (collectively. the "Debtors"), are owned by almost exclusively by five brothers and sisters, Philomena Gildea, Sean Sullivan, Kelleen Sullivan, Caireen Sullivan and Ross Sullivan (collectively, the "Sullivan Family").[1]

The Debtors filed voluntary chapter 11 petitions on February 2, 2017. Their cases care jointly administered.

On April 10, 2017, alleged creditor Stephen A. Finn ("Claimant") filed claim number 13 (against SVC for "at least $4,656,692.36") and claim number 14 (against SVP for the same dollar amount) (collectively, the "Claims"). The Claims originally sought repayment of a loan made to SVP and SVC (the "Grid Note").

At a hearing on August 21, 2017, the Court ordered the appointment of a chapter 11 trustee. Thereafter, the Office of the United States Trustee selected Timothy W. Hoffman (the "Trustee"), whose appointment was ordered by the Court on August 29, 2017 [Docket No. 199]. Notwithstanding the truncation of his hands-on day to day involvement in the Debtors' affairs, Ross Sullivan continued working to benefit creditors and equity holders alike. Specifically, he found and brought to the negotiating table a purchaser for substantially all of the Debtors' operating assets (the "Sale"). On November 10, 2017, the Trustee filed his *Motion to Sell Real and Personal Property Assets Free and Clear of Liens and Encumbrances* (the "Sale Motion"). The Sale Motion was granted at a hearing on December 11, 2017. On January 10, 2018, the Sale closed. In connection with the closing of the Sale, alleged creditor Winery Rehabilitation, LLC demanded total

---

[1] The five Sullivan siblings own 100% of SVP and app. 97.5% of SVC. Non-family member Andrea Crow has a nominal stake in SVC.

consideration of $5,666,832.52, which sum included $665,000 of attorneys' fees and other costs (in addition to principal and interest, of course). *See* redacted *Seller's Closing Statement* attached hereto as **Exhibit A**. This money was in fact paid to Claimant. *Id.* As a result, Claimant has been paid in full. Its debt under the Grid Note has been cancelled and its security interests extinguished.

The Claims were amended on March 6, 2018 (Claims 13-2 and 14-2) to allege a new liability theory – indemnity (the "Amended POCs"). In the Amended POCs, the Claimant demanded "no less than $5,567,598.69 in connection with the Grid Note and $12,227,121.29 in connection with the Silicon Valley Bank loan." Attached to the Amended POCs are articles of incorporation for SVC (but nothing for SVP) dated September 25, 1987 (Exhibit A to the Amended POCs) and a purported Indemnification Agreement dated February 16, 2012 (Exhibit B to the Amended POCs).

## II.

## ARGUMENT AND FACTS

### A.  The Claimant Bears the Burden of Proof

All allegations set forth in a properly filed proof of claim are taken as true and, if the allegations set forth all facts necessary to establish a claim and are not self-contradictory, the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). However, a claim should not be allowed if that claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. 11 U.S.C. § 502(b)(1). Further, if an objection is made to the proof of claim, the claimant has the ultimate burden of persuasion as to the validity and amount of the claim. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *see also, In re Pugh,* 157 B.R. 898, 901 (BAP 9th Cir. 1993); *In re Fidelity Mortgage Holding Company, Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988) (affirming disallowance of claim -- "[T]he claimant must ... 'prove the validity of the claim by a preponderance of the evidence.' The ultimate burden of proof always rests upon the claimant."). (Citations omitted.) Thus, the burden is on the holders of the claims set forth in the attached Exhibit 1 to provide admissible evidence proving the validity of their claim.

Finally, in considering an objection to a claim, a bankruptcy court may take judicial notice of the underlying records in a bankruptcy case, including the debtor's schedules. *In re ER Fegert*, 887 F.2d 955, 957-958 (9th Cir. 1998).

**B.    The Sale Extinguished Claimant's Liens and Paid Mr, Finn in Full.**

As noted above, the Sale resulted in the Debtors' assets being sold free and clear of Claimant's liens. Those liens were then satisfied by the Trustee's payment of $5,666,832.52. Accordingly, Claims 13-1 and 14-1 should be removed from the claims register as satisfied and superseded.

