John D. Fiero (CA Bar No. 136557)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: jfiero@pszjlaw.com

*Attorneys for Equity Owners*
*Ross Sullivan and Kelleen Sullivan*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **In re**<br><br>**SVC,**<br><br>Debtor. | Case No.: 17-10065-RLE<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>**COMBINED PLAN AND DISCLOSURE STATEMENT PROPOSED BY SULLIVAN FAMILY (AUGUST 20, 2019)** |
| **In re**<br><br>**SVP**,<br><br>Debtor. | **DISCLOSURE STATEMENT HEARING**<br>Date:    September 24, 2019<br>Time:    1:30 p.m.<br>Place:   1300 Clay Street, Room 201<br>          Oakland, CA 94612<br>Judge:  The Hon. Roger L. Efremsky |

## PRELIMINARY STATEMENT

Ross Sullivan and Kelleen Sullivan (collectively, the "Plan Proponents") hereby offer this Combined Plan and Disclosure Statement ("Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code for the above-captioned chapter 11 debtors SVC and SVP (together, "Debtors" and, each individually, a "Debtor"). [1]

The Plan Proponents have asked the Bankruptcy Court to confirm the Plan, and to do so, if applicable, in accordance with the cramdown provisions of Section 1129(b) of the Bankruptcy Code.

---

[1] Capitalized terms in this Disclosure Statement which are not otherwise defined herein shall bear the definition and meaning ascribed to them in Article III of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## ARTICLE I

**A.**     **Plan and Case Background**

The Bankruptcy Cases are jointly administered, and are pending before the United States Bankruptcy Court of the Northern District of California, Oakland Division ("Bankruptcy Court"), before the Honorable Roger L. Efremsky. The Estates have not been substantively consolidated, and will not be substantively consolidated through the Plan.

This document contains information with respect to the Plan Proponents' proposed plan of reorganization for each Debtor. The Plan classifications and treatments are effectively identical, so in the interests of economy and brevity, they will be described just once. Pursuant to section 1125 of the Bankruptcy Code, this document is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan. The Plan Proponents have examined various alternatives and, based on information contained herein, and for the reasons set forth below, has concluded that the Plan provides the best recovery to creditors.

This document describes the Plan and contains information concerning, among other matters: (1) the history, business, property and liabilities of the Debtors; (2) significant events during the Bankruptcy Cases; (3) the proposed conclusion of the Estates pursuant to the terms of the Plan, and (4) the treatment and proposed distributions to holders of Allowed Claims against, and Allowed Interests in, the Debtors. The Plan Proponents request that you carefully review the contents of this document before making a decision to accept or reject the Plan. Particular attention should be paid to the provisions affecting or impairing your rights as a Creditor or Interest Holder.

Your vote on the Plan is important. For the Plan to be accepted by a class of Claims, the holders of two-thirds in dollar amount and more than one-half in number of Allowed Claims in such class who vote on the Plan must vote to accept the Plan.

Non-acceptance of the Plan may lead to a liquidation under chapter 7 of the Bankruptcy Code, or to the confirmation of another plan. To that end, the attached **Exhibit 1** contains an analysis of how much Creditors and Interest Holders would likely receive in a chapter 7 liquidation. These alternatives may not provide for a distribution of as much value to holders of Allowed Claims and Allowed Interests as the Plan will, or provide that distribution as quickly. Accordingly, the Plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Proponents urge you to accept the Plan by completing and returning the enclosed ballot by no later than **[INSERT DATE]** at 5:00 p.m. (Pacific Time).

    **B.**     <u>**Information Regarding the Plan**</u>

        1.     <u>Sources of Information.</u>

Factual information, including all financial information contained herein, has been provided by the Plan Proponents, the Debtors (together with any chapter 11 trustee), their Professionals, or has been obtained from the Debtors' records, except where otherwise specifically noted. None of the Plan Proponents' attorneys, accountants or other Professionals make any representation regarding this information. The Plan Proponents are unable to represent or warrant that the information contained herein is free from any inaccuracy. The Plan Proponents have, however, attempted to present the information accurately and fairly, and believes that the information is substantially accurate. The assumptions underlying the projections contained herein concerning the sources and amounts of payments to Creditors and Interest Holders represent the Plan Proponents' best estimates as to what they expect will happen. Because these are only assumptions about or predictions of future events, many of which are beyond the Plan Proponents' control, there can be no assurances that the assumptions will in fact materialize or that the projected realizations will in fact be met.

        2.     <u>Bankruptcy Court Approval.</u>

At the Confirmation hearing to be held on **[INSERT DATE]**, the Bankruptcy Court will be asked to approve this document as containing information of a kind and in sufficient detail adequate to enable a hypothetical, reasonable investor to make an informed judgment about the Plan.

    **C.**     <u>**Voting Instructions**</u>

        1.     <u>How to Vote.</u>

A ballot is enclosed herewith for Creditors and Interest Holders entitled to vote to accept or reject the Plan. To vote on the Plan, indicate on the enclosed ballot whether you accept or you reject the Plan, and sign your name and mail the ballot in the envelope provided for this purpose.

To be counted, ballots must be completed, signed and returned by United States Postal Service Mail so that they are received no later than **[INSERT DATE]** at 5:00 p.m. (Pacific Time) at the following address:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

SVC and SVP Plan Ballot Processing
c/o John D. Fiero
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

Do not send your ballot via facsimile or e-mail. If your ballot is not properly completed, signed and returned as described, it will not be counted. If your ballot is damaged or lost, you may request a replacement by sending a written request to the above address.

2. <u>Who May Vote.</u>

For each Debtor, the Plan divides the Claims of Creditors into three classes, and also includes one class of Interests. The classes are as follows: Class 1 (Secured Claims of Stephen A. Finn and Winery Rehabilitation, LLC), Class 2 (Trade Creditors), Class 3 (Claims of Non-Trade Unsecured Creditors), and Class 4 (Interest Holders).

