John D. Fiero (CA Bar No. 136557)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: jfiero@pszjlaw.com

*Attorneys for Equity Owners*
*Ross Sullivan and Kelleen Sullivan*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **In re**<br><br>**SVC,**<br><br>Debtor. | Case No.: 17-10065-RLE<br><br>Chapter 11<br><br>**COMBINED PLAN AND DISCLOSURE STATEMENT PROPOSED BY SULLIVAN FAMILY (DECEMBER 20, 2019)**<br><br>**CONFIRMATION HEARING**<br>Date: February 26, 2019<br>Time: 10:00 a.m.<br>Place: 1300 Clay Street, Room 201<br>        Oakland, CA 94612<br>Judge: The Hon. Roger L. Efremsky |

## PRELIMINARY STATEMENT

Ross Sullivan and Kelleen Sullivan (collectively, the "Plan Proponents") hereby offer this Plan and Disclosure Statement ("Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code for the above-captioned chapter 11 debtor, SVC (the "Debtor"). [1]

The Plan Proponents have asked the Bankruptcy Court to confirm the Plan, and to do so, if applicable, in accordance with the cramdown provisions of Section 1129(b) of the Bankruptcy Code.

///

///

///

---

[1] Capitalized terms in this Disclosure Statement which are not otherwise defined herein shall bear the definition and meaning ascribed to them in Article III of the Plan.

# ARTICLE I

## A.  Plan and Case Background

The Debtor's Bankruptcy Case is pending before the United States Bankruptcy Court of the Northern District of California, Oakland Division ("Bankruptcy Court"), before the Honorable Roger L. Efremsky.

This document contains information with respect to the Plan Proponents' proposed plan of reorganization for the Debtor.  Pursuant to section 1125 of the Bankruptcy Code, this document is being distributed to you for the purpose of enabling you to make an informed judgment about the Plan.  The Plan Proponents have examined various alternatives and, based on information contained herein, and for the reasons set forth below, has concluded that the Plan provides the best recovery to creditors.

This document describes the Plan and contains information concerning, among other matters: (1) the history, business, property and liabilities of the Debtor; (2) significant events during the Bankruptcy Case; (3) the proposed conclusion of the Estate pursuant to the terms of the Plan, and (4) the treatment and proposed distributions to holders of Allowed Claims against, and Allowed Interests in, the Debtor.  The Plan Proponents request that you carefully review the contents of this document before making a decision to accept or reject the Plan.  Particular attention should be paid to the provisions affecting or impairing your rights as a Creditor or Interest Holder.

Your vote on the Plan is important.  For the Plan to be accepted by a class of Claims, the holders of two-thirds in dollar amount and more than one-half in number of Allowed Claims in such class who vote on the Plan must vote to accept the Plan.

Non-acceptance of the Plan may lead to a liquidation under chapter 7 of the Bankruptcy Code, or to the confirmation of another plan.  To that end, the attached **Exhibit 1** contains an analysis of how much Creditors and Interest Holders would likely receive in a chapter 7 liquidation. Although a chapter 7 conversion could result in creditors receiving interest on their claims at the applicable federal judgment rate, they do not believe that such interest is worth the risk imposed by new claims bar dates for creditors (including governmental creditors who are given six months to file claims) or the delay associated with waiting even longer for a creditor distribution. As a result,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

chapter 7 may or may not provide for a distribution of as much value to holders of Allowed Claims as the Plan will, or provide that distribution as quickly. Accordingly, the Plan Proponents urge you to accept the Plan by completing and returning the enclosed ballot by no later than **February 12, 2020 at 5:00 p.m. (Pacific Time).**

### B. Information Regarding the Plan

#### 1. Sources of Information.

Factual information, including all financial information contained herein, has been provided by the Plan Proponents, the Debtor (together with any chapter 11 trustee), their Professionals, or has been obtained from the Debtor's records, except where otherwise specifically noted. None of the Plan Proponents' attorneys, accountants or other Professionals make any representation regarding this information. The Plan Proponents are unable to represent or warrant that the information contained herein is free from any inaccuracy. The Plan Proponents have, however, attempted to present the information accurately and fairly, and believe that the information is substantially accurate. The assumptions underlying the projections contained herein concerning the sources and amounts of payments to Creditors and Interest Holders represent the Plan Proponents' best estimates as to what they expect will happen. Because these are only assumptions about or predictions of future events, many of which are beyond the Plan Proponents' control, there can be no assurances that the assumptions will in fact materialize or that the projected realizations will in fact be met.

#### 2. Bankruptcy Court Approval.

At the Confirmation hearing to be held on February 26, 2020 at 10:00 a.m., the Bankruptcy Court will be asked to approve this document as containing information of a kind and in sufficient detail adequate to enable a hypothetical, reasonable investor to make an informed judgment about the Plan.

### C. Voting Instructions

#### 1. How to Vote.

A ballot is enclosed herewith for Creditors and Interest Holders entitled to vote to accept or reject the Plan. To vote on the Plan, indicate on the enclosed ballot whether you accept or you reject the Plan, and sign your name and mail the ballot in the envelope provided for this purpose.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 17-10065    Doc# 502    Filed: 12/20/19    Entered: 12/20/19 13:54:31    Page 3 of 33

To be counted, ballots must be completed, signed and returned by United States Postal Service Mail so that they are received no later than **February 12, 2020 at 5:00 p.m. (Pacific Time)** at the following address:

SVC Plan Ballot Processing
c/o John D. Fiero
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

Do not send your ballot via facsimile or e-mail.  If your ballot is not properly completed, signed and returned as described, it will not be counted.  If your ballot is damaged or lost, you may request a replacement by sending a written request to the above address.

    2.    Who May Vote.

The Plan divides the Claims of Creditors into three classes, and also includes one class of Interests.  Those classes are as follows: Class 1 (Secured Claims of Stephen A. Finn and Winery Rehabilitation, LLC), Class 2 (Trade Creditors), and Class 3 (Claims of Non-Trade Unsecured Creditors).  Additionally, there is a class for equity interests: Class 4 (Interest Holders).

Classes of Creditors and Interest Holders that are impaired by the Plan are entitled to vote, unless no compensation or payment is provided for such class, in which event such class is conclusively deemed to have rejected the Plan.  Each holder of an Allowed Claim or Allowed Interest in an impaired class that will receive distributions under the Plan on account of such Allowed Claims or Allowed Interest may vote to accept or reject the Plan.  A class is impaired if the legal, equitable or contractual rights attaching to the Claims or Interests of the class are modified, other than by curing defaults and reinstating maturities.

Classes 1, 2, 3, and 4 are impaired under the Plan, and are entitled to vote on the Plan.

