Aron M. Oliner (SBN: 152373)
Geoffrey A. Heaton (SBN: 206990)
**DUANE MORRIS LLP**
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: (415) 957-3000
Facsimile: (415) 957-3001
Email: gheaton@duanemorris.com

Counsel for SVC Chapter 11 Trustee
TIMOTHY W. HOFFMAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| In re | Case No. 17-10065 RLE |
|---|---|
| SVC, | Chapter 11 |
| Debtor. | **CHAPTER 11 TRUSTEE'S OBJECTION TO CHAPTER 11 PLAN PROPOSED BY SULLIVAN FAMILY (DECEMBER 20, 2019)** |
| | Date: February 26, 2020<br>Time: 10:00 a.m.<br>Place: 1300 Clay Street, Room 201<br>Oakland, CA 94612<br>Judge: The Hon. Roger L. Efremsky |

Timothy W. Hoffman, the duly appointed, qualified and acting Chapter 11 Trustee of SVC's bankruptcy estate ("Trustee") objects to the chapter 11 plan dated December 20, 2019 [Doc #502] ("Plan") filed by Ross and Kelleen Sullivan as follows:

**I.  PRELIMINARY STATEMENT**

As a prerequisite to confirmation, a bankruptcy court must find that a chapter 11 plan has been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In this instance, the Plan contains provisions that plainly contravene established law, violating two of the most fundamental and long-standing safeguards of the attorney-client relationship. Specifically, the Plan seeks to deprive the Trustee and his counsel of the protections of the

1

**CHAPTER 11 TRUSTEE'S OBJECTION TO CHAPTER 11 PLAN PROPOSED BY SULLIVAN FAMILY**
DM3\6317437.1 R1034/00002
Case: 17-10065   Doc# 515   Filed: 02/12/20   Entered: 02/12/20 13:31:01   Page 1 of 5

attorney-client privilege ("ACP") and attorney work product doctrine ("WPD"). To that end, the Plan provides that the "Reorganized Debtor," i.e., the Sullivans and their hand-selected SVC president/board chairman, will "succeed[ ] to [the Trustee's] attorney/client privilege and work product protection in all respects[.]" Plan at § 8.1. Upon confirmation, the Trustee and his counsel must turn over to the Reorganized Debtor all privileged and protected documents. Plan at § 8.6.

Unsurprisingly, there is no authority to support the Sullivans' proposed evisceration of the ACP and WPD. Indeed, confirming a plan containing these provisions would set a destructive precedent, chilling a duly appointed trustee's ability to communicate openly with his chosen, Court-approved counsel, and significantly impeding a trustee's ability to administer a bankruptcy estate. In fact, such an outcome is antithetical to the policy of "uncovering insider fraud" that the U.S. Supreme court articulated for its holding in Commodity Futures Trading Com. v. Weintraub, 471 U.S. 343, 353 (1985).

Accordingly, the Trustee objects to confirmation of the Plan to the extent it includes any provisions directing that the Trustee's ACP and WPD protections be transferred to the Reorganized Debtor or any other person. Moreover, the Trustee objects to the Reorganized Debtor's retention and prosecution of "Estate Retained Claims" (Plan, p. 16) to the extent such claims include the right under 11 U.S.C. § 542 to compel the Trustee to turn over any material subject to the ACP or the WPD. The Court should enter an order denying confirmation unless the Plan is amended to remove the offending provisions described herein.

**II. DISCUSSION**

The purpose of the ACP is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co., 265 F.R.D. 510, 519 (E.D. Cal. 2010), quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney." Id. (citations omitted).

The purpose behind the WPD, in turn, is to permit an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC), 575 B.R. 29, 42 (Bankr. S.D.N.Y. 2017), quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947). An important purpose of the WPD is to "prevent exploitation of a party's efforts in preparing for litigation." Admiral Ins. Co. v. U.S. District Court, 881 F.2d 1486, 1494 (9th Cir. 1989).

In short, the ACP and WPD are central to an attorney's effective representation of a client. The Plan, in violation of long-established law, strips away both of these essential protections from the Trustee. The Plan provides that the "Reorganized Debtor" will succeed to the SVC Trustee's ACP and WPD protections, and requires that the Trustee and his Court-approved counsel turn over to the Reorganized Debtor all information and material protected from disclosure by the ACP and WPD. See Plan at §§ 8.1, 8.6.

