PHILIP S. WARDEN (SBN 54752)
 philip.warden@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:     415.983.1000
Facsimile:      415.983.1200

*Attorneys for Stephen A. Finn
and Winery Rehabilitation, LLC*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>    SVC,<br><br>           Debtor. | Case No. 17-10065-RLE<br><br>CHAPTER 11<br><br>**SECURED CREDITORS' OBJECTION TO CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT PROPOSED BY SULLIVAN FAMILY (DECEMBER 20, 2019)**<br><br>Hearing:    February 26, 2020<br>Time:        10:00 a.m.<br>Place:       1300 Clay Street, Room 201<br>              Oakland CA 94612<br>Judge:      Hon. Roger L. Efremsky |

**TO THE HONORABLE ROGER L. EFREMSKY, UNITED STATES CHIEF BANKRUPTCY JUDGE, TRUSTEE, DEBTORS, AND ALL INTERESTED PARTIES**:

Stephen A. Finn ("Finn") and Winery Rehabilitation, LLC ("Winery Rehab," and together with Finn, the "Secured Creditors"), through their undersigned counsel, submit this objection[1] to the confirmation of the Combined Plan and Disclosure Statement (the "Plan") proposed by the Sullivan family (the "Sullivans" or the "Plan Proponents") dated December 20, 2019 [Docket. No.

---

[1] Pursuant to an agreement between the Plan Proponents and the Secured Creditors, the deadline for the Secured Creditors to file their objection to the Plan was extended to February 14, 2020.

-1-

515] and the Declaration of Philip S. Warden in support thereof (the "Warden Declaration"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. This case needs to come to an end, but this Plan is not confirmable, and the case should be converted. This case has lingered in this Court for over three years and for over two years since all of the SVC Debtor's assets were sold. During that time the Sullivans, either as debtors-in-possession or in their individual capacity, have proposed numerous plans of reorganization that have all failed to be confirmed by this Court. This Plan too should fail for many of the same reasons that the Sullivans' other plans have failed, namely, it is not proposed in good faith and it is not in the best interest of creditors. The Secured Creditors believe the most efficient and cost-effective way to resolve this case is through the denial of the Plan and the conversion of both the SVC Case and the SVP Case to cases under chapter 7 of the Bankruptcy Code and consolidation of those cases under a single chapter 7 trustee.

2. The Secured Creditors attempted to get information from the Sullivans through Plan-related discovery to determine whether the Plan was confirmable. As discussed below, these efforts were met with either obfuscation or lack of knowledge by the Plan Proponents, who will also be a part of the proposed reorganized SVC Debtor's board of directors. This includes the Sullivans' counsel improperly giving instructions not to answer deposition questions. The information that was provided through the Plan-related discovery is insufficient to determine whether the Plan is in the best interest of creditors in this case. As a result, the Sullivans have failed to meet their burden to show that the SVC Debtor's creditors will be better off under this Plan than through a chapter 7 liquidation.

3. Additionally, the Sullivans have an uncurable conflict of interest that prevents them from serving on the board of the proposed reorganized SVC Debtor. It strains credulity that the Sullivans would be allowed to act as a fiduciary on behalf of the Debtor's estate, including its largest creditor (Mr. Finn), who is not only the ex-husband of one of the Plan Proponents, but is also currently the defendant in a federal district court lawsuit brought by the Plan Proponents

-2-

relating to this very Debtor. The Plan attempts to resolve this conflict by empowering Bill Brinkman to be the President of SVC, but the remaining two members of the proposed reorganized SVC Debtor's board are both members of the Sullivan family. Any matter the Sullivans wish to push forward with, they will have the majority of votes needed to do so even over any objection by Mr. Brinkman. Further, filing separate plans of reorganization for SVP and SVC does not resolve the Sullivans' conflict.

4.  The Sullivans are unqualified to serve on the board of the proposed reorganized SVC Debtor. This is made abundantly clear by the fact that the Sullivans were already removed from the management of the Debtor by this Court in favor of a chapter 11 trustee. If it is appropriate to reorganize the Debtor through a chapter 11 plan (which the Secured Creditors, in agreement with the SVP Trustee, believe is inappropriate), the board cannot be composed of individuals who drove the Debtor into bankruptcy and were removed by the Court and replaced by a trustee.

