John D. Fiero (CA Bar No. 136557)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: jfiero@pszjlaw.com

*Attorneys for Equity Owners,*
*Ross Sullivan and Kelleen Sullivan*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **In re** | Case No.: 17-10065-RLE |
| **SVC,** | (Jointly Administered) |
| Debtor. | Chapter 11 |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT PROPOSED BY SULLIVAN FAMILY (DECEMBER 20, 2019; OMNIBUS REPLY IN SUPPORT OF CONFIRMATION** |

**CONFIRMATION HEARING**
Date:     February 26, 2020
Time:     10:00 a.m.
Place:    1300 Clay Street, Room 201
          Oakland, CA 94612
Judge:    The Hon. Roger L. Efremsky

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................1

II. STATEMENT OF FACTS ..............................................................................1

    A.    Background ............................................................................................1

    B.    The Finn Creditors Are Paid in Full at Closing .................................2

    C.    The Finn Creditors Agree to Subordinate to
            Non-insider Creditors in Both Cases ................................................2

    D.    Andrea Wirum is Appointed Trustee for the SVP Case ...................2

    E.    Wirum and Hoffman Agree on the Calculation of
            Intercompany Receivables .................................................................3

    F.    Wirum Successfully Objects to the Finn Creditors'
            Claims in the SVP Case ....................................................................3

    G.    Filing of the Plan ...............................................................................3

III. THE PLAN COMPLIES WITH ALL APPLICABLE
     PROVISIONS OF THE BANKRUPTCY CODE ........................................4

    A.    The Plan Complies with Applicable Provisions of
            Chapter 11 – Section 1129(a)(1) .......................................................4

          1.    The Plan Properly Classifies Claims and Interests
                 in Compliance with Section 1122 of the Bankruptcy Code ..........5

          2.    The Plan Contains the Mandatory Provisions
                 Required by Section 1123 of the Bankruptcy Code ......................5

          3.    The Plan Contains Provisions Permitted by
                 Section 1123(b) of the Bankruptcy Code .....................................7

    B.    The Plan Proponents Have Fully Complied with the
            Applicable Provisions of the Bankruptcy Code – Section 1129(a)(2)........8

          1.    Section 1125 of the Bankruptcy Code ...........................................8

          2.    Section 1126 of the Bankruptcy Code. ..........................................8

    C.    The Plan is Proposed in Good Faith – Section 1129(a)(3)................9

    D.    The Payment of Expenses Related to this Case are Subject
            to Approval By the Court as Reasonable – Section 1129(a)(4)....................9

    E.    The Plan Proponents Have Fully Disclosed the Employment of Any
            Officer, Manager, or Voting Trustee by the Reorganized Debtor, and Such
            Employment is in the Best Interest of the Estate – Section 1129(a)(5). .....................10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

F.     The Plan Does Not Require Approval of Any Regulatory Commission – Section 1129(a)(6). .................................................................10

G.     The Plan Satisfies the "Best Interests Test" – Section 1129(a)(7)...............10

H.     Each Class of Claims and Interests has Accepted the Plan, or may be Crammed Down – Sections 1129(a)(8) and 1129(b). ..................11

I.     The Plan Provides for the Statutorily Mandated Treatment of Administrative and Priority Tax Claims – Section 1129(a)(9).................12

J.     Class 2 is a Consenting Impaired Cram Down Class – Section 1129(a)(10). ...................................................................................12

K.     The Plan Is Feasible – Section 1129(a)(11). ...............................................12

L.     The Plan Provides for the Payment of All  Fees Under 28 U.S.C. § 1930 – Section 1129(a)(12)...........................................................13

M.     Provisions Regarding the Continuation of Retiree Benefits Do Not Apply to the Plan – Section 1129(a)(13). ..........................13

IV. REPLY TO OBJECTIONS ............................................................................................13

A.     The Attorney-Client Privilege Belongs to the Debtor, Not Hoffman. .......13

B.     The Finn Creditors' Objections Must be Overruled. ..................................16

      1.     There is No Impermissible Conflict..................................................16

      2.     The "Best Interests" Showing is Sufficient .....................................17

      3.     The Plan Has Been Proposed in Good Faith.....................................18

V. CONCLUSION .............................................................................................................18

PACHULSKI STANG ZIEHL & JONES LLP

ATTORNEYS AT LAW

SAN FRANCISCO, CALIFORNIA

# <u>TABLE OF AUTHORITIES</u>

**Pages**

## <u>CASES</u>

*Berkeley Federal Bank & Trust v. Sea Garden Motel & Apartments*
 *(In re Sea Garden Motel & Apartments),*
 195 B.R. 294 (D.N.J. 1996) ........................................................................ 13

*In re Butler,*
 42 B.R. 777 (Bankr. E.D. Ark. 1984) ........................................................ 8

*In re Genesis Health Ventures, Inc.,*
 266 B.R. 591 (Bankr. D. Del. 1987) .......................................................... 11

*In re Hoff,*
 54 B.R. 746 (Bankr. D.N.D. 1985) ............................................................ 8

*In re Kovich,*
 4 B.R. 403 (Bankr. W.D. Mich. 1980) ...................................................... 5

*In re Madison Hotel Assocs.,*
 749 F.2d 410 (7th Cir. 1984) ...................................................................... 9