**C.    The Recent Claim Amendments Are Inappropriate and Should be Rejected.**

Although the Claimant seems to believe that he has an absolute right to blow up the size of the claims pool at any time, the cases hold otherwise. Specifically, some circuits have well-developed law on the subject of last-minute amendments, and that law does not favor the outcome hoped for by the amending creditors here. For instance, the Seventh Circuit has been particularly active in ruling on the effects of amended claims. In *Holstein vs. Brill*, 987 F.2d 1268 (7th Cir. 1993) (Easterbrook, J.), the Seventh Circuit said that Federal Rule of Bankruptcy Procedure 7015 applied to claim amendments and it described dates as "milestones." Specifically, the court explained that "[l]eave to amend should be freely granted early in a case (citation omitted), but passing milestones in the litigation make amendment less appropriate." 987 F.2d at 1270. It then identified the bar date and confirmation date as two such milestones. *Id.* Additionally (and importantly here), the *Holstein* panel said that just because "an amendment would relate back to the original pleading does not make it appropriate for the court to permit the amendment." *Id.*

Another example is found in *In re Stavriotis*, 977 F.2d 1202 (7th Cir. 1992). In that case, the Internal Revenue Service timely filed a proof of claim and then, five months after the bar date passed, filed an amended proof of claim for a larger amount, as well as a motion for permission to amend under Rule 7015. The amount sought by the IRS was 220 times greater than the amount sought in its original (timely) proof of claim. The bankruptcy judge refused to approve the amendment and granted summary judgment for the debtor. After writing that "the disposition of a

4

Case: 17-10065    Doc# 310    Filed: 03/16/18    Entered: 03/16/18 17:44:41    Page 4 of 14

motion to amend a proof of claim falls within the sound discretion of the bankruptcy court," (citations omitted), the panel went on to explain that:

> In this case Rule 7015 should apply by analogy for two reasons. First, Part VII of the bankruptcy rules is "based on the premise that to the extent possible practice before the bankruptcy courts and the district court should be the same." *Advisory Committee Note to Bankruptcy Rule 7001*. In light of this rationale even though bankruptcy courts are not required to do so, many such courts choose to apply Rule 7015 by analogy. *See, e.g., In re AM International Inc.*, 67 Bankr. 79, 81 (N.D.Ill. 1986); *see also In re Calisoff*, 94 Bankr. 1002, 1004 n.2 (N.D.Ill. 1988).

The *Stavriotis* court went on to say:

> Rule 15 favors liberal amendment of pleadings in order to insure consideration of claims on their merits. But while leave to amend should generally be granted, courts have noted that it is inappropriate in some circumstances. *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir. 1990) (affirming denial of leave to amend claim where 1) litigant was aware of the facts underlying the claim before the filing deadline and presented no excuse for failing to raise the claim earlier, 2) opposing party would be unduly prejudiced, and 3) delay would impair the public interest in prompt resolution of disputes). As the Supreme Court stated in *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962):
>
>> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave should, as the rules require, be "freely given." *Id.*; see also, *Eades v. Thompson*, 823 F.2d 1055, 1062-1063 (7th Cir. 1987).
>
> *In this case, both the bankruptcy court and the district court agree that the interests of justice require that the IRS should not be permitted to amend its claim. That conclusion is informed in part by the dramatic increase in the claim amount which came as an unfair surprise to other creditors, and perhaps to the debtors.* As the bankruptcy court noted, relying on *In re AM International, Inc.*, 67 Bankr. 79 (N.D. Ill. 1986), *a claim for approximately $ 11,000 does not give parties notice of a claim of over $ 2,000,000.*

*In re Stavriotis*, 977 F.2d at 1205-1206 (Emphasis added). Further, the panel noted that "although no plan was confirmed during the IRS's five-month delay, its amendment would prejudice other creditors who had been given no notice of the IRS's ongoing audit and relied on the general amount of the claim listed in the original proof of claim." *Id* at 1205-06. Finally, the court concluded:

> *The bankruptcy court's need for prompt resolution of disputes necessitates a bar date for filing proofs of claim. If a creditor knows that after analyzing information which is wholly within its own control it may later seek to amend its claim drastically, it must not keep that knowledge secret. If it does so, and later surprises the debtor or other creditors, it should not claim surprise if the bankruptcy court elects to deny the amendment.*

977 F.2d at 1206-1207. (Emphasis added).

The *Stavriotis* facts are without material difference from the ones presented by the last-minute Amended POCs. Accordingly, the presumption of entitlement to leave to amend under Rule 7015 should be rejected, and the specific equities of this case should come to the fore. Here, the Objectors and the Trustee reasonably believed that these were surplus cases, with money being returned to equity. These claim amendments, however, (if allowed and later proven) would dilute the claims pool by a huge factor, and leave all creditors with pennies on the dollar (and the Sullivans with nothing). Accordingly, they should be disallowed.