Classes of Creditors and Interest Holders that are impaired by the Plan are entitled to vote, unless no compensation or payment is provided for such class, in which event such class is conclusively deemed to have rejected the Plan. Each holder of an Allowed Claim or Allowed Interest in an impaired class that will receive distributions under the Plan on account of such Allowed Claims or Allowed Interest may vote to accept or reject the Plan. A class is impaired if the legal, equitable or contractual rights attaching to the Claims or Interests of the class are modified, other than by curing defaults and reinstating maturities.

Classes 1, 2, 3, and 4 are impaired under the Plan, and are entitled to vote on the Plan.

In determining acceptances of the Plan, the vote of a Creditor will only be counted if submitted by a Creditor whose Claim is an Allowed Claim. Generally speaking, a Creditor holds an Allowed Claim if such Claim was duly scheduled by a Debtor as other than disputed, contingent or unliquidated, or the Creditor has timely filed with the Bankruptcy Court a proof of Claim which has not been objected to or disallowed prior to computation of the votes on the Plan. The Ballot form that you received does not constitute a proof of Claim.

D. **<u>Confirmation</u>**

"Confirmation" is the technical phrase for the Bankruptcy Court's approval of a plan of reorganization. At the Confirmation Hearing, in order to confirm the Plan, the Plan Proponents must

demonstrate that he has met the requirements of section 1129 of the Bankruptcy Code. If the Bankruptcy Court determines that all of the requirements of section 1129 have been satisfied, the Bankruptcy Court will enter an order confirming the Plan. The Plan Proponents believe that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code for confirmation of the Plan.

Voting is tabulated by class. As discussed above, a class of Creditors has accepted a plan of reorganization if the plan has been accepted by two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Creditors holding Allowed Claims in that class who actually vote to accept or reject such plan. A class of Interests has accepted a plan of reorganization if the plan has been accepted by Interest Holders holding at least two-thirds (2/3) in amount of Allowed Interests in that class who actually vote to accept or reject such plan.

Even if a class of Creditors or Interests votes against a plan of reorganization, the Plan may nevertheless be confirmed by the Bankruptcy Court, notwithstanding the rejection of the Plan by such class, so long as certain statutory requirements are met by the Plan. This procedure is called a "cram down." The Plan Proponents will request that the Bankruptcy Court confirm the Plan in accordance with the cramdown provisions of section 1129(b) of the Bankruptcy Code if any class rejects the Plan.

The Bankruptcy Court has set **[INSERT DATE] at __:__ _.m. (Pacific Time)** as the hearing date to determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for confirmation of the Plan have been satisfied. The hearing on confirmation will be held at the United States Bankruptcy Court, 1300 Clay Street, Courtroom 201, Oakland, California 94612. This hearing may be continued from time to time and day to day without further notice. If the Bankruptcy Court confirms the Plan, it will enter the Order of Confirmation. Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on the parties set forth below on or before the date set forth in the Notice of Confirmation Hearing sent to you with this Disclosure Statement and Plan. Objections must be served upon:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Counsel to the Plan Proponents

John D. Fiero
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

and

Office of the United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102

**E.     Disclaimers**

THIS DOCUMENT CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.  THIS DOCUMENT IS INTENDED TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTORS AND THE CONDITION OF THE DEBTORS' BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. SEE 11 U.S.C. § 1125(a).

THE CONTENTS OF THIS DOCUMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE.  EACH CREDITOR OR INTEREST HOLDER SHOULD CONSULT HIS OR HER OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX AND OTHER MATTERS CONCERNING HIS OR HER CLAIM OR INTEREST.

## ARTICLE II

**A.     History of the Debtors, Their Operations, and the Bankruptcy Cases**

The Debtors operated a Napa Valley winery known as Sullivan Vineyards.  SVP, formerly known as Sullivan Vineyards Partnership, is a California general partnership formed in 1987 to own the vineyard property, commonly known as 1090 Galleron Road, Rutherford, California ("Winery Property").  SVC, formerly known as Sullivan Vineyards Corporation, is a California corporation also formed in 1987 to own and operate the winery on the Winery Property.  Although operated as a

single business, the Debtors used a parallel partnership and corporation structure, with SVP owning the land and SVC owning the winery business. Notwithstanding the convention of separating the winery into two entities, the winery was operated as a single business operation known as Sullivan Vineyards.

Sullivan Vineyards was a family business started by Joanna Sullivan and James O'Neil Sullivan, husband and wife, together with their five children. In or about 2011, an individual named Stephen A. Finn ("Finn") married Sullivan daughter Kelleen Sullivan ("Kelleen") and acquired an ownership interest in the Debtors. Through an entity called Winery Rehabilitation LLC ("WR"), Finn later acquired from Silicon Valley Bank a first deed of trust on the Winery Property, together with liens on related personal property, securing an indebtedness in excess of $10 million. Finn also obtained a junior lien on the Debtors' assets, referred to as the "Grid Note," purportedly securing an indebtedness in excess of $4.6 million.

Kelleen and Finn's marriage ended in a divorce proceeding and related litigation across two states, whereby Kelleen was awarded Finn's interest in the Debtors' business in lieu of other consideration. WR began foreclosure proceedings. The Sullivans filed this bankruptcy case to deal with the "debt" to Finn, and pay him off to the extent such debt was enforceable. Eventually, a chapter 11 trustee (Timothy Hoffman) was appointed.

The Sullivan Family owns 100% of SVP and the vast majority of the equity in the SVC.

1. Procedural Background

On February 1 and 2, 2017, SVC and SVP, respectively, filed voluntary petitions for relief in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division under the provisions of chapter 11 of the Bankruptcy Code, Case Nos. 17-10065 RLE and 17-10067 RLE. The Bankruptcy Cases, which are jointly administered but not substantively consolidated, are pending before the Honorable Roger L. Efremsky in the Oakland Division.