In determining acceptances of the Plan, the vote of a Creditor will only be counted if submitted by a Creditor whose Claim is an Allowed Claim.  Generally speaking, a Creditor holds an Allowed Claim if such Claim was duly scheduled by a Debtor as other than disputed, contingent or unliquidated, or the Creditor has timely filed with the Bankruptcy Court a proof of Claim which has not been objected to or disallowed prior to computation of the votes on the Plan.  The Ballot form that you received does not constitute a proof of Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**D.    Confirmation**

"Confirmation" is the technical phrase for the Bankruptcy Court's approval of a plan of reorganization.  At the Confirmation Hearing, in order to confirm the Plan, the Plan Proponents must demonstrate that they have met the requirements of section 1129 of the Bankruptcy Code.  If the Bankruptcy Court determines that all of the requirements of section 1129 have been satisfied, the Bankruptcy Court will enter an order confirming the Plan.  The Plan Proponents believe that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code for confirmation of the Plan.

Voting is tabulated by class.  As discussed above, a class of Creditors has accepted a plan of reorganization if the plan has been accepted by two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Creditors holding Allowed Claims in that class who actually vote to accept or reject such plan.  A class of Interests has accepted a plan of reorganization if the plan has been accepted by Interest Holders holding at least two-thirds (2/3) in amount of Allowed Interests in that class who actually vote to accept or reject such plan.

Even if a class of Creditors or Interests votes against a plan of reorganization, the Plan may nevertheless be confirmed by the Bankruptcy Court, notwithstanding the rejection of the Plan by such class, so long as certain statutory requirements are met by the Plan.  This procedure is called a "cram down."  The Plan Proponents will request that the Bankruptcy Court confirm the Plan in accordance with the cramdown provisions of section 1129(b) of the Bankruptcy Code if any class rejects the Plan.

The Bankruptcy Court has set **February 26, 2020 at 10:00 a.m. (Pacific Time)** as the hearing date to determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for confirmation of the Plan have been satisfied.  The hearing on confirmation will be held at the United States Bankruptcy Court, 1300 Clay Street, Courtroom 201, Oakland, California 94612.  This hearing may be continued from time to time and day to day without further notice.  If the Bankruptcy Court confirms the Plan, it will enter the Order of Confirmation.  Any objections to confirmation of the Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on the parties set forth below on or before the date set

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

forth in the Notice of Confirmation Hearing sent to you with this Disclosure Statement and Plan. Objections must be served upon:

Counsel to the Plan Proponents
John D. Fiero
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500

and

Office of the United States Trustee
450 Golden Gate Avenue, 5th Floor, Suite #05-0153
San Francisco, CA 94102

### E.    **Disclaimers**

THIS DOCUMENT CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.  THIS DOCUMENT IS INTENDED TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTOR AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. SEE 11 U.S.C. § 1125(a).

THE CONTENTS OF THIS DOCUMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE.  EACH CREDITOR OR INTEREST HOLDER SHOULD CONSULT HIS OR HER OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX AND OTHER MATTERS CONCERNING HIS OR HER CLAIM OR INTEREST.

## ARTICLE II

### A.    **History of the Debtor, Its Operations, and the Bankruptcy Case**

SVC, formerly known as Sullivan Vineyards Corporation, is a California corporation formed in 1987 to own and operate a Napa Valley winery known as Sullivan Vineyards on land at 1090 Galleron Road, Rutherford, California (the "Winery Property") owned by an affiliated entity – SVP

(formerly known as Sullivan Vineyards Partnership).  As is common in the wine industry, the entities used a parallel partnership and corporation structure, with SVP owning the land and SVC owning the winery business.

Together with their five children, parents Joanna Sullivan and James O'Neil Sullivan began Sullivan Vineyards as a family business.  In or about 2011, an individual named Stephen A. Finn ("Finn") married Sullivan daughter Kelleen Sullivan ("Kelleen") and acquired an ownership interest in the Debtor.  Through an entity called Winery Rehabilitation LLC ("WR"), Finn later acquired from Silicon Valley Bank a first deed of trust on the Winery Property, together with liens on related personal property, securing an indebtedness in excess of $10 million.  Finn also obtained a junior lien on the Debtor's assets, referred to as the "Grid Note," purportedly securing an indebtedness in excess of $4.6 million.

Kelleen and Finn's marriage ended in a divorce proceeding and related litigation across two states, whereby Kelleen was awarded Finn's interest in the Debtor's business in lieu of other consideration.  WR began foreclosure proceedings.  As detailed below, the Sullivans filed this Bankruptcy Case and the SVP case to deal with the "debt" to Finn, and pay him off to the extent such debt was enforceable.  Eventually, a single chapter 11 trustee (Timothy Hoffman) was appointed for each Debtor.

The Sullivan Family owns 100% of SVP and the vast majority of the equity in the SVC.

### 1.    Procedural Background

On February 1 and 2, 2017, SVC and SVP, respectively, filed voluntary petitions for relief in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division under the provisions of chapter 11 of the Bankruptcy Code, Case Nos. 17-10065 RLE and 17-10067 RLE.  The Bankruptcy Cases, which were jointly administered but not substantively consolidated, have since been separated.  Both cases are pending before the Honorable Roger L. Efremsky in the Oakland Division.

At a hearing on August 21, 2017, the Court ordered the appointment of a chapter 11 trustee. Thereafter, the Office of the United States Trustee selected the Trustee to be chapter 11 trustee of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

both estates. On August 29, 2017, the Court entered an order approving the Trustee's appointment in both Bankruptcy Cases.

On November 10, 2017, the Trustee filed his *Motion to Sell Real and Personal Property Assets Free and Clear of Liens and Encumbrances* [Docket No. 234] ("Sale Motion"), by which the Trustee sold to Vite USA, Inc. substantially all of the Debtor's real and personal property assets related to the winery. The Bankruptcy Court granted the Sale Motion at a hearing on December 11, 2017. On January 10, 2018, the sale closed. In connection with the closing of the sale, Finn and WR (together, the "Finn Creditors") were paid total consideration of $17,798,405.20, which sum included $2,647,833.70 of attorneys' fees and other costs, in addition to principal and interest.

Recently, Mr. Hoffman announced his intention to resign from the SVP case. A new trustee has been appointed in that case. She is Andrea Wirum (the "SVP Trustee").

### 2. Notable Claims against the Debtor

Three notable categories of non-trade debt claims were filed or scheduled in the Bankruptcy Cases, summarized below.

Finn Claims. Following the Court-approved sale of the winery, the Finn Creditors amended their proofs of claim against the Debtor to assert claims for indemnification of attorneys' fees and expenses, together with other unliquidated amounts that have been or may be incurred in the District Court Action (defined below) or in these Bankruptcy Cases (together, the "Finn Claims"). The Finn Claims, as amended, are based upon, inter alia, indemnification provisions in SVC's bylaws, an indemnification agreement between SVC and Finn, and the terms of the Finn Creditors' loan documents. The Finn Creditors have indicated an intention to further amend their claims to include additional accruing attorneys' fees, and have recently stated that the balance due on such claims now exceeds $1.5 million. All such claims are disputed by the Plan Proponents, and treated as Disputed Claims under this Plan.