Worse yet, the Plan divests the Trustee of these protections for the benefit of SVC's insiders, the Sullivans. While the Plan ostensibly refers to the "Reorganized Debtor" as holding the Trustee's ACP and WPD protections, one should read instead the "Sullivans." Post-confirmation, Kelleen Sullivan and brother Sean Sullivan will serve as board members of SVC. Plan at § 8.1. To give the Plan a veneer of non-Sullivan control, an individual whom the Sullivans hand-selected, Bill Brinkman, will serve as SVC's president and board chairman, and can resign at any time. Id. Undoubtedly, Ross Sullivan, Plan proponent and former SVC president, will be behind the scenes providing advice and oversight, if he does not ultimately take a formal officer or director position with SVC.

Under the Plan, SVC's insiders, the Sullivans, will control the Reorganized Debtor (in fact if not in title) and succeed to the Trustee's ACP and WPD protections. That is to say, the individuals who, among others, were subjects of the Trustee's investigations in this case will have full access to the Trustee's privileged communications and materials.

It is settled law that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications."

<u>Weintraub</u>, 471 U.S. at 358 (emphasis added). No legal authority, however, supports the proposition that a reorganized debtor under the control of its prepetition insiders can, through a plan, acquire a duly appointed trustee's ACP and WPD protections – protections which axiomatically pertain to <u>post-petition</u> communications and work product.

Allowing a reorganized debtor and its insiders unfettered access to the privileged communications and documents of a duly appointed bankruptcy trustee – who, among other things, <u>likely investigated into the actions and omissions of the same insiders</u> – would severely inhibit the ability of a bankruptcy trustee to have free and open communication with his or her counsel. The precedent would be incredibly harmful to effective administration of bankruptcy estates.

Such an outcome is also incompatible with the policy rationale articulated in <u>Weintraub</u>, where the U.S. Supreme Court held that the trustee of a debtor corporation may waive the debtor's ACP with respect to <u>pre-bankruptcy</u> communications. 471 U.S. at 358. In reaching its holding, the Court explained that to hold otherwise would interfere with a trustee's ability to investigate potential claims against insiders:

> In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors. See generally *11 U. S. C. §§ 704(4), 547, 548.* It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files. To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets. <u>The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct.</u>

471 U.S. at 353 (emphasis added).

A trustee cannot effectively uncover potential insider fraud, an activity that requires free and open communication with counsel, knowing that the targets of that investigation may ultimately be entitled to the trustee's privileged communications and materials. Indeed, such an outcome is directly at odds with the Code's goal of uncovering insiders fraud, as the U.S. Supreme Court articulated in <u>Weintraub</u>.

Case: 17-10065    Doc# 515    Filed: 02/12/20    Entered: 02/12/20 13:31:01    Page 4 of 5

A trustee must be able to have full and open communications with his or her chosen counsel concerning insider investigations and <u>all other facets of a bankruptcy case</u>. The Plan's proposed assignment of the Trustee's ACP and WPD protections to the Reorganized Debtor (i.e., the Sullivans) would set a harmful precedent for all bankruptcy trustees and bankruptcy estates. The subject provisions plainly contravene established law. Consequently, the Plan violates § 1129(a)(3) and is unconfirmable.

### III. CONCLUSION

For all the foregoing reasons, the Trustee objects to confirmation of the Plan to the extent it includes any provisions directing that the Trustee's ACP and WPD protections be transferred to the Reorganized Debtor or any other person. Moreover, the Trustee objects to the Reorganized Debtor's retention of any right under 11 U.S.C. § 542 to compel the Trustee or his counsel to turn over any material subject to the ACP or the WPD. The Court should deny confirmation unless and until the Plan is amended to remove the offending provisions described above.

Dated: February 12, 2020

**DUANE MORRIS LLP**

By: /s/ Aron M. Oliner (152373)
    Aron M. Oliner
    Counsel to SVC Chapter 11 Trustee
    TIMOTHY W. HOFFMAN