5.  Finally, the Plan is not proposed in good faith as required by the Bankruptcy Code and must be seen for what it is: a cynical ploy by the former debtors-in-possession to re-take possession of the estate's assets for their own financial gain at the expense of the estate's creditors. Among other indices showing a lack of good faith is the creation of a class of creditors in the Plan that consists of only Kelleen Sullivan. If confirmed, the Plan would re-vest the estate's remaining assets, including causes of action and the attorney client privilege, in the hands of the Sullivans and allow them to pursue their campaign of meritless litigation against Finn at the expenses of the estate's creditors, which consists primarily of Finn.

6.  After proposing *seven* prior plans of reorganization that were facially defective and unconfirmable; and after causing the estate to commence an adversary proceeding against Finn challenging the Secured Creditors' claims; and after being removed as debtors in possession, through the appointment of a chapter 11 trustee that they themselves nominated; and after bringing a district court lawsuit against Finn after losing control of the adversary proceeding, the former debtors-in-possession now propose yet another plan. Their sole justification for doing so, and for

-3-

4824-3493-0612

revesting themselves in a position of trust, can only be that they want the ability to spend the remaining estate funds in their continued pursuit of their own interests.

### BACKGROUND

**a. Case Procedural History**

7. SVC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 1, 2017 (the "SVC Case"). SVP filed its voluntary chapter 11 petition on February 2, 2017 (the "SVP Case," and together with the SVC Case, the "Chapter 11 Cases"). The Chapter 11 Cases were being jointly administered pursuant to an order of the Court entered on March 13, 2017 [Docket. No. 62]. On August 26, 2019, the Bankruptcy Court entered an order terminating joint administration effective August 20, 2019 [Docket. No. 472].

8. The Court is no doubt well aware of the history of the Chapter 11 Cases so the Secured Creditors will not relive it here. Instead, The Secured Creditors incorporate by reference the factual background included in their Disclosure Statement Objection.[2]

**b. The Sullivan's New Plan**

9. On November 12, 2019, the Sullivans' filed an earlier iteration of this Plan. On December 5, 2019, the SVC Trustee filed an objection to that Plan [Docket No. 497]. On December 10, 2019, the Secured Creditors also filed an objection to that version of the Plan (the "Disclosure Statement Objection") [Docket No. 498].

10. The Sullivans filed this revised Plan on December 20, 2019. On February 12, 2020, the SVC Trustee filed its objection to the Plan (the "SVC Trustee's Objection") [Docket. No. 515]. The Secured Creditors incorporate by reference the issues raised in the SVC Trustee's Objection

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement Objection.

-4-

4824-3493-0612

and the confirmation related objections in the Disclosure Statement Objections that are not otherwise re-urged herein.

   c. **Plan Discovery Requests**

   11. On or around February 2, 2020, the Secured Creditors served Kelleen Sullivan, Ross Sullivan, and Bill Brinkman with Notices of Deposition. These Notices of Deposition are attached to the Warden Declaration as Exhibits A-1 through A-3, respectively. The Notices of Deposition included focused requests for documents. The Secured Creditors conducted their depositions of Kelleen Sullivan and Ross Sullivan on February 10, 2020 (the "Sullivans' Depositions"). Excerpts of Kelleen Sullivan's and Ross Sullivans' depositions cited to below are attached to the Warden Declaration as Exhibit B-1 (the "KS Transcript") and B-2 (the "RS Transcript") respectively. At the Sullivans' depositions, the Secured Creditors sought information about:

- the preparation the Plan and of the Plan's liquidation analysis [KS Transcript, Page 14, Lines 6-8, 21-23] [RS Transcript, Page 85, Lines 12-18];

- the selection of Mr. Brinkman and his intended role in the proposed reorganized SVC Debtor [KS Transcript, Page 21, Lines 15-22] [RS Transcript, Page 48, Lines 9-14];

- any budgets prepared for the operation of the proposed reorganized SVC Debtor [KS Transcript, Page 24, Lines 9-18; Page 31, Lines 6-20] [RS Transcript, Page 56, Lines 20-23];

- what litigation claims are being preserved by Estate Retained Claims, other than those again the Buchalter firm [KS Transcript, Page 33, Lines 20-22] [RS Transcript, Page 54, Lines 20-23]; and

- how the amount included for the Reorganized Debtor's Payment Cap was calculated [KS Transcript, Page 29, Lines 17-25] [RS Transcript, Page 45, Lines 1-3].