*In re Nite Lite Inns,*
 17 B.R. 367 (Bankr. S.D. Cal. 1982) ......................................................... 9

*In re Parks Lumber Co, Inc.,*
 19 B.R. 285 (Bankr. W.D. La. 1982) ......................................................... 10

*In re Produce Hawaii, Inc.,*
 41 B.R. 301 (Bankr. D. Haw. 1984) ........................................................... 10

*In re Texaco, Inc.,*
 84 B.R. 893 (Bankr. S.D.N.Y 1988) .......................................................... 8

*In re Toy & Sports Warehouse, Inc.,*
 37 B.R. 141 (Bankr. S.D.N.Y. 1984) ......................................................... 5

*In re Zenith Elecs. Corp.,*
 241 B.R. 92 (Bankr. D. Del. 1999) ............................................................. 9

*Jasik v. Conrad (In re Jasik),*
 727 F.2d 1379 (5th Cir. 1984) .................................................................... 9

*Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen),*
 66 B.R. 104 (B.A.P. 9th Cir. 1986) ............................................................ 9

*Kane v. Johns-Manville Corp.,*
 843 F.2d 636 (2d Cir. 1988) ....................................................................... 5

*Ryan v. Louis (In re Corey),*
 892 F.2d 829 (9th Cir. 1989) ...................................................................... 9

iv

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*S&P, Inc v. Pfeifer,*
    189 B.R. 173 (N.D. Ind. 1995) ........................................................................... 13

*Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.),*
    84 B.R. 167 (B.A.P. 9th Cir. 1988) ....................................................................... 9

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc.*
    *(In re U.S. Truck Co., Inc.),*
    800 F.2d 581 (6th Cir. 1986) ................................................................................. 5

*The Mutual Life Ins. Co. of New York v. Patrician St. Joseph Partners*
    *(In re Patrician St. Joseph Partners),*
    169 B.R. 669 (Bankr. D. Ariz. 1994) .................................................................. 12

## STATUTES

11 U.S.C. § 1122 ............................................................................................... 4, 5, 8

11 U.S.C. § 1123 ............................................................................................... passim

11 U.S.C. § 1125 ....................................................................................................... 8

11 U.S.C. § 1129 ............................................................................................... passim

11 U.S.C. § 1129 (b) .............................................................................................. 11

11 U.S.C. § 365 ......................................................................................................... 8

28 U.S.C. § 1930 .................................................................................................... 13

## OTHER AUTHORITIES

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977) ........................................ 4

S. Rep. No. 95-989, 9th Cong., 2d Sess. 126 (1978) ............................................... 5

# I.

# **INTRODUCTION**

Ross Sullivan and Kelleen Sullivan (hereinafter collectively the "Plan Proponents") hereby submit this Memorandum of Points and Authorities in support of confirmation of the *Combined Plan and Disclosure Statement Proposed by Sullivan Family* [Docket No. 502] (the "Plan"). This Memorandum presents a comprehensive analysis of the grounds supporting confirmation of the Plan and demonstrates that the Plan complies with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules. It also provides the legal and evidentiary basis necessary for this Court to confirm the Plan pursuant to Bankruptcy Code section 1129(b). Accordingly, the Plan Proponents respectfully request that the Court confirm the Plan.

# II.

# **STATEMENT OF FACTS**

## A. **Background**

The Sullivan family purchased its first vineyard in Napa Valley in 1972. Today, debtors SVC and SVP (collectively. the "Debtors"), are owned almost exclusively by five brothers and sisters, Philomena Gildea, Sean Sullivan, Kelleen Sullivan, Caireen Sullivan and Ross Sullivan (collectively, the "Sullivan Family").

The claims bar date for general non-governmental claims passed on June 1, 2017 (the "Claims Bar Date").

On June 22, 2017, creditor Stephen A. Finn and his affiliate, Winery Rehabilitation LLC (the "Finn Creditors") filed their *Secured Creditors' Motion to Convert or Dismiss Cases Pursuant to Section 1112(b)* [Docket No. 114]. At a hearing on August 21, 2017, the Court ordered the appointment of a single chapter 11 trustee for the two estates. Thereafter, the Office of the United States Trustee selected Timothy W. Hoffman ("Hoffman") to be the trustee, and his appointment was ordered by the Court on August 29, 2017 [Docket No. 199].

Notwithstanding the change in control, Ross Sullivan continued working to benefit creditors. Specifically, he found and brought to the negotiating table a purchaser for substantially

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

all of the Debtors' operating assets (the "Sale"). As a result, less than 90 days after his appointment, Hoffman filed his *Motion to Sell Real and Personal Property Assets Free and Clear of Liens and Encumbrances* (the "Sale Motion") [Docket No. 234]. The Sale Motion was granted at a hearing on December 11, 2017. On January 10, 2018, the Sale closed.

### B.    The Finn Creditors Are Paid in Full at Closing

In connection with the closing of the Sale, the Finn Creditors demanded total consideration of $17,798,405.20, which sum included $2,647,833.70 of attorneys' fees and other costs over and above principal and interest. The Trustee paid all of this money to the Finn Creditors at closing.

### C.    The Finn Creditors Agree to Subordinate to Non-insider Creditors in Both Cases

On April 3, 2019, Hoffman filed his *Application for Order Authorizing Trustee to Enter Into Compromise with Various Creditors and Litigants* [Docket No. 422] (the "Compromise Motion").