### D. The Claimed Rights to Indemnity Do Not Exist Here.

As a preliminary item, it should be noted that the California Civil Code (at sections 2772 to 2784.5) sets forth the basic rules of contractual indemnity. One of the most basic rules is found in Cal. Civ. Code Section 2774, which states in part that "[a]n agreement to indemnify a person against an act thereafter to be done, is void, if the act be known by such person at the time of doing it to be unlawful." This principle is illustrated in an analogous context by *Neubauer v. Goldfarb,* 108 Cal. App. 4th 47, 133 Cal. Rptr. 2d 218 (2003), where the court held that a provision in an agreement between a minority shareholder and majority shareholders (who were also officers and directors) purporting to waive the fiduciary duty of the majority directors was unenforceable under California law. The court held that a breach of fiduciary duty constitutes a "willful injury to the . . . property of another" (108 Cal. App. 4th at 56) and thus California Civil Code Section 1668 declares any such contractual provision "against the policy of the law," and hence void and unenforceable. *Id.* Simply put, the only way Mr. Finn could ever collect on his alleged indemnities is for Mr. Finn or his agents to be found liable for causing legal harm to SVC, SVP, or the Sullivans. In other words, Mr. Finn seeks indemnity from the injured parties for the harm he has inflicted upon them. This is not how the law works.

Next, Mr. Finn attached to his Amended POCs what he says are Articles of Incorporation of SVC and the Bylaws. However, neither document is the current version of what it purports to be. Surely Mr. Finn must know that because he exercised options to acquire stock that, when issued, would exceed the 1,000 shares authorized in the Articles he attached. Moreover, the Bylaws provide for only one authorized director (Bylaws Article III, Section 2), whereas Mr. Finn presided

over many meetings of the SVC Board in which three directors participated. In any case, even assuming the indemnification provision included in in the purported Bylaws is in effect, it merely provides for indemnification to the extent that indemnification of a director is authorized by California State Law, Corporations Code Section 317.

Indemnification of "agents" of a California corporation, which includes officers and directors thereof, is governed by Section 317 of the California General Corporation Law. It is clear that no indemnification of an "agent" may be made except as specifically provided in Section 317. *See*, subdivision 317(e) which provides in applicable part:

> "Except as provided in subdivision (d), any indemnification under this section [317] shall be made by the corporation only if authorized in the specific case, upon a determination that the indemnification of the agent is proper in the circumstances because the agent has met the applicable standard of conduct set forth in subdivision (b)…, by any of the following:
>
> (1) A majority vote of a quorum consisting of directors who are not parties to such proceeding.
>
> (2) If such quorum of directors is not obtainable, by independent legal counsel in a written opinion.
>
> (3) Approval of the shareholders (Section 153), with the shares owned by the person to be indemnified not being entitled to vote thereon.
>
> (4) The court in which the proceeding is or was pending upon application made by the corporation or the agent…"

Subdivision (d) referred to in the quoted language provides that, in the event an agent has been successful on the merits of the proceeding in which he or she is involved, the agent shall be indemnified against expenses actually and reasonably incurred in that proceeding. *Thus, indemnification of Mr. Finn is entirely contingent* until he is successful in the defense of the litigation he faces, or if the board or the shareholders of SVC (or the Court presiding over the proceeding), agrees to provide indemnification after a finding that he has met the applicable standard of care. The provision relating to the determination being made by independent legal counsel in a written opinion is not relevant because it only becomes applicable if a quorum consisting of directors not parties to such proceeding is not obtainable.