At a hearing on August 21, 2017, the Court ordered the appointment of a chapter 11 trustee. Thereafter, the Office of the United States Trustee selected the Trustee to be chapter 11 trustee of both Estates. On August 29, 2017, the Court entered an order approving the Trustee's appointment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

On November 10, 2017, the Trustee filed his *Motion to Sell Real and Personal Property Assets Free and Clear of Liens and Encumbrances* [Docket No. 234] ("Sale Motion"), by which the Trustee sold to Vite USA, Inc. substantially all of the Debtors' real and personal property assets related to the winery. The Bankruptcy Court granted the Sale Motion at a hearing on December 11, 2017. On January 10, 2018, the sale closed. In connection with the closing of the sale, Finn and WR (together, the "Finn Creditors") were paid total consideration of $17,798,405.20, which sum included $2,647,833.70 of attorneys' fees and other costs, in addition to principal and interest.

Recently, Mr. Hoffman announced his intention to resign from the SVP case. A new trustee is expected to be appointed shortly.

### 2. Notable Claims against the Debtors

Three notable categories of non-trade debt claims were filed or scheduled in the Bankruptcy Cases, summarized below.

Finn Claims. Following the Court-approved sale of the winery, the Finn Creditors amended their proofs of claim against the Debtors to assert claims for indemnification of attorneys' fees and expenses in the amounts of $516,097.44 (Finn) and $247,970.82 (WR), together with other unliquidated amounts that have been or may be incurred in the District Court Action (defined below) or in these Bankruptcy Cases (together, the "Finn Claims"). The Finn Claims, as amended, are based upon, inter alia, indemnification provisions in SVC's bylaws, an indemnification agreement between SVC and Finn, and the terms of the Finn Creditors' loan documents. The Finn Creditors have indicated an intention to further amend their claims to include additional accruing attorneys' fees. All such claims are disputed by the Plan Proponents, and treated as Disputed Claims under this Plan.

Former Employee Claims. Five former SVC employees filed proofs of claim against SVC totaling $9,055,560: Angelica de Vere ($3,822,060), Theresa Sullivan ($1,717,000), Sonyia Grabski ($2,019,500), Elizabeth Matulich ($1,012,000), and Trinity Scott ($485,000) (collectively, the "Former Employees" or "Former Employee Claims" as applicable). The Former Employee Claims were based upon a pending lawsuit that the Former Employees filed prepetition against Ross and Kelleen (together, the "Sullivans") and SVC in Napa County Superior Court, defined below as the

"Napa County Action." The Former Employee Claims were withdrawn with prejudice as part of the Court-approved settlement discussed below.

SVP Intercompany Pre-Petition Receivable. SVC's bankruptcy schedules listed SVP as holding an undisputed, liquidated and non-contingent general unsecured claim against SVC in the amount of $2,130,720 ("SVP Pre-Petition Intercompany Receivable"). After review and consultation with the Trustee's Court-approved accountant, Mr. Hoffman determined that $1,572,160 of this scheduled claim was a liability of SVC that had been previously paid through escrow in connection with the sale of the winery. Mr. Hoffman also determined the appropriate amount of the SVP Pre-Petition Intercompany Receivable to be $508,560. After careful review, the Plan Proponents determined that this amount excluded unpaid rent due to SVP from SVC for January 2017 in the amount of $30,000.00. As a result, under the Plan, the amount of the SVP Pre-Petition Intercompany Receivable shall be revised to $538,560, which amount shall be deemed Allowed for all purposes under this Plan, and no longer subject to objection or challenge of any type after Confirmation. The balance of the SVP Pre-Petition Intercompany Receivable, in the amount of $1,622,160, shall be deemed disallowed with prejudice.

### 3. Litigations Affecting the Estates

During the Bankruptcy Cases, there have been three pending lawsuits involving the Estates or otherwise affecting the Estates. Only one of these lawsuits, the District Court Action (as defined below), remains pending.

Adversary Proceeding. The Debtors filed the first action, *SVC v. Finn,* A.P. No. 17-01023 ("Adversary Proceeding") in the Bankruptcy Court against Finn and Angelica de Vere ("de Vere"). The Adversary Proceeding asserted claims against Finn and de Vere for alleged breaches of fiduciary duty while Finn was a partner of SVP and a controlling shareholder of SVC, and de Vere was an officer of SVC. In January of 2019, the Adversary Proceeding was reassigned to the United States District Court for the Northern District of California, San Francisco Division ("District Court") for consideration together with the District Court Action (discussed below). In June of 2019, in accordance with the terms of the Court-approved settlement discussed below, the parties stipulated to dismiss Adversary Proceeding with prejudice.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    District Court Action.  The Sullivans commenced the second action, *Sullivan v. Finn*, Case

2   No. 3:17-cv-05799-WHO ("District Court Action"), in the District Court against Finn and Trust

3   Company of America, Inc., a company controlled by Finn.  The Estates are not parties to the District

4   Court Action.  The District Court Action asserts claims against Finn for breach of fiduciary duty

5   related to his role as a partner of SVP and controlling shareholder of SVC.  The District Court

6   Action remains pending.  However, as mentioned, the Finn Claims seek indemnification of

7   attorneys' fees and costs incurred in connection with the District Court Action (among other things).

8   Thus, the outcome of the District Court Action may affect the size of the Finn Claims.

9    Napa County Action.  The Former Employees filed the third action, *De Vere, et al. v.

10  Sullivan Vineyards Corp., et al.*, Case No. 26-67976 ("Napa County Action"), against the Sullivans

11  and SVC in Napa County Superior Court.  The Former Employees' complaint asserted a variety of

12  claims, including labor code violations, wrongful termination and breach of contract.  SVC, in turn,

13  filed a cross-complaint against de Vere.  The Napa County Action was dismissed as part of the

14  Court-approved settlement discussed below.

15                    4.    Court-Approved Settlement with Finn Creditors and Former Employees

16          Following the sale of the Debtors' assets, Timothy Hoffman devoted substantial time and

17  effort to reaching a global settlement involving all principal parties in these cases, *i.e.*, the Finn

18  Creditors, the Former Employees and the Sullivans, including a resolution of any non-derivative

19  claims the Sullivans assert against the Finn Parties.  Unfortunately, a global resolution was not

20  possible.  However, the Trustee did negotiate a settlement involving the Finn Creditors and the

21  Former Employees.  The Sullivan Family was not a party to the settlement, and the Sullivan

22  Family's non-derivative claims, *i.e.*, those claims, if any, that the Sullivan Family members hold

23  individually against the Finn Creditors, were not compromised or resolved.