Former Employee Claims. Five former SVC employees filed proofs of claim against SVC totaling $9,055,560: Angelica de Vere ($3,822,060), Theresa Sullivan ($1,717,000), Sonyia Grabski ($2,019,500), Elizabeth Matulich ($1,012,000), and Trinity Scott ($485,000) (collectively, the "Former Employees" or "Former Employee Claims" as applicable). The Former Employee Claims

were based upon a pending lawsuit that the Former Employees filed prepetition against Ross and Kelleen (together, the "Sullivans") and SVC in Napa County Superior Court, defined below as the "Napa County Action." The Former Employee Claims were withdrawn with prejudice as part of the Court-approved settlement discussed below.

SVP Intercompany Pre-Petition Receivable. SVP's bankruptcy schedules listed SVP as holding an undisputed, liquidated and non-contingent general unsecured claim against SVC in the amount of $2,130,720 (the "SVP Pre-Petition Intercompany Receivable"). SVC noted a debt to SVP in the same amount in its filing with the court. The amount was not challenged in the Bankruptcy Case until recently, when Finn filed an objection to the SVP claim, which made for a potential and actual conflict between the SVC and SVP bankruptcy estates. Thereafter, Mr. Hoffman resigned as Chapter 11 trustee of the SVP estate, and Andrea Wirum was appointed to serve as chapter 11 trustee of that estate.

On October 18, 2019, Ms. Wirum and her professionals filed a *Stipulation re: Division of Sale Proceeds, Payment of Administrative Expenses, and Liquidation of Unsecured Intercompany Debt* (the "Intercompany Stipulation"), in which the trustees agreed to the following salient terms (among others):

(a) The gross sale proceeds received by the Estates were first divided 61.43% for SVP and 38.57% for the Debtor.

(b) After an adjustment for the payment of interest to WR during 2017 ($390,000 total, with $239,578 allocated to SVP and $150,422 allocated to SVC), the allocation of net proceeds was adjusted: 57.55% to SVP; and 42.4% to SVC.

(c) The pre-petition debt from SVC to SVP reflected in the schedules of the two debtors was reduced from $2,130,720 to $62,838.56 (in recognition of a $445,721.44 producer's lien secured by sale proceeds and $1,572,160 paid from escrow to Mr. Finn, and elimination of a $50,000 discrepancy).

(d) The post-petition administrative claim amount owed by the Debtor to SVP is $572,458.28 ($506,600.20 for 2017 grape purchases, $70,000 in unpaid post-petition rent for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

February 2017, December 2017, and the first ten days of January 2018, less $4,141.92 in amounts owed by SVP to SVC).

The Intercompany Stipulation has been approved by the Bankruptcy Court, and Mr. Hoffman (on behalf of the Debtor) has: (a) transferred 57.55 percent of the net sale proceeds from the account he maintained to the SVP account maintained by Ms. Wirum; (b) paid $572,458.28 in administrative expense debt to the SVP estate; and (c) released to Ms. Wirum the $445,721.44 secured by the producer's lien on SVC's share of sale proceeds. Finally, there will be recognition of the reduction in SVP's general unsecured claim in this Bankruptcy Case to $62,838.56, which will be paid as a Class 3 Claim if and when funds are available for distribution to unsecured creditors under this Plan.

### 3. Litigation Affecting the Estate

During the Bankruptcy Cases, there have been three pending lawsuits involving the Estate or otherwise affecting the Estate. Only one of these lawsuits, the District Court Action (as defined below), remains pending.

Adversary Proceeding. The Debtors filed the first action, *SVC v. Finn,* A.P. No. 17-01023 ("Adversary Proceeding") in the Bankruptcy Court against Finn and Angelica de Vere ("de Vere"). The Adversary Proceeding asserted claims against Finn and de Vere for alleged breaches of fiduciary duty while Finn was a partner of SVP and a controlling shareholder of SVC, and de Vere was an officer of SVC. In January of 2019, the Adversary Proceeding was reassigned to the United States District Court for the Northern District of California, San Francisco Division ("District Court") for consideration together with the District Court Action (discussed below). In June of 2019, in accordance with the terms of the Court-approved settlement discussed below, the parties stipulated to dismiss Adversary Proceeding with prejudice.

District Court Action. The Sullivans commenced the second action, *Sullivan v. Finn*, Case No. 3:17-cv-05799-WHO ("District Court Action"), in the District Court against Finn and Trust Company of America, Inc., a company controlled by Finn. The District Court Action asserts claims against Finn for breach of fiduciary duty related to his role as a partner of SVP and controlling shareholder of SVC. The District Court Action remains pending, although neither Estate is a party to the District Court Action. However, as mentioned, the Finn Claims seek indemnification of

attorneys' fees and costs incurred in connection with the District Court Action (among other things). Thus, the outcome of the District Court Action may affect the size of the Finn Claims.

Napa County Action. The Former Employees filed the third action, *De Vere, et al. v. Sullivan Vineyards Corp., et al.*, Case No. 26-67976 ("Napa County Action"), against the Sullivans and SVC in Napa County Superior Court. The Former Employees' complaint asserted a variety of claims, including labor code violations, wrongful termination and breach of contract. SVC, in turn, filed a cross-complaint against de Vere. The Napa County Action was dismissed as part of the Court-approved settlement discussed below.

4. Court-Approved Settlement with Finn Creditors and Former Employees

Following the sale of the Debtors' assets, Timothy Hoffman devoted substantial time and effort to reaching a global settlement involving all principal parties in these cases, *i.e.*, the Finn Creditors, the Former Employees and the Sullivans, including a resolution of any non-derivative claims the Sullivans assert against the Finn Parties. Unfortunately, a global resolution was not possible. However, the Trustee did negotiate a settlement involving the Finn Creditors and the Former Employees. The Sullivan Family was not a party to the settlement, and the Sullivan Family's non-derivative claims, *i.e.*, those claims, if any, that the Sullivan Family members hold individually against the Finn Creditors, were not compromised or resolved.

The terms of the settlement agreement, entered into among the Trustee, the Finn Parties and the Former Employees, are as follows:

- The Former Employee Claims were withdrawn with prejudice; the Napa County Action (including SVC's cross-complaint against de Vere) was dismissed with prejudice, and certain claims against members of the Sullivan Family were dismissed without prejudice. The Trustee and the Former Employees executed a release of any and all claims against each other, including a waiver of § 1542 of the California Civil Code, with each side bearing its own attorneys' fees and costs.