   12. To each of these questions, the Sullivans responded that they did not know the answer. The Secured Creditors will object to the Sullivans introducing any evidence concerning the above-identified topics at the Confirmation Hearing. Also, during the deposition of Ross Sullivan, the Secured Creditors learned that Class 3 in the Plan consists of only one creditor,

Kelleen Sullivan. [RS Transcript, Page 47, Lines 12-23]. The Plan also classifies Class 3 claims as being impaired. The Secured Creditor will object to any attempted use by the Sullivans argue that Class 3 as an impaired class voting for the Plan.

13. Despite being aware that Finn owned a claim in the SVP estate, the Sullivans counsel stated on the record at the beginning of the Sullivans' Depositions, "If you ask either witness today questions about SVP, I will instruct the witness not to answer." [KS Transcript, Page 8, Lines 5-7]. The Sullivans counsel then proceeded to issue such an instruction not to answer on six separate occasions. Federal Rule of Civil Procedure 30(c)(2) provides, in relevant part, "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Instructing a witness not to answer a question for any other reason is sanctionable. *Detoy v. City & Cnty. of S.F.*, 196 F.R.D. 362, 365–66 (N.D. Cal. 2000).

14. Additionally, during the Sullivans Depositions, the Sullivans' counsel repeatedly made improper lengthy speaking objections. [KS Transcript, Page 17, Lines 6-8; Page 23, Lines 2-7; Page 35, Lines 5-7; Page 41, Lines 10-13; Page 49, Lines 20-22; Page 63, Lines 11-22; Page 66, Lines 14-18] [RS Transcript, Page 28, Lines 16-23; Page 43, Lines 5-16; Page 58, Lines 15-22; Page 69, Lines 2-15; Page 73, Lines 23-25] As a result, the Secured Creditors were unable to ascertain the relevant information to make a determination on the viability of the Plan.

### ARGUMENT

**a. The Sullivans Have an Uncurable Conflict of Interest**

15. The Sullivans continue to have an uncurable conflict of interest. The Sullivans and Finn have been engaged in a sprawling litany of lawsuits in state court, federal district court, and bankruptcy court. This litigation continues to this day. The Sullivans are the plaintiffs in the District Court Case where they brought a lawsuit against Finn arising from a nearly identical set of underlying facts as the Adversary Proceeding they brought when they were debtors-in-possession. It is clear on the face of it that the Sullivans intend to not only continue the District Court Case against Finn, but also pursue their litigation against him relating to the Secured

-6-

4824-3493-0612

Creditors' claims. The Plan serves to create, effectively, a litigation trust that the Sullivans can use to pursue further duplicative and frivolous litigation against Finn.

16. Furthermore, the Sullivans have included a provision in Section 10.3 of the Plan that prohibits creditors from amending their claims. This section is clearly included by the Sullivans in the Plan in an attempt to restrict the Secured Creditors' right to amend their claims. The Sullivans know that the Secured Creditors intend to file amended versions of their claims to include the additional attorneys' fees incurred by the Secured Creditors defending the Sullivans' attacks on the Grid Note, which has been paid in full by order of this Court. The Plan states that "The Finn Creditors have indicated an intention to further amend their claims to include additional accruing attorneys' fees." Plan, Article II(A)(2). The only way that Section 10.3 of the Plan can be read is as an effort to unfairly single out the Secured Creditors in a clear-cut manifestation of the Sullivans' conflict of interest.

17. The SVC Case does not need to be reorganized in chapter 11: there are no assets left to operate; and the trade vendors should soon be paid in full with interest. The SVP Trustee came to a similar conclusion in the *Trustee's Report Under 11 U.S.C. Section 1106(a)(4) and (5)* on November 27, 2019 [SVP Docket. No. 56] (the "<u>SVP Trustee's Report</u>"), and stated therein that the SVP Case should be converted to chapter 7. The only reason to reorganize SVC in chapter 11 is for a third party to propose a plan which provides them access to SVC's remaining cash and to the estate's causes of action. The Bankruptcy Code does not permit a spouse to use a plan to create a litigation trust for the purpose of using that trust to continue to pursue litigation against a former spouse. *See In re Melcher,* 2006 WL 6810966, at *10 (B.A.P. 9th Cir. May 31, 2006), aff'd, 300 F. App'x 455 (9th Cir. 2008). That is precisely what the Sullivans are attempting to do through the Plan. Accordingly, the Plan should not be confirmed and the SVC Case should be converted to one under chapter 7.