Two elements of the bargain supported by the Compromise Motion are of special import for this confirmation hearing. The first element is that the Finn Creditors agreed that they would subordinate their claims in each of the affiliated bankruptcies to those of non-insider unsecured creditors. The second element was that the Finn Creditors agreed that all attorneys' fees would be borne by solely by the party incurring the fees. On May 20, 2019, the Court entered its order approving the Compromise Motion. [Docket No. 435].

### D.    Andrea Wirum is Appointed Trustee for the SVP Case

On July 31, 2019, the Finn Creditors created the appearance of a potential conflict between the two bankruptcy estates by filing their *Objection to Inter-Debtor Scheduled Claim of Sullivan Vineyards Partnership* [Docket No. 454]. Although later events proved that the Finn Creditors' objection was wildly misguided from a factual perspective, the potential conflict between the estates prompted Hoffman to resign as trustee of the SVP estate on August 7, 2019. Thereafter, on August 21, 2019, Andrea Wirum ("Wirum") made her appearance in that case. Soon after that, the SVP and SVC bankruptcies ceased being jointly administered.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### E. Wirum and Hoffman Agree on the Calculation of Intercompany Receivables

Thereafter, Wirum, Hoffman and their respective professionals began discussions to quantify and resolve the extent of the inter-company claims (both pre-petition and administrative) between SVP and SVC.  Ultimately, they were able to reach agreement on a division of the sale proceeds that worked as follows: (1) the gross Sale purchase price was allocated 61.43% to SVP and 38.57% to SVC; (2) the net Sale proceeds were divided 57.55% to SVP and 42.45% to SVC; (3) Hoffman agreed to release to Wirum $445,721.44 on account of SVP's producer's lien against SVC's share of the net proceeds; (4) SVP's net Chapter 11 administrative expense in the amount of $572,458.28 was paid by to Wirum by Hoffman; and (5) SVP's general unsecured claim in the SVC case was fixed at $62,838.56 (this is now a Class 3 Claim under the Plan).  On November 15, 2019, the Court approved the trustees' stipulation.  [Docket No. 493].

### F. Wirum Successfully Objects to the Finn Creditors' Claims in the SVP Case

In the SVP case on November 27, 2019, Wirum filed an *Objection to Claims* [SVP Docket No. 52] attacking the Finn Creditor Claims in that case (the "Finn Creditors Claim Objection").   At a hearing that took place on January 31, 2020 after extensive briefing, the Finn Creditors Claim Objection was sustained in its entirety, thereby leaving the Finn Creditors with no extant claims in the SVP bankruptcy case as of that date. [SVP Docket No. 74].

### G. Filing of the Plan

On November 12, 2019, the Plan Proponents filed the Plan. [Docket No. 490].  The Plan creates four classes: Class 1 contains the secured claims of the Finn Creditors; Class 2 contains the general unsecured claims of non-insiders (essentially, trade claims); Class 3 consists of general unsecured claims not in Class 2 (essentially, insider claims, the SVP unsecured claim in the SVC bankruptcy, and potentially any undersecured deficiency due to the Finn Creditors); and finally Class 4 is comprised of equity interest holders.

The Plan's distribution scheme is entirely conventional.  First, allowed administrative and priority expenses will be paid.  The Plan waterfall puts Class 2 creditors next in line (thereby implementing the outcome of the Compromise Motion), and also offers them 3% simple interest on their claims.  To the extent they are ultimately allowed, the Class 1 claims of the Finn Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

would take next in the waterfall.[1]  Thereafter, Class 3 claims are due to be satisfied, with any residual unspent value being passed to Class 4 interest holders.

The Disclosure Statement that is combined with the Plan was approved at the Court's hearing on December 17, 2019. [Docket No. 501].

Adequate and sufficient notice of the confirmation hearing was provided in compliance with the Bankruptcy Code and the Bankruptcy Rules.  Specifically, the Plan and notice of confirmation hearing were served upon all parties listed on the matrix on December 20, 2019.  *See* Certificate of Service at Docket No. 504.

The following pleadings were filed in opposition to the Plan:  (i) Hoffman's Chapter 11 Trustee's Objection to Chapter 11 Plan Proposed by Sullivan Family (December 20, 2019) (the "Hoffman Objection"); and (ii) Secured Creditors' Objection to Confirmation of Combined Plan and Disclosure Statement Proposed by Sullivan Family (December 20, 2019) (the "Finn Creditors' Objection").  These memoranda are collectively referred to herein as the "Objections."

Finally, on February 12, 2020, Mr. Finn filed his *Stephen A. Finn's Motion for Temporary Allowance of Claims for Voting Purposes Pursuant to Bankruptcy Rule 3018* (the "Finn Voting Motion"). [Docket No. 518].[2]

## III.

## THE PLAN COMPLIES WITH ALL APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE

### A.     The Plan Complies with Applicable Provisions of Chapter 11 – Section 1129(a)(1).

Section 1129(a) of the Bankruptcy Code provides that a court shall confirm a plan only if all requirements of section 1129 are met, including that "[t]he plan complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1).  The legislative history of section 1129(a)(1) explains that this provision incorporates the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan of reorganization.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989,

---

[1]  Hoffman recently objected to the Finn Creditor Claims using the same rationale adopted by the Court in the SVP bankruptcy case.  When granted, the Finn Creditors will have no claims herein, except to the extent of claims Mr. Finn has purchased.