As for the Purported Indemnification Agreement, this document may well be a fiction or a sham. At the time the Purported Indemnification Agreement was allegedly executed, the SVC

Board consisted of three directors: Ross Sullivan, David Runberg, and Stephen Finn. Such an agreement would have to have been authorized by a majority of independent directors, or by a majority of the SVC shareholders, without counting the shares of Finn, and in either case after full disclosure of all relevant information about the agreement and Finn's interest in it. Cal. Corp. Code § 310. The Purported Indemnification Agreement was never presented to, nor discussed at, a board or shareholder meeting, nor was it ever presented to the Shareholders seeking their written consent. In fact, the first time Ross Sullivan ever saw or heard about the Purported Indemnification Agreement was when he was given a copy of the Amended POCs on or about March 7, 2018. *Id.*

As to execution of the Purported Indemnification Agreement on behalf of SVC, this was done solely by David Runberg who, at the time, was an employee of Mr. Finn's Colorado trust company and presumably acting as agent for Mr. Finn. No independent director or officer of SVC was asked to execute the document on behalf of SVC. Moreover, the document does not state, as is customary with documents to which a corporation is a party, that the individual executing the document on behalf of the corporation was duly authorized to do so.

Corporate counsel retained by the Sullivan Family has made a diligent effort to locate and assemble all of the minutes of the SVC Board and Shareholder meetings, as well as any actions approved by written consent. A gap exists in such records for the period beginning March 20, 1993 and ending July 20, 2015. Mr. Douglas Thaxton was an employee of Mr. Finn, as well as a Director of Finn's Colorado trust company and Finn's personal financial advisor; Thaxton acted as SVC Corporate Secretary during the period of approximately 2014 to October 2015. Despite repeated demands upon Mr. Thaxton that he return to the SVC corporate offices all minutes, board and shareholder actions, and other important documents belonging to SVC, Mr. Thaxton has refused to do so. It is presumed that Mr. Thaxton, as a director and employee of Mr. Finn's Colorado company, was merely complying with instructions from Mr. Finn.

It should also be noted that Mr. Finn has never attempted to demand indemnification pursuant to the provisions of the Bylaws, the Purported Indemnification Agreement, or otherwise. Presumably he realizes that such a demand would be futile because his history of intentional actions

8

intended to cause, and actually causing, extreme harm to SVC would preclude any authorized body granting him indemnification.

Under the circumstances described above, it is not realistic to believe that the Purported Indemnification Agreement was properly authorized and executed on behalf of SVC. Its existence should be deemed a nullity. Equity would further demand that a document such as this, hidden from view of all interested parties until thirteen days before the scheduled hearing on confirmation of the Debtors' Plan, should be given no weight whatsoever, even if there were a scintilla of evidence supporting a possibility that it might someday be determined to be an enforceable agreement.

Because the only possible avenue to indemnification would be to prevail in the various proceedings that Mr. Finn is (or may become) involved in, after also demonstrating that all of his actions were taken "in good faith and in a manner [he] reasonably believed to be in the best interests of the corporation" (Cal. Corp. Code § 317(b)), it appears obvious such indemnification is remote in possibility as well as in time. Under such circumstances there can be no reason to allow such implausible disputed contingent claims.

### E. Reservation of Rights

The Objectors reserve the right to amend, modify or supplement this Objection and to file additional objections to the Claims, or to any other claims or proofs of claim (filed or not) which may be asserted by Claimant against the bankruptcy estate – especially where the Claimant later submits sufficient documentation and a consideration of such Claim on its merits can then be considered. Should the grounds of objection specified herein be overruled or withdrawn, wholly or in part, the Trustee reserves the right to object to the Claim on any other grounds which the Trustee may discover or deem appropriate at any time during the pendency of this case. Moreover, the Trustee expressly reserves the right to file any action or counterclaim, or to enforce any rights, remedies or other claims against said Claimants regarding the Claims referred to herein or any other claims (filed or not) which may be asserted by or against the bankruptcy estate.

## III.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1. Sustaining the Objection in its entirety;

2. Disallowing the Claims;

3. Preserving any and all rights of the Trustee, the Objectors, and the Debtors to pursue affirmative claims against the Claimant; and

4. Granting such other relief as is just and proper.

Dated: March 16, 2018 PACHULSKI STANG ZIEHL & JONES LLP

By *John D. Fiero*
John D. Fiero
*Attorneys for Equity Owners,
Ross Sullivan and Kelleen Sullivan*

DOCS_SF:96338.1 82168/001

# EXHIBIT A

(Redacted Seller's Closing Statement)

# FIRST AMERICAN TITLE COMPANY OF NAPA

1361 Main Street, P.O. Box 178, St. Helena, CA 94574

Phone: (707) 963-7151   Fax: (707) 963-1302

**Sellers Settlement Statement**
**Estimated**

Escrow No: 00301069 - 002 LC   Close Date: 01/10/2018   Proration Date: 01/10/2018   Disbursement Date: 01/10/2018