24          The terms of the settlement agreement, entered into among the Trustee (on behalf of the

25  Estates), the Finn Parties and the Former Employees, are as follows:

26      •    The Former Employee Claims were withdrawn with prejudice; the Napa County

27           Action (including SVC's cross-complaint against de Vere) was dismissed with

28           prejudice, and certain claims against members of the Sullivan Family were dismissed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    without prejudice.  The Trustee and the Former Employees executed a release of any

2    and all claims against each other, including a waiver of § 1542 of the California Civil

3    Code, with each side bearing its own attorneys' fees and costs.

4    •    The Finn Claims were subordinated to all trade debt claims reflected in the Debtors'

5    respective schedules, together with those trade debt claims reflected in proofs of

6    claim currently on file with the Bankruptcy Court (to the extent such Claims are

7    Allowed).  Finn agreed to undertake full responsibility to completely resolve the

8    Former Employee Claims without increasing the Finn Claims, *i.e.*, Finn agreed he

9    would not seek indemnification for sums paid to resolve the Former Employee

10    Claims, or expenses incurred in resolving these claims.  However, the Finn Claims

11    were not subordinated to the SVP Pre-Petition Intercompany Receivable, and all

12    rights concerning the SVP Pre-Petition Intercompany Receivable were reserved at

13    that time.  Moreover, the Finn Claims were not liquidated by the settlement

14    agreement, and all rights concerning the Finn Claims (including the objections to

15    such claims filed by the Sullivans) were reserved.

16    •    The Trustee, on behalf of the Estates, agreed to dismiss the Adversary Proceeding

17    with prejudice.  The Trustee further agreed to execute a release of any and all claims

18    against the Finn Creditors and Former Employees, including a waiver of § 1542 of

19    the California Civil Code.  However, as mentioned, any claims held directly and

20    exclusively by the Sullivans as individuals were not released as part of the

21    settlement.

22    On or about April 3, 2019, the Trustee filed an application [Docket No. 422] ("Compromise

23    Application") for approval of the settlement.  On May 20, 2019, following a hearing on the

24    Compromise Application, the Bankruptcy Court entered an order [Docket No. 435] ("Compromise

25    Order") approving the Compromise Application and settlement.  The Compromise Order is now a

26    Final Order.

27    //

28    //

5.      Assets and Liabilities of the Debtors

The Estates' assets consist primarily of Estate Retained Claims and cash proceeds from the sale of the winery. The primary Estate Retained Claim is SVC's claim against the law firm of Buchalter LLP ("Buchalter") based upon professional negligence and breach of fiduciary duty. Buchalter first provided legal services to Finn, as one of his divorce attorneys. Later (but still prior to bankruptcy), Buchalter provided legal services to SVC and SVP. Buchalter later served as counsel of record to the Former Employees in connection with the Bankruptcy Cases. After Buchalter's disqualification in the Napa Superior Court, the Trustee moved to disqualify Buchalter in the bankruptcy case as counsel of record to the Former Employees based upon Buchalter's prior representation of the Debtors. Buchalter did not oppose the motion, and on June 26, 2018, the Court entered an order [Docket No. 366] disqualifying Buchalter as counsel to the Former Employees.

With respect to the Estates' cash, the Plan establishes an allocation of the remaining sale proceeds between the Estates as follows: SVC's estate is entitled to approximately $_____, and SVP's estate is entitled to approximately $_____.[2] These amounts, net of all Allowed Administrative Claims to be paid, constitute Available Cash under the Plan, and will be administered by the Reorganized Debtors in accordance with the Plan.

**ARTICLE III**

**DEFINITIONS**

As used in the Plan, the following terms shall have the meanings specified below:

"Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Estates incurred on or after the Petition Dates and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtors under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or

---

[2]  The updated and precise amounts in this sentence will be inserted when the Disclosure Statement has been approved, with input from each chapter 11 trustee herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means, with the exception of any Administrative Claims of Professionals, that date which is thirty (30) days following the date of the notice of the Confirmation Date.

"Allowed" or "Allowed Amount" means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the applicable Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

"Allowed Claim" means a Claim (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court before the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtors' Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied. The Finn Claims are not Allowed Claims.

"Allowed Interest" means the Allowed Interest of an Interest Holder.

"Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

"Available Cash" means any and all cash and cash equivalents owned or held by the Reorganized Debtors available for payment of Allowed Claims and Interests after payment of

DOCS_SF:1017413.3 82168/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for all expenses incurred and anticipated to be incurred by the Reorganized Debtors after entry of the Order of Confirmation.

"Bankruptcy Cases" or "Cases" means the bankruptcy cases commenced by the Debtors' filing with the Bankruptcy Court of voluntary petitions under Chapter 11 of the Bankruptcy Code, Case Nos. 17-10065 RLE and 17-10067 RLE.

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, Oakland Division or such other court exercising jurisdiction over the Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Cases.

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, June 1, 2017, and (b) with respect to claims held by governmental units, July 30, 2017, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date that is two years after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Reorganized Debtors.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

//

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    "Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of

2    the Plan as required by Section 1128(a) of the Bankruptcy Code.

3    "Creditor" means any entity holding a Claim against either of the Debtors.

4    "Debtors" means SVC, a California corporation, and SVP, a California limited partnership.

5    Each individually is a "Debtor."

6    "Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not

7    been filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated,

8    or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the

9    Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed

10   of by a Final Order.  The Finn Claims are Disputed Claims.

11   "Distribution" means, as the context requires:  (a) the cash to be provided under the Plan to

12   the holders of Allowed Claims and Allowed Interests; or (b) the payment, transfer, delivery or

13   deposit of cash to Creditors and Interest Holders pursuant to the Plan.

14   "Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

15   "Effective Date" means the fifteenth (15th) day following the Confirmation Date so long as

16   the Order of Confirmation is not subject to a Court-ordered stay.

17   "Estate Retained Claims" means all litigation claims held by the Estates, including any

18   claims arising out of Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 546, 547, 548,

19   and 549, together with any claims sounding in contract, tort, equity or statute against any party,

20   including any and all claims of either Debtor against Buchalter LLP and its constituent attorneys.

21   "Estates" means the bankruptcy estates created by the commencement of the Bankruptcy

22   Cases and comprised of the property described in Section 541 of the Bankruptcy Code.

23   "Final Order" means an order entered on the docket by the Bankruptcy Court as to which no

24   timely filed notice of appeal is pending within fourteen (14) days entry of such order; or, if such

25   appeal is pending, for which no stay pending appeal has been issued.

26   "Interest" means units or rights to units or any membership interest or other ownership

27   interest held by any Person in either Debtor.

28   "Interest Holder" means the holder of an Interest in either Debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Legal Rate" means eighty-four hundredths percent (.84%) per annum, the interest rate allowed on judgments entered in federal courts pursuant to 28 U.S.C. § 1961(a), which is the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the Petition Date.

"Local Rules" means the Local Rules of the United States Bankruptcy Court for the Northern District of California, as amended, as applicable to the Bankruptcy Cases.

"Order of Confirmation" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

"Person" shall have the meaning ascribed to it in the Bankruptcy Code.

"Petition Date" means February 1, 2017 for SVC and February 2, 2017 for SVP, the dates on which each Debtor filed its voluntary petition under chapter 11, thereby initiating the Bankruptcy Cases (and on which date relief was ordered in the Bankruptcy Cases). The dates together are the "Petition Dates."

"Plan Disbursement Account" shall mean the account containing Available Cash, which will be used for payment of Allowed Claims and Interests as set forth in the Plan.

"Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"Professionals" means those professional persons or firms retained by any bankruptcy trustee or the Debtors pursuant to Section 330 of the Bankruptcy Code, and such other professionals whose employment prior to Confirmation is approved by order of the Bankruptcy Court, if any.

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim or Allowed Interest, the proportion that such Allowed Claim or Allowed Interest bears to the aggregate of all outstanding Allowed Claims or Allowed Interests in the same class.

"Rejection Claim" means an Allowed Unsecured Claim arising from the rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"Rejection Claims Bar Date" means the earlier of (a) thirty (30) days following the date of the notice of the Confirmation Date, or (b) thirty (30) days after the rejection date with respect to an

executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Reorganized Debtors" means the Debtors as reorganized under the Plan following Confirmation. Each individually is a "Reorganized Debtor."

"Reorganized Debtors Payment Cap" means $175,000 for SVC and $175,000 for SVP, taken from Available Cash, and to be made available as necessary upon Confirmation to the Reorganized Debtors for payment of expenses of post-Confirmation administration, including indemnity payments, professional fees, prosecution of Estate Retained Claims, objections to Claims, and other necessary post-Confirmation expenses.

"Schedules" means the Debtors' respective schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at any time prior to Distribution.

"Secured Claim" means a Claim secured by a lien, security interest, or other charge against or interest in property in which either Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in either Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any Allowed Claim against either Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

Any term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE IV

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Allowed Interests in the Debtors are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class. Classes 1, 2, 3 and 4 are impaired under the Plan, and are entitled to vote on the Plan.

4.1     Class 1 (Secured Claims of Finn and Winery Rehabilitation). Class 1 consists of all claims of the Finn Creditors to the extent such claims constitute perfected, secured and Allowed Claims.

4.2     Class 2 (Trade Creditors). Class 2 consists of the Allowed Unsecured Claims of any creditors other than: (a) the Finn Creditors and (b) the SVP Intercompany Pre-Petition Receivable.

4.3     Class 3 (Unsecured Claims of Non-Trade Unsecured Creditors). Class 3 consists of all Allowed Claims of non-trade unsecured Creditors. In particular, Class 3 is comprised of (a) the unsecured components of the Finn Claims; and (b) the SVP Intercompany Pre-Petition Receivable.

4.4     Class 4 (Interests in the Debtors). Class 4 consists of all Allowed Interests in the Debtors, specifically including all equity interests in SVC and partnership interests in SVP.

## ARTICLE V

## CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

All Classes are impaired under the Plan.

## ARTICLE VI

## TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims shall be treated as follows:

6.1     Allowed Administrative Claims. Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Administrative Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, and (b) the date when it becomes an Allowed Administrative Claim. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than Administrative Claims of any chapter 11 trustee or Professionals, must be filed on or before the Administrative Claims Bar Date or the holder of such Administrative Claim shall be forever barred from asserting such Claim or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

receiving any payment on account of such Claim. Allowance of professional fees and costs claimed by any chapter 11 trustee or Professionals accruing before the Confirmation Date shall remain subject to Bankruptcy Court approval pursuant to Section 330 of the Bankruptcy Code.

6.2     Tax Claims. The holders of Allowed Claims entitled to priority under 11 U.S.C. § 507(a)(8) ("Allowed Tax Claims") will receive equal deferred cash payments, payable quarterly, commencing with an initial payment six months from the Effective Date, over a period not exceeding five (5) years after the date of assessment of each such claim, or the applicable Petition Date, whichever is sooner; provided however, that Allowed Tax Claims shall be paid in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. The unpaid portion of any Allowed Tax Claim shall bear interest at the statutory rate. The Reorganized Debtors reserve the right to pay any Allowed Tax Claim in full at any time after the Effective Date.

## ARTICLE VII

### TREATMENT OF CLASSES OF CLAIMS AND
### INTERESTS THAT ARE IMPAIRED UNDER THE PLAN

7.1     Class 1 (Secured Claims of Finn and Winery Rehabilitation). Except to the extent that the holder of a particular Class 1 Claim agrees to a different treatment of such Claim, each holder of an Allowed Class 1 Claim shall be entitled to receive up to the full amount of its Allowed Secured Claim against each Debtor to the extent of Available Cash held by each Reorganized Debtor at the time of allowance. Until such payment is made, Class 1 Creditors holding Allowed Claims shall retain their liens, if any, on the Available Cash. If the Allowed Secured Claims of Class 1 are not paid in full from the Available Cash, any deficiency portion will be treated as a Class 3 claim. The Allowed Claims of a Class 1 Creditor shall be deemed fully perfected upon the Effective Date to the same extent as such liens existed prepetition, and Class 1 Creditors shall not be required to file financing statements or other documents to perfect and maintain the perfection of its security interests in the Available Cash, if any.

7.2     Class 2 (Trade Creditors). Each holder of an Allowed Class 2 Claim shall be paid from Available Cash up to the full amount their Allowed Claims without interest, on the terms and

Case: 17-10065     Doc# 462     Filed: 08/20/19     Entered: 08/20/19 15:06:48     Page 19 of 32

conditions set forth in Article VI below. Such payment shall be senior and prior to the satisfaction of any Class 1 or Class 3 Claim.

       7.3     <u>Class 3 (Unsecured Claims of Non-Trade Unsecured Creditors)</u>.  If Available Cash remains, each holder of an Allowed Class 3 Claim shall be paid Pro Rata from Available Cash up to the full amount their Allowed Claims without interest, on the terms and conditions set forth in Article VI below. Such payment shall be junior and subordinate to satisfaction of any Class 1 or 2 Claim.

       7.4     <u>Class 4 (Membership Interests in the Debtor)</u>.  The existing membership interests in the Debtors shall be preserved without alteration, subject to the terms of this Plan.

## <u>ARTICLE VIII</u>

## <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

       8.1     <u>Post-Confirmation Operations and Management of the Estate</u>.  From and after the Effective Date, each Reorganized Debtor shall manage the assets of its Estate and shall have all of the authority to act on behalf of such Estate and corresponding Debtor.  Such management shall include, without limitation, (a) fulfilling the duties and obligations of the Estates under the Plan; (b) prosecuting the Estate Retained Claims utilizing business judgment, (c) abandoning any assets deemed to be burdensome or of inconsequential value to the Estates; (d) succeeding to all chapter 11 trustees' attorney/client privilege and work product protection in all respects; (e) taking possession of all documents (electronic or otherwise) relating to the chapter 11 administration of the Estates, including those subject to the attorney-client privilege; and (f) otherwise fully administering the Estates as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code. Ross Sullivan shall serve as the President of SVC and serve as the chairman of its board of directors. Kelleen and Sean Sullivan shall serve as the other two board members of SVC.  Ross Sullivan shall also be the managing general partner of SVP.

       8.2     <u>Professional Compensation</u>.  The Reorganized Debtors shall be entitled to retain and compensate from Available Cash such professionals and other Persons as they deem fit.  From and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

after the Effective Date, the Reorganized Debtors and all professionals employed by them may be paid 100% of their periodic invoices for post-confirmation services without prior approval of the Court, subject to the Reorganized Debtors Payment Cap.

8.3     Indemnity.  The Reorganized Debtors may indemnify their officers, directors, and partners (as applicable), and any professionals the Reorganized Debtors may retain from any and all claims, demands, lawsuits, charges, or expenses arising out of or relating to the performance of the Reorganized Debtors and any professionals under the Plan to the fullest extent allowed by the laws of the State of California up to the then available remaining amount of the Reorganized Debtors Payment Cap.  For avoidance of doubt, such indemnity shall not extend to (i) any claims, demands, lawsuits, charges, or expenses arising out of or related to the District Court Action, or (ii) any claims based upon intentional or grossly negligent conduct.

8.4     Cap Increase.  The Reorganized Debtors Payment Cap may only be increased by Court order following 10 days' notice by email to parties requesting post- Effective Date notice in the Cases with an opportunity to object.  If no objection is received during the 10-day notice period, the Reorganized Debtors may apply *ex parte* to the Court for an order authorizing the proposed increase to the Reorganized Debtors Payment Cap.  If an objection is received during the 10-day notice period, the Reorganized Debtors must set the matter for hearing before the Bankruptcy Court on at least 7 days' notice to the objecting party.

8.5     Replacement of Trustee.  Upon the Effective Date, any trustee for the Estates shall be immediately relieved of all responsibilities pursuant to the order authorizing the trustee's appointment.

8.6     Delivery of Assets and Records to Reorganized Debtors.  Promptly upon the Effective Date, any trustee for the Estates shall deliver to the Reorganized Debtors all of the books and records of the Debtors, including but not limited to all materials gathered or used during the pendency of the Bankruptcy Cases, whether maintained by any trustee, trustee's counsel, or any other Professionals, specifically including but not limited to privileged communications with Professionals or any work product of any chapter 11 trustee or his Professionals, pursuant to Bankruptcy Code section 1141(b).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 17-10065    Doc# 462    Filed: 08/20/19    Entered: 08/20/19 15:06:48    Page 21 of 32

8.7     Plan Disbursement Account.  The Reorganized Debtors shall hold any funds transmitted to them in a segregated Plan Disbursement Account for the benefit of holders of Allowed Claims.  The Plan Disbursement Account containing the Available Cash shall be maintained by Pachulski Stang Ziehl & Jones in client trust accounts established for that purpose.  Consistent with the terms of the Plan, the Available Cash therein – net of all Administrative Expenses to be paid under the Plan, and net of all expenses of the Reorganized Debtors (subject to the Reorganized Debtors Payment Cap) – will be made available for the satisfaction of Allowed Class 1, 2, 3, and 4 Claims as dictated by the Plan.  Under no circumstances shall the Reorganized Debtors use the Available Cash for any other purpose, unless the Reorganized Debtors Payment Cap is increased as provided herein.

8.8     Timing of Distributions.  The Reorganized Debtors shall make a first Distribution to holders of Allowed Claims as soon as practicable after the Effective Date.  Thereafter, the Reorganized Debtors shall make subsequent Distributions in their discretion and business judgment.  Distributions may be made without further order of Court.  The Reorganized Debtors shall provide an accounting of Distributions within 30 days of written request by any Creditor holding an Allowed Claim.

8.9     Distribution Addresses.  Unless a Creditor has provided the Reorganized Debtors with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court.  If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules.

8.10     Withholding Taxes.  Pursuant to Section 346(h) of the Bankruptcy Code, the Reorganized Debtors shall be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate.  The Reorganized Debtors shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Reorganized Debtors for the purpose of fulfilling his or her obligations hereunder.  The Reorganized Debtors shall comply with all reporting obligations imposed on them by any governmental unit with respect to withholding and related taxes.

//

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8.11    De Minimis Distributions.  Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

8.12    Unclaimed Distributions.  Any cash Distributions that remain unclaimed or un-negotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Estates and be considered Available Cash.

8.13    Prosecution of the Estate Retained Claims.  Any proceeds of the Estate Retained Claims shall be paid into the Plan Disbursement Account.  The Reorganized Debtors shall have exclusive standing to investigate, prosecute, and, if appropriate, compromise any Estate Retained Claim against any Persons or entities.  Any compromise of an Estate Retained Claim may be consummated without notice, hearing, or order of the Court, provided that the Reorganized Debtors shall provide 10 days' notice of the terms of any compromise greater than $250,000 by email to all parties requesting post-Effective Date notice in the Cases with an opportunity to object.  If no objection is received during the 10-day notice period, the Reorganized Debtors may consummate the compromise.  If, however, a timely objection is received, then the Reorganized Debtors must set the matter for hearing on at least 10 days' notice to the objecting party, in which case consummation of the compromise will be subject to entry of an order of the Bankruptcy Court approving the compromise.  The Court will retain jurisdiction to approve any compromise.

The Reorganized Debtors reserve the right to object to any filed or scheduled Claim, unless such Claim is Allowed by the Plan.  For avoidance of doubt, the Finn Claims are not Allowed Claims under the Plan; the Finn Claims are Disputed Claims.  Any and all Estate Retained Claims pending as of the Effective Date shall be deemed revested in the Reorganized Debtors, pursuant to Bankruptcy Code section 1141(b).  Any and all objections to Claims and other contested matters by or against the Estates pending as of the Effective Date shall likewise be deemed revested in the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Reorganized Debtors, along with possession of the documents (electronic or otherwise) relating to such objections or contested matters.

8.14    Vesting of Property of the Estates.  On the Effective Date, the Estates shall continue in their separate existences until entry of Final Decrees in the Cases, and all property of the Estates shall vest in the Reorganized Debtors pursuant to Bankruptcy Code section 1141(b), free and clear of any and all liens (except for Allowed Secured Claims), encumbrances, or Claims of Creditors. Revesting does not modify the nature of any contracts assumed by the Debtors or the any chapter 11 trustee.

8.15    Further Orders.  Upon motion by the Reorganized Debtors on not less than ten (10) days' notice to parties requesting post- Effective Date notice, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

8.16    Insurance Policies.  To the extent any insurance policies exist in which either the Debtors and/or their personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtors, any chapter 11 trustee, the Reorganized Debtors, and/or the Debtors' current or former management or other personnel that may be covered by such policies.

8.17    Post-Confirmation Operating Expenses.  From the Effective Date, the Reorganized Debtors may incur and pay operating expenses in the ordinary course of business, subject to the Reorganized Debtors' Payment Cap.

8.18    No Substantive Consolidation.  This Plan does not effectuate substantive consolidation of the Estates.  The Reorganized Debtors shall take no action that shall consolidate the Reorganized Debtors' assets or liabilities prior to the issuance of a Final Decree.

8.19    Post-Confirmation Reports, Fees, and Final Decree.

8.19.1    U.S. Trustee Fees.  Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtors shall pay to the United States Trustee the quarterly fee for such quarter until the cases are converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

//

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8.19.2    <u>Post-Confirmation Reports</u>.  Not later than thirty (30) days after the end of the calendar quarter which ends after the Effective Date, the Reorganized Debtors shall file and serve upon the United States Trustee separate quarterly post-Confirmation status reports in substantially the form provided by the United States Trustee.  Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

8.19.3    <u>Final Decree</u>.  Once the Plan is substantially consummated, the Reorganized Debtors shall file an application for a Final Decree in the Cases as provided in the Local Rules.

8.20    <u>Bankruptcy Rule 2004</u>.  In the course of any investigation, the Reorganized Debtors shall have the right post-Confirmation to apply for orders of examination under Bankruptcy Rule 2004, to be enforced pursuant to Bankruptcy Rule 2005.  The Bankruptcy Court (and its clerk's office) shall have the power to approve applications for orders of examination under Bankruptcy Rule 2004, together with any enforcement orders necessary, including but not limited to pursuant to Bankruptcy Rule 2005.  Any expenses the Reorganized Debtors incur in connection with Rule 2004 examinations, including the Reorganized Debtors' attorneys' fees and costs related to any Rule 2004 examination, are subject to the Reorganized Debtors Payment Cap.

# <u>ARTICLE IX</u>

# <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

9.1    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  Any executory contracts of the Debtors which have not specifically been assumed shall be deemed rejected on the Effective Date.

9.2    <u>Effect of Assumption of Executory Contracts and Unexpired Leases</u>.  Any executory contracts assumed prior to Confirmation shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

9.3    <u>Adding and Removing Executory Contracts and Unexpired Leases</u>.  The provisions of this Article IX may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

9.4    Defaults.  Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Reorganized Debtors shall, on or before the Effective Date, (a) cure, or provide adequate assurance that they will promptly cure, any such default, (b) compensate, or provide adequate assurance that they will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default, and (c) provide adequate assurance of future performance under such contract or lease.

9.5    Rejection Claims.  Rejection Claims shall be classified as Class 2 Claims.  The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtors, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE X
## PROOFS OF CLAIM; OBJECTIONS

10.1    Time for Filing Proofs of Claim.  Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed by the Order of Confirmation.

10.2    Evidence of Claim.  For purposes of any Distribution under the Plan, the Reorganized Debtors shall have no obligation to recognize any transfer of Claims unless the transferee of such Claim shall pay a fee of $250.00 to the Reorganized Debtors.  The Reorganized Debtors shall be entitled to recognize and deal for all purposes with only those Creditors of record with the Bankruptcy Court who have tendered such fee prior to the first Distribution Date.

10.3    Amendments to Claims.  Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 17-10065    Doc# 462    Filed: 08/20/19    Entered: 08/20/19 15:06:48    Page 26 of 32

Claims Bar Date, proofs of Claim may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

10.4    Claim Objections.  An objection to a Claim shall be filed no later than the Claims Objection Date.  The Reorganized Debtors shall have the exclusive responsibility to review Claims filed against the Debtors, to file objections as appropriate, and to resolve Disputed Claims.

10.5    Distributions.  Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions hereunder, payments and Distributions in respect of any Claim that at such date or time is a Disputed Claim, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the terms of the Plan.

## ARTICLE XI

## PRESERVATION OF RETAINED CLAIMS

11.1    Confirmation of the Plan effects no settlement, compromise, waiver or release of any Estate Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides.  The failure of the Plan to refer to any particular Estate Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Estate Retained Claim.  All Estate Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date.  The Reorganized Debtors further reserve the right to object to any filed or scheduled Claim. The entry of the Order of Confirmation shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Reorganized Debtors upon any Estate Retained Claims.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1    The Bankruptcy Court shall retain exclusive jurisdiction of the Cases (a) to enforce the provisions, purposes, and intent of the Plan, (b) to hear and determine any adversary proceedings or contested matters filed in or related to the Cases, including the Estate Retained Claims, (c) to hear and determine the allowance or disallowance of Claims, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Cases, (h) to facilitate the consummation of the Plan, including without limitation (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, (j) to hear and determine any Claim of any Persons of any nature whatsoever against any chapter 11 trustee, the Debtors, the Reorganized Debtors, any Professionals retained by the foregoing parties and/or the Debtors' management, arising in or related to the Cases, (k) to issue Orders for Examination of any person or entity on Motion of the Reorganized Debtors, and (l) to enter Final Decrees closing the Cases. If closed, the Cases may be reopened at any time to facilitate the provisions of this Article.

## ARTICLE XIII

## EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

13.1   Binding Effect of Plan. The provisions of the confirmed Plan shall bind the Debtors, the Reorganized Debtors, any chapter 11 trustee, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Cases, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

13.2   Full Satisfaction of Claims. Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtors, the Reorganized Debtors, the Estates, or any assets or property of the Debtors and the Estates. Except with respect to Administrative Claims, Rejection Claims, and Claims described in Bankruptcy Rule 3002(c)(3), the Order of Confirmation shall be deemed to be a Final Order disallowing any Claim not filed as of the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

13.3    <u>Injunction</u>.  From and after the Effective Date, all Persons who have held, currently hold or may hold a debt, Claim or Interest against the Estates, the Debtors, any chapter 11 trustee, the Reorganized Debtors, or their respective property, including property transferred pursuant to this Plan, are enjoined from taking any of the following actions on account of any such debt or Claim: (a) commencing or continuing in any manner any action or other proceeding against the Estates, the Debtors, any chapter 11 trustee, the Reorganized Debtors, or their respective property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or other order against the Estates or the Debtors; (c) creating, perfecting or enforcing any lien or encumbrance against the Estates, the Debtors, or their respective property, including the property transferred pursuant to this Plan; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Estates or the Debtors; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Order of Confirmation.

13.4    <u>Limitation of Liability</u>.  On and after the Effective Date, neither the Debtors, the Sullivan Family, the Reorganized Debtors, nor any of their respective officers, members, managers, agents, employees or Professionals, shall have or incur any liability to any Person for any authorized act taken or omission made in good faith in connection with or related to the Bankruptcy Cases or the Estates, including objections to or estimations of Claims, the disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

**<u>ARTICLE XIV</u>**

**<u>MISCELLANEOUS</u>**

14.1    <u>Plan Interpretation</u>.  The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.  All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan.  All references in the Plan to a Section or an

Article shall mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

14.2    Modification. The Plan Proponents may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan. After the Confirmation Date, the Reorganized Debtors may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

14.3    Waiver. After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

14.4    Reservation of Rights. Neither the filing of the Plan nor any statement or provision contained in the Plan, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor any statement contained in the Plan or may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without these Bankruptcy Cases except with respect to Confirmation of the Plan.

14.5    Effectuating Documents and Further Transactions. Upon entry of the Order of Confirmation, any chapter 11 trustee and the Reorganized Debtors shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.6    Post- Effective Date Notices. Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Reorganized Debtors, and those Persons who file with the Bankruptcy Court a request, which includes the Person's name, address, telephone number and email address, that such Person receive

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

notice of post- Effective Date matters.  Persons who previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post- Effective Date matters unless such Persons file a new request in accordance with this Section.

14.7    <u>Reorganized Debtors May Seek Further Court Order</u>.  The Reorganized Debtors may apply to the Bankruptcy Court for any order as necessary to carry out the provisions of the Plan.

Dated:    August 20, 2019                              PACHULSKI STANG ZIEHL & JONES LLP


By:   <u>*/s/ John D. Fiero*</u>
      John D. Fiero
      *Attorneys for Equity Owners*
      *Ross Sullivan and Kelleen Sullivan*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT 1 – LIQUIDATION ANALYSES

To be filed as a supplement prior to the Disclosure Statement objection deadline, after consultation with the chapter 11 trustees herein.