- The Finn Claims were subordinated to all trade debt claims reflected in the Debtors' respective schedules, together with those trade debt claims reflected in proofs of claim currently on file with the Bankruptcy Court (to the extent such Claims are

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  Allowed). Finn agreed to undertake full responsibility to completely resolve the

2  Former Employee Claims without increasing the Finn Claims, *i.e.*, Finn agreed he

3  would not seek indemnification for sums paid to resolve the Former Employee

4  Claims, or expenses incurred in resolving these claims. However, the Finn Claims

5  were not subordinated to the SVP Pre-Petition Intercompany Receivable, and all

6  rights concerning the SVP Pre-Petition Intercompany Receivable were reserved at

7  that time. Moreover, the Finn Claims were not liquidated by the settlement

8  agreement, and all rights concerning the Finn Claims (including the objections to

9  such claims filed by the Sullivans) were reserved.

10  • The Trustee, on behalf of the Estates, agreed to dismiss the Adversary Proceeding

11  with prejudice. The Trustee further agreed to execute a release of any and all claims

12  against the Finn Creditors and Former Employees, including a waiver of § 1542 of

13  the California Civil Code. However, as mentioned, any claims held directly and

14  exclusively by the Sullivans as individuals were not released as part of the

15  settlement.

16  On or about April 3, 2019, the Trustee filed an application [Docket No. 422] ("Compromise

17  Application") for approval of the settlement. On May 20, 2019, following a hearing on the

18  Compromise Application, the Bankruptcy Court entered an order [Docket No. 435] ("Compromise

19  Order") approving the Compromise Application and settlement. The Compromise Order is now a

20  Final Order.

21  5.  Assets and Liabilities of the Debtor

22  The Estate's assets consist primarily of Estate Retained Claims and cash proceeds from the

23  sale of the winery. The primary Estate Retained Claim is SVC's claim against the law firm of

24  Buchalter LLP ("Buchalter") based upon professional negligence and breach of fiduciary duty.

25  Buchalter first provided legal services to Finn, as one of his divorce attorneys. Later (but still prior

26  to bankruptcy), Buchalter provided legal services to SVC and SVP. Buchalter later served as

27  counsel of record to the Former Employees in connection with the Bankruptcy Cases. After

28  Buchalter's disqualification in the Napa Superior Court, the Trustee moved to disqualify Buchalter

in the bankruptcy case as counsel of record to the Former Employees based upon Buchalter's prior representation of the Debtor. Buchalter did not oppose the motion, and on June 26, 2018, the Court entered an order [Docket No. 366] disqualifying Buchalter as counsel to the Former Employees.

The Debtor's Estate Retained Claim against Buchalter arises out of and relates to the foregoing conflict of interest (which constituted professional negligence) and the damage sustained from Buchalter's involvement as counsel to parties adverse to the Debtor. Such damage include attorneys' fees and consequential damages proximately caused by Buchalter's tortious conduct.

## ARTICLE III

### DEFINITIONS

As used in the Plan, the following terms shall have the meanings specified below:

"Administrative Claim" means a Claim for any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Estate incurred on or after the Petition Date and through and including the Confirmation Date, any cure amounts that must be paid in connection with the assumption of any executory contract or unexpired lease of the Debtor under Section 365 of the Bankruptcy Code, fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise.

"Administrative Claims Bar Date" means, with the exception of any Administrative Claims of Professionals, that date which is thirty (30) days following the date of the notice of the Confirmation Date.

"Allowed" or "Allowed Amount" means the amount in which any Claim or Interest is allowed. Unless otherwise expressly required by the Bankruptcy Code or the Plan, the Allowed Amount of any Claim does not include interest on such Claim from or after the applicable Petition Date.

"Allowed Administrative Claim" means all or any portion of an Administrative Claim that has either been Allowed by a Final Order or has not been objected to within the time period established by the Plan or by an order of the Bankruptcy Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Allowed Claim" means a Claim (a) in respect to which a proof of Claim has been filed with the Bankruptcy Court before the applicable Claims Bar Date and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; (b) as to which no proof of Claim has been filed and which has been listed on Schedule D, E or F of the Debtor's Schedules and is not listed as disputed, contingent, unliquidated or unknown as to amount, and to which no objection has been filed within the time fixed by the Plan or the Bankruptcy Court; or (c) which is Allowed by a Final Order. No Claim shall be considered an Allowed Claim if (1) an objection to the allowance thereof is interposed by a party in interest within the time fixed by the Plan or the Bankruptcy Court, and such objection has not been overruled by a Final Order, or (2) the Claim has already been satisfied. The Finn Claims are not Allowed Claims.

"Allowed Interest" means the Allowed Interest of an Interest Holder.

"Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, including the unsecured Claims of undersecured Creditors and Rejection Claims, but excluding Administrative Claims, Priority Claims and Tax Claims.

"Available Cash" means any and all cash and cash equivalents owned or held by the Reorganized Debtor available for payment of Allowed Claims and Interests after payment of Allowed Administrative Claims, Allowed Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and after reserving for all expenses incurred and anticipated to be incurred by the Reorganized Debtor after entry of the Order of Confirmation.

"Bankruptcy Cases" or "Cases" means the bankruptcy cases commenced by the Debtors' voluntary petitions under Chapter 11 of the Bankruptcy Code, Case Nos. 17-10065 RLE and 17-10067 RLE, or in the singular, "Bankruptcy Case."

"Bankruptcy Code" means Title 11, United States Code, § 101, et seq. as in effect and applicable to the Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, Oakland Division or such other court exercising jurisdiction over the Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, as applicable to the Bankruptcy Cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Claim" means any (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means (a) with respect to claims other than those held by governmental units, June 1, 2017, and (b) with respect to claims held by governmental units, July 30, 2017, and (c) with respect to Rejection Claims, the Rejection Claims Bar Date.

"Claims Objection Date" means the date that is two years after the Effective Date; provided, however, that the Claims Objection Date may be extended by the Bankruptcy Court for cause upon the *ex parte* motion of the Reorganized Debtor.

"Confirmation" means the entry by the Bankruptcy Court of the Order of Confirmation.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Order of Confirmation.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan as required by Section 1128(a) of the Bankruptcy Code.

"Creditor" means any entity holding a Claim against the Debtor.

"Debtor" means SVC, a California corporation.

"Disputed Claim" means a Claim against the Debtor (a) as to which a proof of Claim has not been filed and that has been listed in the Debtor's Schedules as disputed, contingent or unliquidated, or; (b) as to which an objection or adversary proceeding has been filed within the time fixed by the Bankruptcy Court and which objection or adversary proceeding has not been withdrawn or disposed of by a Final Order. The Finn Claims are Disputed Claims.

"Distribution" means, as the context requires: (a) the cash to be provided under the Plan to the holders of Allowed Claims and Allowed Interests; or (b) the payment, transfer, delivery or deposit of cash to Creditors and Interest Holders pursuant to the Plan.

"Distribution Date" means any date on which a Distribution is made pursuant to the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Effective Date" means the fifteenth (15th) day following the Confirmation Date so long as the Order of Confirmation is not subject to a Court-ordered stay.

"Estate Retained Claims" means all litigation claims held by the Estate, including any claims arising out of Bankruptcy Code Sections 502, 510, 541, 542, 543, 545, and 549, together with any claims sounding in contract, tort, equity or statute against any party, including any and all claims against Buchalter LLP and its constituent attorneys.

"Estates" means the SVC and SVP bankruptcy estates created by the commencement of the Bankruptcy Cases and comprised of the property described in Section 541 of the Bankruptcy Code. In the singular, "Estate" refers solely to SVC.

"Final Order" means an order entered on the docket by the Bankruptcy Court as to which no timely filed notice of appeal is pending within fourteen (14) days entry of such order; or, if such appeal is pending, for which no stay pending appeal has been issued.

"Interest" means units or rights to units or any membership interest or other ownership interest held by any Person in the Debtor.

"Interest Holder" means the holder of an Interest in the Debtor.

"Legal Rate" means eighty-four hundredths percent (.84%) per annum, the interest rate allowed on judgments entered in federal courts pursuant to 28 U.S.C. § 1961(a), which is the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the Petition Date.

"Local Rules" means the Local Rules of the United States Bankruptcy Court for the Northern District of California, as amended, as applicable to the Bankruptcy Cases.

"Order of Confirmation" means the order entered by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

"Person" shall have the meaning ascribed to it in the Bankruptcy Code.

"Petition Date" means February 1, 2017 for SVC and February 2, 2017 for SVP, the dates on which each Debtor filed its voluntary petition under chapter 11, thereby initiating the Bankruptcy Cases (and on which date relief was ordered in the Bankruptcy Cases). The dates together are the "Petition Dates."

"Plan Disbursement Account" shall mean the account containing Available Cash, which will be used for payment of Allowed Claims and Interests as set forth in the Plan.

"Priority Claim" means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, but not including an Administrative Claim or a Tax Claim.

"Professionals" means those professional persons or firms retained by any bankruptcy trustee or the Debtor pursuant to Section 330 of the Bankruptcy Code, and such other professionals whose employment prior to Confirmation is approved by order of the Bankruptcy Court, if any.

"Pro Rata" means, with respect to any Distributions to be made to the holder of an Allowed Claim or Allowed Interest, the proportion that such Allowed Claim or Allowed Interest bears to the aggregate of all outstanding Allowed Claims or Allowed Interests in the same class.

"Rejection Claim" means an Allowed Unsecured Claim arising from the rejection of an unexpired lease or executory contract pursuant to the Plan or pursuant to an order of the Bankruptcy Court.

"Rejection Claims Bar Date" means the earlier of (a) thirty (30) days following the date of the notice of the  Confirmation Date, or (b) thirty (30) days after the rejection date with respect to an executory contract or unexpired lease rejected before the Confirmation Date pursuant to a Final Order.

"Reorganized Debtor" means the Debtor as reorganized under the Plan following Confirmation.

"Reorganized Debtor's Payment Cap" means $175,000, taken from Available Cash, and to be made available as necessary upon Confirmation to the Reorganized Debtor for payment of expenses of post-Confirmation administration, including indemnity payments, professional fees, prosecution of Estate Retained Claims, objections to Claims, and other necessary post-Confirmation expenses.

"Schedules" means the Debtor's schedules of assets and liabilities consisting of Schedule "A" through "J" filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b), as may be amended at any time prior to Distribution.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Secured Claim" means a Claim secured by a lien, security interest, or other charge against or interest in property in which the Debtor has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as specified in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of a holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"Tax Claim" means any Allowed Claim against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

Any term used in the Plan that is not herein defined but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE IV

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Allowed Claims against and Allowed Interests in the Debtor are designated and classified below for purposes of the Plan. Except to the extent that the Plan provides otherwise, a Claim or Interest that is properly includable in more than one class is classified in a particular class only to the extent that it qualifies within the description of that class, and is placed in a different class to the extent it qualifies within the description of such different class. Classes 1, 2, 3 and 4 are impaired under the Plan, and are entitled to vote on the Plan.

4.1     Class 1 (Secured Claims of Finn and Winery Rehabilitation). Class 1 consists of all extant and viable claims of the Finn Creditors to the extent such claims constitute perfected, secured and Allowed Claims. Class 1 does not include paid claims.

4.2     Class 2 (Trade Creditors). Class 2 consists of the Allowed Unsecured Claims of any creditors other than: (a) the Finn Creditors and (b) the SVP Intercompany Pre-Petition Receivable.

4.3     Class 3 (Unsecured Claims of Non-Trade Unsecured Creditors). Class 3 consists of all Allowed Claims of non-trade unsecured Creditors. In particular, Class 3 is comprised of (a) the unsecured components of the Finn Claims, if any.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 17-10065   Doc# 502   Filed: 12/20/19   Entered: 12/20/19 13:54:31   Page 18 of 33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.4 <u>Class 4 (Interests in the Debtor)</u>. Class 4 consists of all Allowed Interests in the Debtor, specifically including all equity interests in SVC.

**ARTICLE V**

**CLASSES OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN**

All Classes are impaired under the Plan.

**ARTICLE VI**

**TREATMENT OF UNCLASSIFIED CLAIMS**

Unclassified Claims shall be treated as follows:

6.1 <u>Allowed Administrative Claims</u>. Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Administrative Claim, each holder of an Allowed Administrative Claim shall be paid in cash, in full upon the later of (a) the Effective Date, and (b) the date when it becomes an Allowed Administrative Claim. Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than Administrative Claims of any chapter 11 trustee or Professionals, must be filed on or before the Administrative Claims Bar Date or the holder of such Administrative Claim shall be forever barred from asserting such Claim or receiving any payment on account of such Claim. Allowance of professional fees and costs claimed by any chapter 11 trustee or Professionals accruing before the Confirmation Date shall remain subject to Bankruptcy Court approval pursuant to Section 330 of the Bankruptcy Code.

6.2 <u>Tax Claims</u>. The holders of Allowed Claims entitled to priority under 11 U.S.C. § 507(a)(8) ("Allowed Tax Claims") will receive equal deferred cash payments, payable quarterly, commencing with an initial payment six months from the Effective Date, over a period not exceeding five (5) years after the date of assessment of each such claim, or the applicable Petition Date, whichever is sooner; provided however, that Allowed Tax Claims shall be paid in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. The unpaid portion of any Allowed Tax Claim shall bear interest at the statutory rate. The Reorganized Debtor reserves the right to pay any Allowed Tax Claim in full at any time after the Effective Date.

Case: 17-10065    Doc# 502    Filed: 12/20/19    Entered: 12/20/19 13:54:31    Page 19 of 33

## ARTICLE VII

## TREATMENT OF CLASSES OF CLAIMS AND
## INTERESTS THAT ARE IMPAIRED UNDER THE PLAN

7.1     Class 1 (Secured Claims of Finn and Winery Rehabilitation).  Except to the extent that the holder of a particular Class 1 Claim agrees to a different treatment of such Claim, each holder of an Allowed Class 1 Claim shall be entitled to receive up to the full amount of its Allowed Secured Claim against each Debtor to the extent of Available Cash held by each Reorganized Debtor at the time of allowance.  Until such payment is made, Class 1 Creditors holding Allowed Claims shall retain their liens, if any, on the Available Cash.  If the Allowed Secured Claims of Class 1 are not paid in full from the Available Cash, any deficiency portion will be treated as a Class 3 claim. The Allowed Claims of a Class 1 Creditor shall be deemed fully perfected upon the Effective Date to the same extent as such liens existed prepetition, and Class 1 Creditors shall not be required to file financing statements or other documents to perfect and maintain the perfection of its security interests in the Available Cash, if any.

7.2     Class 2 (Trade Creditors).

7.3     Each holder of an Allowed Class 2 Claim shall be paid from Available Cash up to the full amount their Allowed Claim, together with simple interest at the rate of 3% per annum on the terms and conditions set forth in Article VIII below. Such payment shall be senior and prior to the satisfaction of any Class 1 or Class 3 Claim, except for the interest component, which shall be paid only if Allowed Class 1 and Class 3 Claims are paid in full.

7.4     Class 3 (Unsecured Claims of Non-Trade Unsecured Creditors).  If Available Cash remains, each holder of an Allowed Class 3 Claim, if any, shall be paid Pro Rata from Available Cash up to the full amount their Allowed Claims without interest, on the terms and conditions set forth in Article VII below. Such payment shall be junior and subordinate to satisfaction of any Class 1 or 2 Claim.

7.5     Class 4 (Membership Interests in the Debtor).  The existing membership interests in the Debtor shall be preserved without alteration, subject to the terms of this Plan.

DOCS_SF:1017415 82168/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN

8.1     Post-Confirmation Operations and Management of the Estate.  From and after the Effective Date, each Reorganized Debtor shall manage the assets of its Estate and shall have all of the authority to act on behalf of such Estate and corresponding Debtor.  Such management shall include, without limitation, (a) fulfilling the duties and obligations of the Estate under the Plan; (b) prosecuting the Estate Retained Claims utilizing business judgment, (c) abandoning any assets deemed to be burdensome or of inconsequential value to the Estate; (d) succeeding to all chapter 11 trustees' attorney/client privilege and work product protection in all respects; (e) taking possession of all documents (electronic or otherwise) relating to the chapter 11 administration of the Estate, including those subject to the attorney-client privilege; and (f) otherwise fully administering the Estate as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtor will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code.  Bill Brinkman shall serve as the President of SVC and serve as the chairman of its board of directors and shall continue to serve as such until he resigns.  SVC's other board members (Kelly and Sean Sullivan) shall have no ability to remove Mr. Brinkman from his posts unless he resigns or a court of competent jurisdiction, upon motion by the shareholders of SVC, shall remove him for gross negligence or willful misconduct.  Mr. Brinkman shall have the right to resign at any time, subject to 90 days notice to SVC.  Kelleen and Sean Sullivan shall serve as the other two board members of SVC.  Mr. Brinkman shall also be the managing general partner of SVP.

8.2     Professional and Managerial Compensation.  The Reorganized Debtor shall be entitled to retain and compensate from Available Cash such contractors, professionals and other Persons as they deem fit.  From and after the Effective Date, the Reorganized Debtor and all professionals employed by them may be paid 100% of their periodic invoices for post-confirmation services without prior approval of the Court, subject to the Reorganized Debtor Payment Cap and 10 days' notice to creditors requesting special notice after the Effective Date.  In the event of any

timely-filed written objection, such intended professional fee payment shall be set for hearing on not less than seven days' notice.

8.3    Indemnity.  The Reorganized Debtor may indemnify its officers, directors, and partners (as applicable), and any professionals the Reorganized Debtor may retain from any and all claims, demands, lawsuits, charges, or expenses arising out of or relating to the performance of the Reorganized Debtor and any professionals under the Plan to the fullest extent allowed by the laws of the State of California up to the then available remaining amount of the Reorganized Debtor Payment Cap.  For avoidance of doubt, such indemnity shall not extend to (i) any claims, demands, lawsuits, charges, or expenses arising out of or related to the District Court Action, or (ii) any claims based upon intentional or grossly negligent conduct.

8.4    Cap Increase.  The Reorganized Debtor Payment Cap may only be increased by Court order following 10 days' notice by email to parties requesting post- Effective Date notice in the Cases with an opportunity to object.  If no objection is received during the 10-day notice period, the Reorganized Debtor may apply *ex parte* to the Court for an order authorizing the proposed increase to the Reorganized Debtor Payment Cap.  If an objection is received during the 10-day notice period, the Reorganized Debtor must set the matter for hearing before the Bankruptcy Court on at least 7 days' notice to the objecting party.

8.5    Replacement of Trustee.  Upon the Effective Date, any trustee for the Estate shall be immediately relieved of all responsibilities pursuant to the order authorizing the trustee's appointment.

8.6    Delivery of Assets and Records to Reorganized Debtor.  Promptly upon the Effective Date, any trustee for the Estate shall deliver to the Reorganized Debtor all of the books and records of the Debtor, including but not limited to all materials gathered or used during the pendency of the Bankruptcy Case, whether maintained by any trustee, trustee's counsel, or any other Professionals, specifically including but not limited to privileged communications with Professionals or any work product of any chapter 11 trustee or his Professionals, pursuant to Bankruptcy Code section 1141(b).

8.7    Plan Disbursement Account.  The Reorganized Debtor shall hold any funds transmitted to it in a segregated Plan Disbursement Account for the benefit of holders of Allowed

Claims. The Plan Disbursement Account containing the Available Cash shall be maintained by Pachulski Stang Ziehl & Jones LLP in a client trust account established for that purpose. Consistent with the terms of the Plan, the Available Cash therein – net of all Administrative Expenses to be paid under the Plan, and net of all expenses of the Reorganized Debtor (subject to the Reorganized Debtor Payment Cap) – will be made available for the satisfaction of Allowed Class 1, 2, 3, and 4 Claims as dictated by the Plan. Under no circumstances shall the Reorganized Debtor use the Available Cash for any other purpose, unless the Reorganized Debtor Payment Cap is increased as provided herein.

8.8    <u>Timing of Distributions</u>. The Reorganized Debtor shall make a first Distribution to holders of Allowed Claims within the fifteen days after the Effective Date. Thereafter, the Reorganized Debtor shall make subsequent Distributions in their discretion and business judgment. Distributions may be made without further order of Court. The Reorganized Debtor shall provide an accounting of Distributions within 30 days of written request by any Creditor holding an Allowed Claim.

8.9    <u>Distribution Addresses</u>. Unless a Creditor has provided the Reorganized Debtor with written notice of a different address, Distributions will be sent to Creditors at the address set forth in the proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules.

8.10    <u>Withholding Taxes</u>. Pursuant to Section 346(h) of the Bankruptcy Code, the Reorganized Debtor shall be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Reorganized Debtor shall be permitted to withhold a Distribution to any Creditor that has not provided information requested by the Reorganized Debtor for the purpose of fulfilling his or her obligations hereunder. The Reorganized Debtor shall comply with all reporting obligations imposed on them by any governmental unit with respect to withholding and related taxes.

8.11    <u>De Minimis Distributions</u>. Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not be made on account of any Allowed Claim or Allowed Interest; provided that Distributions that would otherwise be made but for this provision shall carry

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

over until the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim or Allowed Interest is entitled to more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

8.12    <u>Unclaimed Distributions</u>.  Any cash Distributions that remain unclaimed or un-negotiated for ninety (90) days following Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) shall become the property of the Estate and be considered Available Cash.

8.13    <u>Prosecution of the Estate Retained Claims</u>.  Any proceeds of the Estate Retained Claims shall be paid into the Plan Disbursement Account.  The Reorganized Debtor shall have exclusive standing to investigate, prosecute, and, if appropriate, compromise any Estate Retained Claim against any Persons or entities.  Any compromise of an Estate Retained Claim may be consummated without notice, hearing, or order of the Court, provided that the Reorganized Debtor shall provide 10 days' notice of the terms of any compromise greater than $250,000 by email to all parties requesting post-Effective Date notice in the Cases with an opportunity to object.  If no objection is received during the 10-day notice period, the Reorganized Debtor may consummate the compromise.  If, however, a timely objection is received, then the Reorganized Debtor must set the matter for hearing on at least 10 days' notice to the objecting party, in which case consummation of the compromise will be subject to entry of an order of the Bankruptcy Court approving the compromise.  The Court will retain jurisdiction to approve any compromise.

The Reorganized Debtor reserves the right to object to any filed or scheduled Claim, unless such Claim is Allowed by the Plan.  For avoidance of doubt, the Finn Claims are not Allowed Claims under the Plan; the Finn Claims are Disputed Claims.  Any and all Estate Retained Claims pending as of the Effective Date shall be deemed revested in the Reorganized Debtor, pursuant to Bankruptcy Code section 1141(b).  Any and all objections to Claims and other contested matters by or against the Estate pending as of the Effective Date shall likewise be deemed revested in the Reorganized Debtor, along with possession of the documents (electronic or otherwise) relating to such objections or contested matters.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8.14    Vesting of Property of the Estate.  On the Effective Date, SVC and SVP shall continue in their separate existences until entry of Final Decrees in their Cases, and all property of the SVC Estate shall vest in the Reorganized Debtor pursuant to Bankruptcy Code section 1141(b), free and clear of any and all liens (except for Allowed Secured Claims), encumbrances, or Claims of Creditors.  Revesting does not modify the nature of any contracts assumed by the Debtor or the any chapter 11 trustee.

8.15    Further Orders.  Upon motion by the Reorganized Debtor on not less than ten (10) days' notice to parties requesting post- Effective Date notice, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

8.16    Insurance Policies.  To the extent any insurance policies exist in which either the Debtor and/or its personnel have an insurable or other interest in or right to make a claim, such policies shall remain available, before and after the Effective Date, to satisfy any and all Claims held by, or asserted against, the Debtor, any chapter 11 trustee, the Reorganized Debtor, and/or the Debtor's current or former management or other personnel that may be covered by such policies.

8.17    Post-Confirmation Operating Expenses.  From the Effective Date, the Reorganized Debtor may incur and pay operating expenses in the ordinary course of business, subject to the Reorganized Debtor's Payment Cap.

8.18    No Substantive Consolidation.  This Plan does not effectuate substantive consolidation of the SVC and SVP Estates.  The Reorganized Debtor shall take no action that shall consolidate the Reorganized Debtor's assets or liabilities prior to the issuance of a Final Decree.

8.19    Post-Confirmation Reports, Fees, and Final Decree.

8.19.1    U.S. Trustee Fees.  Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtor shall pay to the United States Trustee the quarterly fee for such quarter until the cases are converted, dismissed, or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

8.19.2    Post-Confirmation Reports.  Not later than thirty (30) days after the end of the calendar quarter which ends after the Effective Date, the Reorganized Debtor shall file and serve upon the United States Trustee separate quarterly post-Confirmation status reports in substantially

the form provided by the United States Trustee.  Further reports shall be filed thirty (30) days after the end of every calendar quarter thereafter until entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

        8.19.3    <u>Final Decree</u>.  Once the Plan is substantially consummated, the Reorganized Debtor shall file an application for a Final Decree in the Cases as provided in the Local Rules.

        8.20    <u>Bankruptcy Rule 2004</u>.  In the course of any investigation, the Reorganized Debtor shall have the right post-Confirmation to apply for orders of examination under Bankruptcy Rule 2004, to be enforced pursuant to Bankruptcy Rule 2005.  The Bankruptcy Court (and its clerk's office) shall have the power to approve applications for orders of examination under Bankruptcy Rule 2004, together with any enforcement orders necessary, including but not limited to pursuant to Bankruptcy Rule 2005.  Any expenses the Reorganized Debtor incurs in connection with Rule 2004 examinations, including the Reorganized Debtor's attorneys' fees and costs related to any Rule 2004 examination, are subject to the Reorganized Debtor Payment Cap.

## <u>ARTICLE IX</u>

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

        9.1    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  Any executory contracts of the Debtor which have not specifically been assumed shall be deemed rejected on the Effective Date.

        9.2    <u>Effect of Assumption of Executory Contracts and Unexpired Leases</u>.  Any executory contracts assumed prior to Confirmation shall remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

        9.3    <u>Adding and Removing Executory Contracts and Unexpired Leases</u>.  The provisions of this Article IX may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the hearing on Confirmation of the Plan, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

9.4     Defaults.  Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Reorganized Debtor shall, on or before the Effective Date, (a) cure, or provide adequate assurance that they will promptly cure, any such default, (b) compensate, or provide adequate assurance that they will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default, and (c) provide adequate assurance of future performance under such contract or lease.

9.5     Rejection Claims.  Rejection Claims shall be classified as Class 2 Claims.  The holder of a Rejection Claim shall file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtor, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

## ARTICLE X
## PROOFS OF CLAIM; OBJECTIONS

10.1     Time for Filing Proofs of Claim.  Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date, or such Claims shall be conclusively deemed barred and disallowed by the Order of Confirmation.

10.2     Evidence of Claim.  For purposes of any Distribution under the Plan, the Reorganized Debtor shall have no obligation to recognize any transfer of Claims unless the transferee of such Claim shall pay a fee of $250.00 to the Reorganized Debtor.  The Reorganized Debtor shall be entitled to recognize and deal for all purposes with only those Creditors of record with the Bankruptcy Court who have tendered such fee prior to the first Distribution Date.

10.3     Amendments to Claims.  Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, upon expiration of the applicable Claims Bar Date, proofs of Claim may not be filed or amended except for amendments to proofs of Claim to decrease the amount or priority thereof.

10.4    Claim Objections.  An objection to a Claim shall be filed no later than the Claims Objection Date.  The Reorganized Debtor shall have the exclusive responsibility to review Claims filed against the Debtor, to file objections as appropriate, and to resolve Disputed Claims.

10.5    Distributions.  Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions hereunder, payments and Distributions in respect of any Claim that at such date or time is a Disputed Claim, shall not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions shall be made promptly in accordance with the terms of the Plan.

## ARTICLE XI

## PRESERVATION OF RETAINED CLAIMS

11.1    Confirmation of the Plan effects no settlement, compromise, waiver or release of any Estate Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides.  The failure of the Plan to refer to any particular Estate Retained Claim is not and shall not be construed as a settlement, compromise, waiver, or release of any such Estate Retained Claim.  All Estate Retained Claims are hereby preserved and shall continue to remain valid after the Effective Date.  The Reorganized Debtor further reserve the right to object to any filed or scheduled Claim.  The entry of the Order of Confirmation shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Reorganized Debtor upon any Estate Retained Claims.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1    The Bankruptcy Court shall retain exclusive jurisdiction of the Cases (a) to enforce the provisions, purposes, and intent of the Plan, (b) to hear and determine any adversary proceedings or contested matters filed in or related to the Cases, including the Estate Retained Claims, (c) to hear and determine the allowance or disallowance of Claims, (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan, (e) to adjudicate controversies arising from the terms of the Plan, (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (g) to enforce or interpret the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Cases, (h) to facilitate the consummation of the Plan, including without limitation (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation, (j) to hear and determine any Claim of any Persons of any nature whatsoever against any chapter 11 trustee, the Debtor, the Reorganized Debtor, any Professionals retained by the foregoing parties and/or the Debtor's management, arising in or related to the Cases, (k) to issue Orders for Examination of any person or entity on Motion of the Reorganized Debtor, and (l) to enter Final Decrees closing the Cases. If closed, the Cases may be reopened at any time to facilitate the provisions of this Article.

## ARTICLE XIII

## EFFECT OF ORDER OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation shall be as provided in Section 1141 of the Bankruptcy Code, and as follows:

13.1    <u>Binding Effect of Plan</u>.  The provisions of the confirmed Plan shall bind the Debtor, the Reorganized Debtor, any chapter 11 trustee, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Case, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

13.2    <u>Full Satisfaction of Claims</u>.  Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan shall constitute full and complete satisfaction and release of all Claims, including any interest accrued thereon from and after the Petition Date, against the Debtor, the Reorganized Debtor, the Estate, or any assets or property of the Debtor and the Estate.  Except with respect to Administrative Claims, Rejection Claims, and Claims described in Bankruptcy Rule 3002(c)(3), the Order of Confirmation shall be deemed to be a Final Order disallowing any Claim not filed as of the Effective Date.

13.3    <u>Injunction</u>.  From and after the Effective Date, all Persons who have held, currently hold or may hold a debt, Claim or Interest against the Estate, the Debtor, any chapter 11 trustee, the Reorganized Debtor, or their respective property, including property transferred pursuant to this

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

29

Plan, are enjoined from taking any of the following actions on account of any such debt or Claim: (a) commencing or continuing in any manner any action or other proceeding against the Estate, the Debtor, any chapter 11 trustee, the Reorganized Debtor, or their respective property; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or other order against the Estate or the Debtor; (c) creating, perfecting or enforcing any lien or encumbrance against the Estate, the Debtor, or their respective property, including the property transferred pursuant to this Plan; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Estate or the Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Order of Confirmation.

13.4    Limitation of Liability.  On and after the Effective Date, neither the Debtor, the Sullivan Family, the Reorganized Debtor, nor any of their respective officers, members, managers, agents, employees or Professionals, shall have or incur any liability to any Person for any authorized act taken or omission made in good faith in connection with or related to the Bankruptcy Cases or the Estate, including objections to or estimations of Claims, the disposition of assets, or formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

## ARTICLE XIV

## MISCELLANEOUS

14.1    Plan Interpretation.  The headings contained in the Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of the Plan.  All references in the Plan to the singular shall be construed to include references to the plural and vice versa.  All references in the Plan to any one of the masculine, feminine or neuter genders shall be deemed to include references to both other such genders.  All exhibits attached to the Plan are, by this reference, hereby incorporated into the Plan.  All references in the Plan to a Section or an Article shall mean the appropriately numbered Section or Article of the Plan.  Whenever the Plan uses the term "including," such reference shall be deemed to mean "including, but not limited to."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

14.2    <u>Modification</u>.  The Plan Proponents may propose amendments to or modifications of the Plan under Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the conclusion of the hearing on Confirmation of the Plan.  After the Confirmation Date, the Reorganized Debtor may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019.

14.3    <u>Waiver</u>.  After the Confirmation Date, except as otherwise specifically set forth in the Plan, any term of the Plan may be waived only by the party or parties entitled to the benefit of the term to be waived.

14.4    <u>Reservation of Rights</u>.  Neither the filing of the Plan nor any statement or provision contained in the Plan, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor any statement contained in the Plan or may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without these Bankruptcy Cases except with respect to Confirmation of the Plan.

14.5    <u>Effectuating Documents and Further Transactions</u>.  Upon entry of the Order of Confirmation, any chapter 11 trustee and the Reorganized Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.6    <u>Post- Effective Date Notices</u>.  Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Reorganized Debtor, and those Persons who file with the Bankruptcy Court a request, which includes the Person's name, address, telephone number and email address, that such Person receive notice of post- Effective Date matters.  Persons who previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

receive notice of post- Effective Date matters unless such Persons file a new request in accordance with this Section.

14.7    <u>Reorganized Debtor May Seek Further Court Order</u>.  The Reorganized Debtor may apply to the Bankruptcy Court for any order as necessary to carry out the provisions of the Plan.

Dated:    December 20, 2019                    PACHULSKI STANG ZIEHL & JONES LLP

By:   */s/ John D. Fiero*
      John D. Fiero
      *Attorneys for Equity Owners*
      *Ross Sullivan and Kelleen Sullivan*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:1017445.82168/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT 1 – LIQUIDATION ANALYSIS

The Trustee believes the estate has sufficient funds on hand (approximately $939,249.25) to pay all administrative expenses and Class 2 trade claims, with some balance likely left over.

In a chapter 7 case, Class 2 general unsecured creditors who are paid in full would likely receive interest at the Legal Rate (.84%). Under the Plan, Class 2 claimants with Allowed Claims may receive simple interest on their claims at the rate of 3% per annum, if their claims and Class 1 and 2 Claims are paid in full. Accordingly, if the Plan is confirmed, Class 2 creditors will do better in a Chapter 11 than they would under Chapter 7. Moreover, the risks of delay and claim dilution imposed by new claims bar dates and further administrative expenses attendant in a Chapter 7 case would be eliminated.