   **b. The Plan Does Not Meet its Burden Under the Best Interest of Creditors Test**

18. Section 1129(a)(7)(A)(ii) requires bankruptcy courts to determine what creditors would receive under a hypothetical chapter 7 liquidation, and then compare that amount to what

-7-

4824-3493-0612

the same creditors would receive under a chapter 11 reorganization. It provides that a bankruptcy court may confirm a chapter 11 plan only if each holder of an impaired claim "will receive or retain ... property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. 1129(a)(7)(A)(ii). Although "[t]he hypothetical liquidation analysis must be based on evidence and not assumptions in order to meet the best interests of creditors test," 7 Collier on Bankruptcy ¶ 1129.02 n.98 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).

19. The Plan includes a liquidation analysis as Exhibit 1 to the Plan (the "<u>Liquidation Analysis</u>"). The Liquidation Analysis does not include evidence sufficient for the Sullivans to meet their burden under Section 1129(a)(7) to show that the Plan meets the best interest of creditors test for SVC's creditors. The Liquidation Analysis relies on qualifiers such as "[t]he Trustee believes" and "some balance likely left over." These can only be categorized as assumptions that the Sullivans are using and cannot be considered evidence. At his deposition on February 10, 2020, Ross Sullivan said that he did not know if the Liquidation Analysis was accurate.

20. The Secured Creditors initiated their Plan-related discovery, in part, to determine whether the Sullivans could provide additional information or evidence to support their Liquidation Analysis. After reviewing the transcripts of the Sullivans' Depositions and the documents the Sullivans provided in response to the Plan-related discovery, the Secured Creditors assert that the Plan and the Liquidation Analysis fail to meet the best interest of creditors test under Section 1129(a)(7).

   c. **The Plan Has Not Been Proposed in Good Faith**

21. A chapter 11 plan cannot be confirmed if it has not been proposed in good faith. 11 U.S.C. § 1129(a)(3). The section 1129(a)(3) good faith question is determined on a case by-case basis taking into account the totality of the circumstances with a view to whether the plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *Platinum Capital, Inc. v. Sylmar Plaza, Ltd. P'ship (In re Sylmar Plaza, Ltd. P'ship)*, 314 F.3d

-8-

4824-3493-0612

1070, 1074–75 (9th Cir.2002), *cert. denied*, 538 U.S. 1035 (2003); *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 171–72 (9th Cir.BAP 1988).

22. Here, the Plan proposes a course of action that is clearly contradictory to the objectives and purposes of the Bankruptcy Code. The Sullivans' equity interests in the Debtor are likely out of the money. In response to this, the Sullivans filed the Plan to wrest control of the remaining assets from the SVC Trustee in order to enrich and protect themselves and give themselves an improper litigation advantage. The Plan even proposes to limit the ability of creditors to amend their claims, and then allows the Sullivans to complete the disputed claims resolution process without further involvement of the Court. It is clearly self-serving, benefiting out of the money equity holders at the expense of the Debtor's rightful creditors. Given the amounts claimed by creditors, the Sullivans are not the residual interest holders in these cases, and under the circumstances, the Sullivans cannot be entrusted with the fiduciary responsibilities of a trustee or debtor in possession (or disbursing agent).

## **CONCLUSION**

WHEREFORE, Stephen A. Finn and Winery Rehabilitation, LLC respectfully request that the Court deny approval of the Plan, convert the Chapter 11 Cases to ones under chapter 7, and grant such other relief as the Court deems appropriate.

Dated: February 14, 2020

By  */s/ Philip S. Warden*
    Philip S. Warden

Philip S. Warden (SBN 54752)
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:415.983.1000
Facsimile: 415.983.1200
philip.warden@pillsburylaw.com

*Attorneys for Stephen A. Finn
and Winery Rehabilitation, LLC*

-9-

4824-3493-0612