[2]  The Motion was not noticed timely.  Accordingly, no response is offered in this memorandum.

Case: 17-10065   Doc# 526   Filed: 02/19/20   Entered: 02/19/20 14:57:39   Page 9 of 24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

9th Cong., 2d Sess. 126 (1978); *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 648-49 (2d Cir. 1988); *In re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984). The Plan complies with these provisions in all respects.

1. The Plan Properly Classifies Claims and Interests
in Compliance with Section 1122 of the Bankruptcy Code.

Under section 1122(a) of the Bankruptcy Code, "a plan may place a claim or interest in a particular class only if such claim or an interest is substantially similar to the other claims or interests of such class." 11 U.S.C. §1122(a). Section 1122(a) of the Bankruptcy Code does not, however, require that all similar claims be classified together, only that claims grouped together in a class be similar. *See Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.),* 800 F.2d 581, 585 (6th Cir. 1986); *see also In re Kovich,* 4 B.R. 403, 405 (Bankr. W.D. Mich. 1980) ("There is no requirement that all claims which are 'substantially similar' be placed in the same class.").

The Plan properly classifies Claims and Interests in accordance with the Bankruptcy Code. Under the Plan, a Claim or Interest is placed in a Class only if that Claim or Interest is substantially similar to other Claims or Interests within such Class. Specifically, there are three Classes of Claims and one Class of Interests under the Plan, as identified below:

Class 1 consists of the secured Finn Creditor Claims.

Class 2 consists of trade creditors.

Class 3 consists of non-trade unsecured creditors (this includes insider claims, SVP's claim against SVC, and any undersecured deficiency claims of the Finn Creditors, or claims the Finn Creditors have purchased).

Class 4 consists of equity interests in the Debtor.

2. The Plan Contains the Mandatory Provisions
Required by Section 1123 of the Bankruptcy Code.

Section 1123(a) of the Bankruptcy Code sets forth several requirements with which every chapter 11 plan must comply. The Plan fulfills these requirements as follows:

5

Bankruptcy Code Section 1123(a)(1) requires, subject to specific exceptions, that a plan designate classes of claims and interests.  Article IV of the Plan designates Classes of Claims and Interests as required.

Bankruptcy Code Section 1123(a)(2) requires that a plan specify the classes of claims and interests that are not impaired under the plan.  Article V of the Plan explains that all classes of claims or interests are impaired under the Plan.

Bankruptcy Code Section 1123(a)(3) requires that a plan specify the treatment of classes of claims and interests that are impaired under the plan.  This can be found in Article VI of the Plan. Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such claim.  Article VII of the Plan provides for the same treatment of Claims within each Class.

Bankruptcy Code Section 1123(a)(5) requires that a plan provide adequate means for its implementation.  Article VIII of the Plan sets forth the Plan's means for implementation.  The Plan provides for, among other things, Hoffman's immediate resignation, the retention of a recognized and respected insolvency professional (Bill Brinkman) to serve as president and chairman of the board of SVC, the payment of allowed claims in full subject to available funds in accordance with the Plan's waterfall, and reservation for disputed claims which have not yet been liquidated.  Also provided for are more ministerial items, such as the payment of fees to the Office of the United States Trustee, and post-confirmation notice procedures.  Article VII includes important provisions regarding the prosecution of Estate Retained Claims.  The Plan also contains all of the expected provisions relating to the allowance of claims for professionals, and the entry of a final decree and the closing of the case.  The Plan Proponents submit that the foregoing constitutes adequate means for implementation of the Plan.

Bankruptcy Code Section 1123(a)(6) requires that a plan provide for the inclusion in a corporate debtor's charter of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the classes of securities possessing voting power, an appropriate distribution of

such power among such classes. The Plan Proponents propose to satisfy this requirement in the confirmation order with language substantially similar to:

> Promptly after confirmation of the Plan, the SVC Articles of Incorporation shall be amended to provide: (a) prohibition of issuance of non-voting stock; (b) that in the event of issuance of a class or classes of stock having voting power, an appropriate distribution of such power among classes; and (c) with respect to any class of securities having preference as to dividends, appropriate provisions providing for election of directors by such class or classes in the event of a default with respect to a dividend payment obligation, all as specified in Section 1123(a)(6) of the Bankruptcy Code."

Bankruptcy Code Section 1123(a)(7) requires that a plan contain only provisions that are consistent with the interests of creditors, equity security holders, and public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor thereto. The Plan Proponents have disclosed the identity of the post-Effective Date management in Article VIII, Section 8.1. The same section explains the powers and duties of management. These provisions satisfy the requirements of Section 1123(a)(7) and are consistent with the interests of creditors, equity security holders, and public policy.

Bankruptcy Code Section 1123(a)(8) applies to individual debtors and is therefore inapplicable to this case.

Finally, Bankruptcy Code section 1123(d) states that if a plan proposes to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law. Any proposed cures will be made in accordance with this provision.

>            3.       The Plan Contains Provisions Permitted by
>                     <u>Section 1123(b) of the Bankruptcy Code.</u>

Section 1123(b) of the Bankruptcy Code contains several permissive provisions that may be contained, but are not required, within a plan.

Section 1123(b)(1) of the Bankruptcy Code states that a plan may impair or leave unimpaired any class of claims, secured or unsecured, or interests. As addressed above, the Plan impairs every class of Claims and Interests.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7

Section 1123(b)(2) of the Bankruptcy Code states that, subject to section 365 of the Bankruptcy Code, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected. Article IX of the Plan contemplates that all contracts will be rejected as of the Effective Date, unless notice is provided to the non-debtor contracting party of an intent to assume.

Based upon the foregoing, the Plan Proponents respectfully submit that the Plan complies with the requirements of sections 1122 and 1123, and therefore section 1129(a)(1), of the Bankruptcy Code.

**B.      The Plan Proponents Have Fully Complied with the Applicable Provisions of the Bankruptcy Code – Section 1129(a)(2).**

Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code. The legislative history and cases discussing section 1129(a)(2) indicate that this provision is intended to ensure that the plan proponent complies with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. *See In re Texaco, Inc.,* 84 B.R. 893, 906-07 (Bankr. S.D.N.Y 1988); *In re Hoff,* 54 B.R. 746, 750-51 (Bankr. D.N.D. 1985); *In re Butler*, 42 B.R. 777, 782 (Bankr. E.D. Ark. 1984).

1.      Section 1125 of the Bankruptcy Code

In this case, the Court approved the adequacy of the information provided to creditors in the disclosure statement at a hearing on December 17, 2019 [Docket No. 501]. Importantly, no effort to solicit votes on the Plan pre-dated the Court's approval of the disclosure statement (and its subsequent mailing to creditors).

2.      Section 1126 of the Bankruptcy Code.

Section 1126 of the Bankruptcy Code specifies the requirements for plan acceptance. Under this provision, only holders of allowed claims and allowed equity security interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan. The Plan makes clear that only Allowed Claim holders may vote. See Plan, Article I(C)(2).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

### C.    The Plan is Proposed in Good Faith – Section 1129(a)(3).

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Good faith is evaluated under the totality of the circumstances. *Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen),* 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986); *Jasik v. Conrad (In re Jasik),* 727 F.2d 1379, 1383 (5th Cir. 1984). It requires a reasonable likelihood that a plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *See Ryan v. Louis (In re Corey),* 892 F.2d 829, 835 (9th Cir. 1989); *Stolrow v. Stolrow's, Inc. (In re Stolrow's Inc.),* 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988); *In re Madison Hotel Assocs.,* 749 F.2d 410, 424-25 (7th Cir. 1984); *In re Nite Lite Inns,* 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982). In addition, the good faith standard requires that the plan be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be [effectuated]." *See In re Zenith Elecs. Corp.,* 241 B.R. 92, 107 (Bankr. D. Del. 1999).

In this case, the Plan Proponents' good faith is beyond question. As explained above, after the Trustee was appointed, it was Ross Sullivan who brought the purchaser to the table. Moreover, the Plan itself seeks to pay the holders of Allowed Claims in full to the extent of available funds. Nothing could be better evidence of good faith. Accordingly, the Plan Proponents have proposed the Plan in a manner consistent with the objectives and purposes of the Bankruptcy Code.

### D.    The Payment of Expenses Related to this Case are Subject to Approval By the Court as Reasonable – Section 1129(a)(4).

Section 1129(a)(4) of the Bankruptcy Code provides that the Court shall confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." Any payments made or to be made to professional persons for services rendered or for costs and expenses incurred in, or in connection with, this case through the Effective Date of the Plan have been, or will be, disclosed to the Court in fee applications subject to approval by the Court under the standards set forth in the Bankruptcy Code. Accordingly, the Plan complies with the requirements of Bankruptcy Code section 1129(a)(4).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.      The Plan Proponents Have Fully Disclosed the Employment of
Any Officer, Manager, or Voting Trustee by the Reorganized Debtor,
and Such Employment is in the Best Interest of the Estate – Section 1129(a)(5).**

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan." 11 U.S.C. § 1129 (a)(5)(A)(i).  In addition, the appointment of or continuance in office of such individual must be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129 (a)(5)(A)(ii); *see also In re Produce Hawaii, Inc.,* 41 B.R. 301, 304 (Bankr. D. Haw. 1984); *In re Parks Lumber Co, Inc.,* 19 B.R. 285, 291 (Bankr. W.D. La. 1982).  Section 1129(a)(5) further requires that the plan proponent disclose the identity of any "insider" to be employed or retained by the reorganized debtor and the "nature of any compensation" for any such insider.  As set forth in the Plan, the Plan Proponents have disclosed the future involvement of Mr. Brinkman, together with his authority.[3]  Mr. Brinkman will be paid hourly for his time at $495 per hour. Accordingly, the Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.      The Plan Does Not Require Approval of Any
Regulatory Commission – Section 1129(a)(6).**

Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the rates charged by the debtor after confirmation has approved any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6).  This provision is inapplicable to the Plan because no governmental regulatory commission will have such jurisdiction here after confirmation.

**G.      The Plan Satisfies the "Best Interests Test" – Section 1129(a)(7).**

Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interests test."  Under the "best interests test," each holder of a claim or interest in an impaired class must either accept the plan or receive or retain property of a value, as of the effective date of the plan, that is not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the

---

[3]  Notably, Ross Sullivan (a frequent target of the Finn Creditors) is not given a significant management role under the Plan.  Also, he will not have a board seat.

Bankruptcy Code on such date. This requirement is commonly referred to as the "Best Interests Test."

The Plan Proponents submit that the Plan easily satisfies the "Best Interests Test" and should be approved. As Exhibit 1 to the Plan (the Liquidation Analysis) makes clear, the Plan is projected to pay all the trade in full with interest, and also be sufficient to satisfy Class 3 Claims, thereby potentially leaving money on the table for equity (Class 4). There is no likelihood that a chapter 7 trustee could fashion a superior result. The learning curve for a chapter 7 trustee and new counsel would simply increase expense and reduce the recoveries to Creditors. For these reasons, the Plan is far preferable to conversion to chapter 7. Based on the foregoing, the Plan complies with the "best interests test" set forth in Bankruptcy Code section 1129(a)(7).

### H. Each Class of Claims and Interests has Accepted the Plan, or may be Crammed Down – Sections 1129(a)(8) and 1129(b).

Subject to the exceptions contained in section Bankruptcy Code Section 1129(b), section 1129(a)(8) requires that each class of claims or interests must either have accepted the plan or not be impaired under the plan. A class of claims accepts a plan if the holders of at least two-thirds in dollar amount and more than one-half in the number of claims vote to accept the plan—counting only those claims whose holders actually vote. A class of interests accepts a plan if holders of at least two-thirds of the amount of interests vote to accept the plan—counting only those interests whose holders actually vote.

In this case, the Plan was only accepted by Class 2, with Class 1 voting to reject the Plan. Bankruptcy Code Section 1129(b)(1) provides that a plan may be confirmed even if the requirements of section 1129(a)(8) are not met if the plan does not discriminate unfairly and is fair and equitable with respect to each class that is impaired under the plan and that has not accepted the plan. A plan unfairly discriminates in violation of Section 1129(b) only if similar claims are treated differently without a reasonable basis for the disparate treatment. *See In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 611-12 (Bankr. D. Del. 1987). The Plan Proponents believe that the Court should find that the treatment of the Class 1 and 3 Claims does not discriminate unfairly. With regard to Class 1, the Plan enforces the subordination bargain struck by the Finn Creditors in the Compromise Motion.

Plus, Class 3 is not being discriminated against unfairly because those creditors (if any) will be paid in full before any money goes to Class 4 Interests. The treatment is fair and equitable and, based on the foregoing, the Plan Proponents have satisfied the requirements of Bankruptcy Code sections 1129(a)(8) and 1129(b) for confirmation of the Plan.

**I. The Plan Provides for the Statutorily Mandated Treatment of Administrative and Priority Tax Claims – Section 1129(a)(9).**

Section 1129(a)(9) of the Bankruptcy Code specifies the treatment of certain administrative and priority claims. Article VI of the Plan addresses Administrative Claims and Priority Tax Claims. Pursuant to the Plan, unless the holder of such Claim has agreed to a different treatment, shall be paid in full in cash on the Effective Date, or the date that any allowed Administrative Claim of a professional is approved by the Court.

**J. Class 2 is a Consenting Impaired Cram Down Class – Section 1129(a)(10).**

Section 1129(a)(10) of the Bankruptcy Code requires that "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." This section is satisfied by the overwhelming percentage of accepting votes by Class 2 Creditors, and the requisite dollar amounts.

**K. The Plan Is Feasible – Section 1129(a)(11).**

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to find that a plan is feasible as a condition precedent to confirmation. Specifically, the Bankruptcy Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This feasibility standard requires the Court to determine whether a plan is workable and has a reasonable likelihood of success. *See The Mutual Life Ins. Co. of New York v. Patrician St. Joseph Partners (In re Patrician St. Joseph Partners),* 169 B.R. 669, 674 (Bankr. D. Ariz. 1994) (finding that a plan meets the feasibility standard if it offers a reasonable prospect of success and is workable). "Feasibility" is not equivalent to an ability to make all possible distributions. *Berkeley Federal Bank & Trust v. Sea Garden Motel & Apartments (In re Sea Garden Motel & Apartments),* 195

Case: 17-10065   Doc# 526   Filed: 02/19/20   Entered: 02/19/20 14:57:39   Page 17 of 24

B.R. 294, 304 (D.N.J. 1996) ("a relatively low threshold of proof is necessary to satisfy the feasibility requirement"); *S&P, Inc. v. Pfeifer,* 189 B.R. 173, 182-83 (N.D. Ind. 1995) ("[t]he mere potential for failure . . . is insufficient to disprove feasibility").

Here, as explained in the Liquidation Analysis, the Plan is unquestionably feasible. Accordingly, the Plan Proponents submit that the Plan is feasible as required under section 1129(a)(11) of the Bankruptcy Code.

**L.      The Plan Provides for the Payment of All
            Fees Under 28 U.S.C. § 1930 – Section 1129(a)(12).**

As required by section 1129(a)(12) of the Bankruptcy Code, all fees payable under 28 U.S.C. § 1930 will be paid when due.

**M.      Provisions Regarding the Continuation of Retiree
            Benefits Do Not Apply to the Plan – Section 1129(a)(13).**

Section 1129(a)(13) of the Bankruptcy Code sets forth certain provisions for continuation of the payment of health, welfare, and retiree benefits post-confirmation.  The Plan Proponents are informed and believe that this provision is inapplicable to the Debtor as it has no such benefits.

# IV.

# REPLY TO OBJECTIONS

**A.      The Attorney-Client Privilege Belongs to the Debtor, Not Hoffman.**

In Sections 8.1 and 8.6, the Plan provides that all property of the estate will become property of the Reorganized Debtor upon confirmation, and that such property includes attorney-client communications during the period in which Hoffman served in place of prior management (essentially from August 29, 2017 to the Plan's Effective Date).

Bankruptcy Code Section 1141(b) makes clear that except as otherwise provided in the plan or confirmation order, "the confirmation of a plan *vests all of the property of the estate in the debtor.*"[4] (Emphasis added.)  If such communications are property of the estate, then Bankruptcy Code Section 1141(b) makes clear that they must re-vest in the debtor upon confirmation.  As

---

[4]  The Plan Proponents agree with Hoffman that no published (or known unpublished) decision addresses this very specific point.  However, the fact that the Code itself provides for such re-vesting should be all the authority needed. Moreover, as discussed herein, courts that have looked at analogous situations have ruled consistent with the principles underlying the Plan. These analogous situations are not on point, but the fact that they are harmonious with the approach taken in the Plan is an indication that the Plan provision is unobjectionable.

discussed below, a chapter 11 trustee is really just a replacement for the debtor's board and upper management; his privilege is the corporation's. It is not personal to him. Moreover, there can be little doubt that it was the estate which paid for all such communications (and thus it should be the estate that reaps the benefit).

The starting point of any inquiry in this area is *Commodity Futures Trading Corporation v. Weintraub*, 471 U.S. 343 (1985), where the United States Supreme Court ruled that (a) the fiduciary duty of the trustee runs to shareholders as well as to creditors because he succeeds to the corporation's privilege upon appointment and (b) the Chapter 7 trustee had the power to waive the attorney-client privilege surrounding pre-bankruptcy communications because the trustee steps into the shoes of management. In explaining its reasoning, the Court wrote in part: "Surely, then, the management of a debtor-in-possession would have to exercise control of the corporation's attorney-client privilege consistently with this obligation to treat all parties, not merely the shareholders, fairly. By the same token, when a trustee is appointed, the privilege must be exercised in accordance with the trustee's fiduciary duty to all interested parties." 471 U.S. at 355-56. The Court went on to explain that:

> [a]s we have stated, a corporation, as an inanimate entity, must act through agents. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors."

471 U.S. at 357. The underlying reasoning of *Weintraub* – that the control of the attorney-client privilege passes from a corporate debtor to the appointed trustee because the trustee is an agent who steps into management's shoes – only makes sense if that same privilege is later passed on to the estate's successor under a Plan. Or to put another way, the attorney-client privilege is owned by the corporate debtor but managed by the party in control –either the corporate debtor's management or a trustee. In either case, those in control might change but the privilege always remains with the corporate debtor.

Other cases lend support to the Plan's provisions. For instance, in *In re Eddy*, 304 B.R. 591 (Bankr. D. Mass 2004), the bankruptcy court was tasked with determining the extent to which an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

individual debtor's attorney-client privilege passed to a Chapter 7 trustee after his chapter 11 case was converted (and to what extent the debtor retained the privilege). In clarifying its reasoning, the *Eddy c*ourt held that the attorney-client privilege is tied to a debtor's property of the estate because if this was not true, then:

> … a Chapter 11 debtor would have no privilege with respect to virtually any issue surrounding her/his/its reorganization. Indeed, it would become standard practice for creditor to schedule an examination of a debtor's counsel in conjunction with any contested matter. Section 541 of the Bankruptcy Code was intended to provide great breadth to the definition of estate property. It was not intended to vitiate the attorney-client privilege.

304 B.R. at 598. The bankruptcy court's recognition in *Eddy* supports the notion that communications related to the administration of the bankruptcy estate are property that the plan re-vests with the Reorganized Debtor.

Perhaps the best way to look at the question is to use a specific example, such as the Estate Retained Claim against the Buchalter law firm. Surely Hoffman and his counsel devoted time (and spent estate money) to understanding the extent of Buchalter's conflict and the potential damage imposed by the conflict. Indeed, this conclusion is inescapable given Hoffman's decision to successfully pursue disqualification in two different courts and three different cases, and then enter into a tolling agreement with Buchalter. How can it be that such work and analysis should not be passed on to the Reorganized Debtor, in whom the Plan vests authority to pursue the claim? What bankruptcy reorganization purpose would that serve? The attorney-client privilege is preserved and continues so long as the Reorganized Debtor continues. The mere fact there is a reorganization does not mean the Reorganized Debtor starts with a blank slate. Instead, pursuant to section 1141 of the Bankruptcy Code, the Debtor's property vest with the Reorganized Debtor, which undoubtedly includes Hoffman's communication with counsel, which were all on behalf of the Estate and at its expense.

As the Supreme Court held in *Weintraub*, Hoffman controls the Debtor's attorney-client privilege while he serves as trustee of the Debtor and its estate. Importantly, once Hoffman is divested of his powers he loses control of the <u>Debtor's</u> privilege but the privilege stays with the Debtor and the management of the Reorganized Debtor assumes control.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Simply put, Hoffman's analogies and rationalizations are not persuasive. The main one is that this case was about investigating the Sullivans and that, as a result, the Sullivans should not be privy to the investigations Hoffman performed. This case was *never* about investigating the Sullivans. It was about a rancorous divorce that spilled into bankruptcy court. No Sullivan wrongdoing was ever brought forward. Indeed, Hoffman, his counsel and his accountant relied upon Ross Sullivan for everything from finding a buyer for the estate's winery to gathering material for monthly operating reports to working to ensure a smooth transition post-Sale so that the greatest amount of cash would come into the estate.

**B.**     **The Finn Creditors' Objections Must be Overruled.**

The Finn Creditors have made the same arguments over and over in this case. Those arguments have not succeeded in getting these cases converted to Chapter 7, and they should not work now in the face of overwhelming creditor acceptance by an impaired Class of Creditors.

        1.     There is No Impermissible Conflict

The first argument is that "the Sullivans Have an Incurable Conflict of Interest." Astoundingly, this argument fails to discuss for even one sentence the Plan's required role for Bill Brinkman, a respected local bankruptcy and insolvency professional with no prior connections to the Plan Proponents whatsoever. To reiterate, the Plan states the following about Mr. Brinkman's role in section 8.1:

> Bill Brinkman shall serve as the President of SVC and serve as the chairman of its board of directors and shall continue to serve as such until he resigns. SVC's other board members (Kelly and Sean Sullivan) shall have no ability to remove Mr. Brinkman from his posts unless he resigns or a court of competent jurisdiction, upon motion by the shareholders of SVC, shall remove him for gross negligence or willful misconduct. Mr. Brinkman shall have the right to resign at any time, subject to 90 days notice to SVC. Kelleen and Sean Sullivan shall serve as the other two board members of SVC. Mr. Brinkman shall also be the managing general partner of SVP.

This provision was included in an effort to mute the Finn Creditors' endless suggestions that a "conflict" between the equity owners of the Debtor and Mr. Finn means that SVC cannot pay its creditors to the fullest extent of its available funds and return the balance (if any) to equity. The fact

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

that the Finn Creditors never address or acknowledge Mr. Brinkman's role under the Plan speaks volumes.

The Finn Creditors have made additional arguments under the heading of "conflict" that are no more persuasive. For instance, they argue that the Plan creates "a litigation trust that the Sullivans can use to pursue further duplicative and frivolous litigation against Finn." This is absurd, as all SVC claims against the Finn Creditors have already been released by Hoffman. If any money ends up flowing through SVC to the equity owners of the Debtor after satisfying senior claims under the Plan's waterfall, then the Sullivans will and should be free to spend it as they wish. Simply put, to suggest that a Plan that follows the Bankruptcy Code's priority scheme cannot be approved because it could possibly return money to equity is silly.

Next, the Finn Creditors object to Section 10.3's prohibition on claim amendment post-confirmation. This argument raises a couple of questions. The first is "what are the Finn Creditors waiting for?" Everyone knows how inflated claims filed by Mr. Finn and his proxies (the so-called "litigation plaintiffs") were used as a blocking technique earlier in this case. A second question is "how exactly would the Plan work if SVC was prevented from passing out money because creditors were eternally free to amend their claims upward?" The answer is that it would not work at all. The Plan would go effective and Class 2 would get paid with interest. Thereafter, matters would grind to a halt and the balance of the money in the estate (including the money due to SVP on account of its Class 3 Claim) would be held hostage for an extended period, or even years.

Next, the Finn Creditors argue a second time that the Plan creates an improper litigation trust whose real purpose is to continue to mount litigation against Mr. Finn. This argument was rebuked above.

### 2. The "Best Interests" Showing is Sufficient

In response to the Finn Creditors' discovery, the Plan Proponents produced emails showing how the Liquidation Analysis evolved into its current iteration. That document trail establishes that counsel for the Plan Proponents worked with Hoffman, his counsel and his accountant to build language that was accurate and informative. Every liquidation analysis is a balancing act where

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

accuracy is at a premium. The one found at Plan Exhibit 1 represents the best the Plan Proponents and Hoffman could put together.

### 3. The Plan Has Been Proposed in Good Faith

Twisting and re-using arguments already discussed above, the Finn Creditors' final argument is that the Plan is not proposed in good faith because it is "self-serving, benefiting out of the money equity holders at the expense of the Debtor's rightful creditors." This is hogwash. The Plan religiously tracks the priority scheme laid out in the Bankruptcy Code. No money will be paid to the Plan Proponents on account of their equity unless senior classes of creditors holding Allowed Claims are paid in full. The Plan pays Creditors as soon as possible. It removes Ross Sullivan from his former role as lead decision-maker for SVC. The Finn Creditors' arguments that this is not good faith should be rejected.

///

///

///

# V.

## CONCLUSION

The Plan meets each of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Accordingly, the Plan Proponents respectfully request that the Court confirm the Plan and grant such other and further relief as is just and proper under the circumstances.

Dated: February 19, 2020          PACHULSKI STANG ZIEHL & JONES LLP


By:  */s/ John D. Fiero*
John D. Fiero
*Attorneys for Equity Owners*
*Ross Sullivan and Kelleen Sullivan*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 17-10065   Doc# 526   Filed: 02/19/20   Entered: 02/19/20 14:57:39   Page 23 of 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14  DOCS_SF:102808.2 82168/001
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

19