Seller(s): Timothy W. Hoffman, as Chapter 11 Trustee

Property: 1090 Galleron Lane
Saint Helena, CA 94574

APN: 030-070-010

| Description | Debit | Credit |
|---|---|---|
| **ESCROW CHARGES** | | |
| Escrow Fee to First American (split 50/50) | 1,437.50 | |
| Document Preparation to First American Title Company of Napa | 200.00 | |
| **RECORDING SERVICES:** | | |
| Recording Fees to First American Title Company of Napa | 200.00 | |
| Housing Tax (if appllicable) to First American Title Company of Napa | 225.00 | |
| County Transfer Tax to First American Title Company of Napa | 16,206.60 | |
| **ADDITIONAL CHARGES:** | | |
| Escrow Holdback Funds | 500,000.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| County Taxes from 01/01/2018 to 01/10/2018 based on the Semi-Annual amount of $12,032.76 | 601.64 | |
| ALLOCATION- Real Property | | [REDACTED] |
| ALLOCATION- Business Property | | |
| **PAYOFFS:** | | |
| Payoff to Winery Rehabilitation, LLC - Loan Nos: WRLLC7279 and WRLLC7303 | 12,231,572.68 | |
| Principal balance  9,322,367.14 | | |
| Interest thru 1/10/2018  926,371.84 | | |
| Fees and Costs  1,982,833.70 | | |
| Payoff to RE Management, LLC- SAF Grid Note | 5,566,832.52 | |
| Principal balance  4,474,376.35 | | |
| Interest thru 1/10/2018  427,456.17 | | |
| Fees and Costs  665,000.00 | | |
| Sub Totals | [REDACTED] | [REDACTED] |
| Proceeds Due Seller | [REDACTED] | |
| Totals | [REDACTED] | [REDACTED] |

REDACTED

Case: 17-10065   Doc# 310   Filed: 03/16/18   Entered: 03/16/18 17:44:41   Page 12 of 14

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) |
| CITY OF SAN FRANCISCO | ) |

I, Oliver Carpio, am employed in the city and county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 California Street, 15th Floor, San Francisco, California 94111-4500.

On March 16, 2018, I caused to be served the

- **OBJECTION TO PROOFS OF CLAIM FILED BY STEPHEN A. FINN (CLAIMS 13 AND 14)**

in the manner stated below:

| | |
|---|---|
| ☑ | TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF): Pursuant to controlling General Orders and LBR, the foregoing document was served by the court via NEF and hyperlink to the document. On **March 16, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below |
| ☐ | (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |
| ☐ | (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address. |

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 16, 2018, at San Francisco, California.

*/s/ Oliver Carpio*
Legal Assistant

1. **SERVED VIA ECF/NEF**

- Bernard D. Bollinger    bbollinger@buchalter.com, smartin@buchalter.com
- Jay D. Crom    jcrom@bachcrom.com
- Cecily A. Dumas    cecily.dumas@pillsburylaw.com
- Jacob M. Faircloth    jacob.faircloth@smolsonlaw.com
- Michael C. Fallon    mcfallon@fallonlaw.net, manders@fallonlaw.net
- Reno F.R. Fernandez    reno@macfern.com, ecf@macfern.com
- John D. Fiero    jfiero@pszjlaw.com, ocarpio@pszjlaw.com
- Geoffrey A. Heaton    gheaton@duanemorris.com, dmicros@duanemorris.com
- Timothy W. Hoffman    twh1761@yahoo.com, ca73@ecfcbis.com
- Lynette C. Kelly    lynette.c.kelly@usdoj.gov, ustpregion17.oa.ecf@usdoj.gov
- Chris D. Kuhner    c.kuhner@kornfieldlaw.com, g.michael@kornfieldlaw.com
- Austin P. Nagel    melissa@apnagellaw.com
- Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov
- Aron M. Oliner    roliner@duanemorris.com, dmicros@duanemorris.com
- Steven M. Olson    smo@smolsonlaw.com
- Valerie Bantner Peo    vbantnerpeo@buchalter.com
- Philip S. Warden    philip.warden@pillsburylaw.com, kathy.stout@pillsburylaw.com

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA